# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNIVERSITY OF SAINT THOMAS, | § | CIVIL ACTION NO. _____ |
| | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| | § | |
| AMERICAN HOME ASSURANCE | § | JURY TRIAL DEMANDED |
| COMPANY, | § | |
| | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff University of Saint Thomas ("UST") files this Original Complaint against American Home Assurance Company ("American Home" or "Defendant"), which has denied UST's first-party claim for lost business income and expenses caused by COVID-19 in violation of the clear terms of the applicable policy.

## PARTIES

1.     Plaintiff University of Saint Thomas is a domestic non-profit corporation located in Harris County, Texas.

2.     Defendant American Home Assurance Company is an American

-1-

International Group ("AIG") subsidiary insurance company organized under New York law, doing business in Texas, with its principal place of business in New York, New York.  It may be served with process in this action by serving its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.  Personal jurisdiction is satisfied because American Home entered into the insurance policy at issue with UST in the State of Texas, and American Home has sufficient minimum contacts with the State of Texas such that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district and because a substantial part of the property that is the subject of this action is situated in this district.

## <u>STATEMENT OF FACTS</u>

5.　　UST is Houston's Catholic University, committed to the religious, ethical and intellectual traditions of Catholic higher education.  For over seventy years, it has graduated students into successful careers in medicine, education, business, public administration, and more.  Its campus, made up of administrative buildings, lecture halls, and student housing facilities, is located in Houston's Museum District and Innovation Corridor.

6.　　UST's primary source of income is tuition, which students pay each fall, spring, and summer semester.  UST also derives income from room and board through the year-round operation of its student residences and dining halls.  In addition, UST hosts summer camps and other paid programming.  All of UST's operations, services, and production have been affected by COVID-19.

7.　　American Home is a direct, wholly-owned subsidiary of AIG Property Casualty U.S., Inc.

### *The Policy*

8.　　On or about February 1, 2020, UST and American Home entered into an insurance contract.  *See* Commercial Property Policy No. 061818876 ("Policy," attached as **Exhibit 1**).  UST agreed to pay premiums to American Home in exchange for American Home's promise to indemnify UST for "all risks of direct

physical loss or damage" to real and personal property UST owns, operates, or controls.

9.     The Policy covers loss or damage from, among other things, business interruption, relocation expenses, attraction property, interruption by civil authority, limitations of ingress and egress, and extra expense.

10.     Specifically, American Home agreed as follows:

> We will pay the actual business income loss sustained by you due to the necessary partial or total interruption of your business operations, services or production during the period of indemnity as a result of direct physical loss or damage to: (1) covered property by a covered cause of loss or (2) property of the type insured under this Policy by a covered cause of loss which directly affects your use of the covered property, provided that you are a lessee or occupant of the premises where the direct physical loss or damage occurred.

Policy § VI.A.

11.     All risks are covered unless expressly excluded.  The Policy does not exclude from coverage direct physical loss or damage to covered property caused by virus.

12.     The Policy does not define "direct physical loss or damage"; however, the use of the disjunctive "or" in the phrase means that coverage is triggered if either a loss or damage occurs.  These concepts are separate and distinct under the language of the Policy.

13.     Under the Policy, physical loss of, or damage to, property may be reasonably interpreted to occur under a variety of circumstances, including but not limited to when a covered cause of loss threatens or renders property unusable or unsuitable for its intended purpose or unsafe for normal human occupancy or use.

14.     UST paid all Policy premiums to American Home, which accepted all such premiums, and the Policy has been and remains in full force and effect for the period from February 01, 2020 to February 01, 2021.

### *The Peril*

15.     After the inception of the Policy, a new coronavirus that causes a respiratory disease known as COVID-19 emerged in Houston.  By the beginning of March 2020, thousands of Americans were infected.  On March 11, the World Health Organization ("WHO") declared the COVID-19 outbreak a pandemic; and on March 13, Texas Governor Greg Abbott declared a state of disaster in Texas.   In accord with these declarations, on March 19, John W. Hellerstedt, M.D., Commissioner of the Department of State Health Services declared a public health disaster in Texas because COVID-19 "has created an immediate threat, poses a high risk of death to a large number of people, and creates a substantial risk of public exposure because of the disease's method of transmission and evidence that there is community spread in Texas."

16.     The COVID-19 pandemic is exacerbated by the fact that it may infect a person in a variety of ways. The deadly virus spreads when an infected person emits viral particles into the air when they sneeze, cough, talk or breathe and another person ingests them.[1]  A study published in the *New England Journal of Medicine*, explains the virus can float or drift in the air for up to three hours.[2]  The risk of infection from exposure to airborne viral particles is greatest in indoor spaces.[3]

17.     The virus also physically infects and stays on surfaces and everyday objects such as counters, tabletops, windows, doorknobs, bathroom fixtures, phones, etc. for days on end.[4]  A study published in the *Journal of Hospital Infection* found that the virus can remain infectious on inanimate surfaces at room temperature for up to nine days.[5]

18.     On March 19, 2020, Governor Abbott of the State of Texas issued an executive order that "every person in Texas shall avoid gathering in groups of more than 10 people," and advising that people should avoid eating in restaurants as well as visiting gyms.

---

[1] https://www.health.harvard.edu/diseases-and-conditions/covid-19-basics
[2] *See* https://www.nejm.org/doi/full/10.1056/NEJMc2004973 (all websites cited herein were last accessed August 7, 2020)
[3] *See* https://www.medrxiv.org/content/10.1101/2020.02.28.20029272v2
[4] https://www.nejm.org/doi/full/10.1056/NEJMc2004973
[5] https://www.journalofhospitalinfection.com/article/S0195-6701(20)30046-3/fulltext

19.     On March 24, 2020, recognizing that "the COVID-19 virus causes property loss or damage due to its ability to attach to surfaces for prolonged periods of time," Harris County Judge Lena Hidalgo issued an order directing all individuals living in the county to stay at home except to provide or receive certain essential services or engage in certain essential activities.  That order further required all non-essential businesses located within Harris County to cease all activities at facilities located within Harris County.  The order remained in effect until April 30; and on May 1, a new, but substantially similar version of the order was extended to June 10. As a university, UST was not designated an essential business for in-person operations and was therefore required to transition exclusively to virtual instruction.

20.     Because COVID-19 has persisted and continued to spread in the community, Governor Abbott of the State of Texas has issued numerous orders designed to combat the spread and threat of the virus:

- On March 31, Gov. Abbott issued an executive order implementing essential services and activities protocols for the entire state of Texas, stating "[e]very person in Texas shall, except where necessary to provide or obtain essential services, minimize social gatherings and minimize in-person contact with people who are not of the same household."  The order also ordered schools to remain closed to in-person classroom attendance through May 4, 2020.

- On June 23, Gov. Abbott issued an updated executive order to expand the ability of mayors and county judges to impose restrictions on certain outdoor gatherings of over 100 people.

- On June 26, Gov. Abbott issued an executive order re-imposing restrictions on bars and restaurants, which had been relaxed. The order restricted bars to delivery and takeout service only. It also mandated restaurants cut back on dine-in service, operating at only 50% capacity. Previously, restaurants had been able to fill dining rooms at 75% of normal occupancy. The Governor's office stated publicly that these measures were "essential to our mission to swiftly contain this virus and enhance public health."

- On July 2, Gov. Abbott issued an executive order, requiring all Texans to wear a face covering over the nose and mouth in public spaces in counties with 20 or more positive COVID-19 cases, with few exceptions.

- On July 2, Gov. Abbott issued an updated executive order to expand the ability of mayors and county judges to impose restrictions on certain outdoor gatherings of over 10 people.

- On July 9, Gov. Abbott issued a proclamation re-suspending elective surgeries and procedures in hospitals in all counties located within 11 Trauma Service Areas (TSAs) in Texas, including Harris County.

21.    Under Section 418.173 of the Texas Government Code, failure to comply with any executive order issued during the COVID-19 pandemic is an offense punishable by a fine not to exceed $1,000, confinement in jail for a term not to exceed 180 days, or both fine and confinement.

22.    Likewise, on June 26, 2020 Harris County Judge Lina Hidalgo raised the Current Level of Risk for Harris County from Level 2 to Level 1. Level 1 signifies a severe and uncontrolled level of COVID-19 in Harris County. At this level, residents are advised to take action to minimize contacts with others wherever

-8-

possible and avoid leaving home except for the most essential needs like going to the grocery store for food and medicine.  At the time of filing, Harris County remains at Level 1.

23.    On July 24, 2020, recognizing the "higher risk for spread of COVID-19 in schools, and the challenge of keeping students, teachers, administrators, and school personnel safe from COVID-19," Judge Hidalgo further ordered all public and non-religious private schools in Harris County not to open for face-to-face instruction until after September 7, 2020.  While the order cannot require private schools to delay in-person instruction, it "strongly urge[s]" them to do the same.  The order cautions that the reopening of schools in Harris County may be further delayed, depending on the severity of the outbreak at the time.

24.    The closure of all non-essential businesses and restrictions on gatherings of people and in-person instruction evidence an awareness by state and local governments that COVID-19 causes loss of or damage to property, especially for businesses that are open to the large numbers of the public, like a university, as the contact and interaction incident to such businesses causes an increased likelihood—almost certainty—that COVID-19 is physically present on the property.

25.    As of the date of this filing, there have been over 87,000 confirmed cases of COVID-19 infection in Harris County.

### *Direct Physical Loss and Damage*

26.     The COVID-19 pandemic and physical presence of the virus on UST's campus have caused direct physical loss and damage to covered properties.  UST has and will continue to sustain direct physical loss and damage covered by the Policy, including but not limited to, business interruption, extra expense, interruption by civil authority, limitations on ingress and egress, and expenses to reduce loss.

27.     Several individuals with confirmed cases of coronavirus—and untold numbers of unconfirmed cases—were physically present in covered properties on UST's campus starting in mid and late March and continuing thereafter.

28.     As a result of the physical presence of the virus on campus and rapid community spread, as well as the state and local orders, UST was forced to close its classrooms and rush to implement remote instruction for its students, at considerable expense to UST, including the purchase of software licenses and other technologies. It was also forced to establish quarantine housing for students who either had or may have been exposed to coronavirus, and later to close all dining and residence halls and refund students' room, board, student, and parking fees.  It has also had to cancel UST's annual summer camp programs, resulting in the loss of deposits, housing fees, and facility-rental income.

29.     UST remains closed today.  Since mid-March, only certain janitorial,

facilities, and administrative staff whose physical presence has been periodically required in order to maintain UST's essential operations have been physically present on campus.   Even among that limited population, confirmed cases of COVID-19 on campus have steadily increased.

30.     The damage caused by the virus is continuing and ongoing, and its impact on Fall 2020 operations is as yet unknown.   The continued presence of the virus is likely to require UST to keep its classrooms, dormitories, and dining halls closed or at reduced capacity.   According to the *Chronicle of Higher Education*, which is tracking over 1,000 colleges since April 2020, only 65% of colleges are contemplating some form of in-person classes this fall,[6] and many colleges have already announced they will be provided on-line education only.[7]

31.     A recent survey of public four-year colleges has shown that the virus is spreading on college campuses even before in-person instruction has commenced, including at neighboring Rice University in Houston.[8]   And a simulation created by professors at Swarthmore College showed that, given the closely connected environment of most universities, if in-person classes resume without extensive

---

[6]     https://www.cnbc.com/2020/06/23/65percent-of-colleges-are-preparing-for-in-person-classes-this-fall.html

[7]     https://www.insidehighered.com/news/2020/07/07/coronavirus-roundup-more-universities-announce-plans-largely-online-fall-terms

[8]     https://www.nytimes.com/interactive/2020/07/28/us/covid-19-colleges-universities.html?smid=em-share

efforts to mitigate the spread, thousands of people could become infected on modest-sized college campuses within a thirty day period.[9]

32.     UST expects to incur significant business income losses in the form of lost room-and-board revenues and tuition, and considerable extra expense associated with the purchase of additional technology needed to facilitate expanded online instruction and the purchase of cleaning supplies and personal protective equipment for janitorial staff.

33.     Because the physical presence of the virus on campus will undoubtedly affect its ability to provide the same in-person instruction that students expect, UST has already extended a $500 tuition grant to each undergraduate student who is enrolled for the fall semester and made other pricing reductions to avoid enrollment losses.

### *American Home Wrongfully Denies UST's Claim*

34.     UST timely submitted a claim for business income losses on March 16, 2020.  On May 14, 2020, American Home denied the claim, citing the "pollutants or contaminants" provision of the "Perils Excluded" section of the policy as its reason for denying "coverage for Business Income, Direct Physical Damage, and Civil

---

[9] https://arxiv.org/pdf/2006.03175.pdf; https://www.marketwatch.com/story/how-covid-19-could-spread-on-college-campuses-will-students-be-safe-2020-06-29

Authority."  AIG Letter, dated 5/14/2020 (attached as **Exhibit 2**).  American Home appears to interpret the reference to "virus" in the definition of "pollutants or contaminants" as an express exclusion of virus as a covered cause of loss:

> Although there is coverage for Business Income, Direct Physical Damage, and Civil Authority under your policy, there must be a Covered Cause of Loss in which the Business Income, Direct Physical Damage and Civil Authority results.  In this instance, the cause of loss is COVID-19.  COVID-19 is a virus which, per the policy, is considered a contaminant or pollutant and is specifically excluded by the policy.  As such, coverage for Business Income, Direct Physical Damage and Civil Authority are not triggered as the peril is specifically excluded.

Exhibit 2 at 5-6.

35.    Although American Home has taken the position that UST's losses arising out of COVID-19 are not covered by the Policy, its owner, AIG, has publicly admitted to investors and regulatory bodies that COVID-19 losses require coverage. In May 2020—the same month American Home denied UST's claim—Brian Duperreault, Chief Executive Officer of AIG, stated "[w]e believe that COVID-19 will be the single largest CAT (catastrophe) loss the industry has ever seen."[10] Accordingly, in the first quarter of 2020, AIG has already set aside $272 million dollars to cover COVID-19 related losses.[11]   These public admissions belie

---

[10] https://www.insurancejournal.com/news/national/2020/05/05/567462.htm
[11] https://www.reuters.com/article/us-aig-results/aig-quarterly-profit-nosedives-as-covid-19-claims-loom-idUSKBN22G2Q3

American Home's denial of UST's claim.

### *COVID-19 is a Covered Cause of Loss*

36.     Under an "all-risk" policy, like the one at issue here, if a peril is not specifically excluded, it is a covered cause of loss. *Dow Chem. Co. v. Royal Indem. Co.*, 635 F.2d 379, 386 (5th Cir. 1981); *SMI Realty Mgmt. Corp. v. Underwriters at Lloyd's London*, 179 S.W.3d 619, 627 n.3 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).  As a result of COVID-19, UST has suffered and will continue to suffer business income loss sustained by the necessary partial or total interruption of its business operations, services or production as a result of direct physical loss or damage to (i) covered property caused by a covered loss, and (ii) property of the type insured under this Policy by a covered cause of loss which directly affects its use of the covered property, as a lessee or occupant of the premises where the direct physical loss or damage occurred.  *See* Policy § VI.A.

37.     American Home specifically excluded many perils from UST's coverage, but not viruses.  Under "Section V—Perils Excluded," the Policy states "we do not insure loss or damage caused directly or indirectly by any of the following."  *Id*. § V.1.  The Policy then specifically lists fourteen named perils, including nuclear reaction or radiation; war, hostile or warlike action; and fungus, mold or spore, to name a few.  *Id.* §§ V.1.a, b, l.  Pandemics, viruses, or diseases are

not listed among them.

38.     Had American Home intended to specifically exclude losses caused by virus from the scope of coverage, it knew precisely how to do so.  In 2006, the Insurance Services Office ("ISO") and the American Association of Insurance Services ("AAIS"), represented hundreds of insurers in a national effort to seek approval from state regulators for the adoption of virus exclusions to insurance policies that provided coverage for business interruption caused by property damage. Specifically, ISO circulated "New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria" in response to the SARS virus.[12]  The ISO Circular explains that "[d]isease causing agents may . . . enable the spread of disease by their presence on internal building surfaces or the surfaces of personal property," and thus may not have been excluded by the then-current exclusion for pollutants or contaminants—which uses language virtually identical to that contained in the American Home Policy at issue here.[13]  The ISO created a form containing the following language to specifically exclude viruses from the scope of coverage:  "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness

---

[12] https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf

[13] *See id.*

-15-

or disease." Upon information and belief, American Home knew of and had access to the ISO's virus exclusion endorsement and has included such exclusion in its policies with other insureds.

39.     By promulgating the virus exclusion in 2006, insurers acknowledged that the typical pollution and contamination exclusion—like the one at issue here— did not apply to damage and losses caused by a virus.  It also recognizes that virus can cause physical damage or loss to property; hence, the need for an exclusion.  The existence of the standard exclusion is an admission by the insurance industry that policies without them do, in fact, cover virus-related damage and losses.  The Policy does not contain the standard virus exclusion, thus virus is a covered cause of loss.

40.     Indeed, in its letter denying coverage, American Home recognized that COVID-19 did, in fact, cause direct physical damage or loss to UST's property by failing to raise such argument as a basis to deny coverage.  American Home is therefore estopped from changing its position.  Instead, American Home relied exclusively on the pollution and contamination exclusion to deny coverage under the Policy.  That exclusion, however, is inapposite.

### The Pollution and Contamination Exclusion Does Not Apply

41.     American Home's reliance on the "pollutants or contaminants" exclusion and accompanying definitions to deny coverage is not supported by the

plain language of the Policy.  "Pollutants or contaminants" is defined by the Policy

as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke,

vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can

cause or threaten damage to human health or human welfare or causes or threatens

damage, deterioration, loss of value, marketability or loss of use to property insured

hereunder, including, but not limited to bacteria, virus, or hazardous substances."

*Id.* § IX.35.  This definition clearly does not include a virus, which is not a "solid,

liquid, gaseous or thermal irritant or contaminant."   A virus is, instead, an inert

protein, smaller than any bacteria, that attaches to human cells.

42.     The narrow application of the exclusion is confirmed by the examples

provided.  "[S]moke, vapor, soot, fumes, acids, alkalis, chemicals, and waste" are

examples  of  the  types  of  substances  that  could  constitute  a  "pollutant[]  or

contaminant[]."  Even the examples do not list viruses as pollutants or contaminants.

If any of those substances, after their release, "can cause or threaten damage to

human health" or property, they are a pollutant or contaminant within the meaning

of the policy.  The provision lists bacteria, virus, or other hazardous substances as

examples only of the types of damage to human health or property.  They are not

independent examples of "pollutants or contaminants," as American Home suggests

in its letter denying UST's claim.  A virus is not itself a pollutant or contaminant,

-17-

but merely an example of something that can cause damage to human health or property.  Virus is therefore separate and distinct from a pollutant or contaminant. By the Policy's express language, virus is not a "pollutant or contaminant."

43.     While the wording of the definition of "pollutant or contaminant" and of the exclusion itself yields only one reasonable interpretation, as set out above, in the alternative, if there is more than one reasonable construction of the pollutants and contaminants exclusion, the exclusion is ambiguous and must be construed in UST's favor:

> Texas follows the well-settled rule that insurance policies will be interpreted liberally in favor of the insured and ambiguities strictly against the insurer, especially when dealing with exceptions and words of limitation.  Furthermore, when the language of the insurance policy is susceptible of more than one reasonable construction, courts should apply that construction which favors the insured and permit recovery.

*Dow Chem. Co.*, 635 F.2d at 386 (internal citations omitted).

### The Policy Expressly States that Virus Causes
### Direct Physical Harm or Damage to Property

44.     The language of the Policy itself supports that virus is a covered cause of loss.  As explained above, "virus" is specifically named in the Policy as something that can, in fact, cause damage to property.

45.     Moreover, the "pollutants or contaminants" exclusion relates only to the "release, discharge, or dispersal" of pollutants or contaminants caused by any

-18-

covered cause of loss.  This exclusion contains an express exception if there is direct physical loss or damage to covered property from pollutants or contaminants caused by a covered cause of loss.  The Policy expressly states that the pollutant or contaminant exclusion "***shall not apply to direct physical loss or damage to covered property from pollutants or contaminants*** caused by a covered cause of loss at the covered location, ***including the cost to clean up pollutants or contaminants from covered property***."  Policy § V.1.d.  (emphasis added).  The exception to the exclusion makes clear that if, as American Home contends, the virus were, in fact, a pollutant or contaminant as defined by the Policy, as long as the virus causes direct physical loss or damage to covered property, as here, there is coverage for the loss or damage.  At the least, the exception creates an ambiguity that must be construed in favor of the insured.

46.     Thus, the plain language of the Policy in both the definition of "pollutants and contaminants" and the exclusion itself expressly states that virus can cause "direct physical loss or damage" to property.  American Home confirmed as much when, in its denial letter, after reviewing the losses detailed in UST's claim, it stated:  "In this instance, the cause of loss is COVID-19."  Exhibit 2 at 6.  Moreover, even if the pollutants and contaminants exclusion applies, the exception to it would provide UST coverage for its losses and damages caused by COVID-19.

-19-

47.     For all of these reasons, COVID-19 is a covered peril that causes direct physical loss or damage to property.  American Home's denial of UST's claim was wrongful; it finds no support in the Policy.

### *Additional Coverages: Attraction Property,*<br>*Extra Expense, Ingress/Egress, Civil Authority, and Relocation Expenses*

48.     The Policy purchased and paid for by UST also includes additional time element coverages to insure against the losses of business income and extra expenses caused by a variety of circumstances, which are applicable here.  *See* Policy § VI.D.

49.     First, the Policy states American Home "will pay the actual business income loss sustained by [UST] and extra expense caused by direct physical loss or damage by a covered cause of loss to property of the type insured under this Policy that attracts business to a covered location provided that such property is within the distance from the covered location as shown in item 7.C. of the Declarations under Attraction Property (hereinafter, the attraction property)."  *Id*. § VI.D.1.  There are a variety of museums, art galleries, restaurants, bars, retail stores, libraries, and other places near UST that serve as an attraction for students to attend UST.  When selecting which college to attend, many of UST's students decided, in whole or part, to attend UST because of the nearby attractions it offered.  Because those attraction properties were impaired by direct physical damage or loss caused by COVID-19, UST is entitled to attraction property coverage under the Policy.

50.     Second, the Policy provides that American Home "will pay loss sustained by [UST] for extra expense during the period of indemnity resulting from direct physical loss or damage caused by a covered cause of loss." *Id*. § VI.D.6. These extra expenses include costs to temporarily continue UST's business as nearly normal as practicable during the pandemic.

51.     Third, the Policy provides that American Home "will pay the actual business income loss sustained by [UST] and extra expense caused by a direct physical loss or damage by a covered cause of loss to property not insured under this Policy, provided that: a. [s]uch direct physical loss or damage to such property partially or totally prevents physical ingress to or egress from a covered location; and b. [s]uch property not insured under this Policy is within the distance from the covered location as shown in Item 7.C. of the Declarations under Ingress and Egress." *Id*. § VI.D.7.  Because property within one mile of UST suffered direct physical loss or damage due to COVID-19, thereby limiting, in whole or part, ingress to and egress from UST's covered property, UST is entitled to recover its business income loss and extra expenses associated with such limitations.

52.     Fourth, the Policy establishes that American Home "will pay the actual business income loss sustained by [UST] and extra expense if an order of civil or military authority limits, restricts or prohibits access to property not insured under

this Policy provided that: a. [s]uch property sustains direct physical loss or damage by a covered cause of loss; b. [s]uch property is within the distance from the covered location as shown in Item 7.C. of the Declarations under Interruption by Civil or Military Authority; and c. [t]he effect of such order is to partially or totally prohibit access to a covered location." *Id*. § VI.D.8.  UST is entitled to such coverage because there are numerous orders promulgated by civil authorities restricting or prohibiting access to surrounding property, within one mile of UST, and the effect of such orders prohibited, in whole or part, access to UST's covered properties.

53.     Fifth, the Policy states American Home "will pay for reasonable and necessary relocation expenses incurred by you to relocate students, residents, lawful occupants or patients to other facilities or properties in the event that their rooms or rented space at a covered location are uninhabitable due to direct physical loss or damage by a covered cause of loss." *Id.* § III.3 (Endorsement).  UST is entitled to such coverage because many of its covered facilities including dormitories, food halls, study spaces, offices, and classrooms have become uninhabitable as a result of the direct physical loss and damage caused by COVID-19.  UST has incurred significant expenses relocating students who had to be quarantined, investigating alternative housing, classroom, and office options for students, professors, staff, and guests to promote social distancing, and setting up fixtures and equipment to

establish and expand virtual instruction.

## CAUSES OF ACTION

### COUNT ONE:
### BREACH OF CONTRACT

54.     UST incorporates the above-referenced paragraphs as if stated fully herein.

55.     The Policy, which includes the terms described above and set forth in the attached Exhibit 1, constitutes a valid, binding contract between American Home and UST.

56.     UST fully performed its contractual obligations by paying all premiums due under the Policy.

57.     American Home materially breached the Policy by denying coverage for business income loss, extra expense, and other losses sustained by UST as a result of direct physical loss or damage to covered property caused by a covered peril.  In addition, American Home breached the Policy by denying all time element coverages to UST, including but not limited to business interruption, attraction property, extra expense, ingress and egress, and interruption by civil or military authority.

58.     American Home's material breach of the Policy has caused and will continue to cause UST millions of dollars in damages in the form of lost business

income and extra expense.

## COUNT TWO:
## DECLARATORY JUDGMENT

59.     UST incorporates the above-referenced paragraphs as if stated fully herein.

60.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in a "case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  An actual controversy has arisen between American Home and UST as to the rights, duties, responsibilities, and obligations of the parties under the Policy.

61.     Pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, UST seeks the following declarations to determine questions of actual controversy between the parties, including but not limited to:

a)      The Policy is a valid and binding contract obligating American Home to indemnify UST for covered losses;

b)      UST has substantially performed or otherwise satisfied all conditions precedent to bringing this action and obtaining coverage under the Policy, or, alternatively, UST has been excused from performance by American Home's acts, representations, conduct, or omissions;

c)      American Home has failed to indemnify UST for covered losses under the Policy;

d)      COVID-19 is a covered cause of loss under the Policy;

e)      UST did and continues to sustain direct physical loss or damage to covered property at a covered location that was and is caused by COVID-19;

f)      UST is entitled to recover its actual business income loss sustained due to the necessary partial or total interruption of its business operations, services, or production during the pandemic caused by COVID-19;

g)      UST is entitled to additional coverage under the Policy pursuant to the time element provisions, including but not limited to attraction property, extra expense, ingress and egress, and interruption by civil or military authority;

h)      No exclusion to coverage, including the pollution and contamination exclusion, applies under the Policy;

i)      UST is owed the actual business income loss and extra expense it has sustained as a result of COVID-19; and

j)      UST is owed relocation expenses it incurred as a result of COVID-19.

## COUNT THREE:
## VIOLATIONS OF TEXAS INSURANCE CODE

62.     UST incorporates the above-referenced paragraphs as if stated fully herein.

63.     American Home's failure and refusal to pay UST's claim for coverage constitutes a violation of TEX. INS. CODE §§ 541.001 *et seq*. and 542.001 *et seq*. (the "Code").

64.     Specifically, American Home violated the Code by, among other things: (i) misrepresenting to UST the policy provisions at issue, (ii) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of UST's claim for which its liability was reasonably clear; and (iii) failing to promptly provide UST a reasonable explanation of the basis in the policy for its denial of UST's claim.

65.     American Home's actions and inactions were a cause of damages to UST, including, without limitation, attorneys' fees incurred by UST.

66.     On information and belief, American Home's unlawful acts and practices were committed knowingly as defined in 541.002 and demonstrate actual conscious indifference for the rights and welfare of UST.  In refusing to timely indemnify UST for its losses, American Home knew UST would incur and continue to incur substantial expenses despite having insurance coverage under the Policy. Accordingly, UST seeks recovery in an amount equal to three times its actual damages.

67.     American Home's failure to promptly pay UST's claim violates the Texas Insurance Code.  American Home is liable to UST, in addition to the amount of the claim for interest on the amount of the claim at 18 percent a year as damages, in addition to prejudgment interest.

-26-

## COUNT FOUR:
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

68.     UST incorporates the above-referenced paragraphs as if stated fully herein.

69.     American Home owed a duty to deal fairly and in good faith with UST in the processing of its claim.

70.     American Home knew or should have known that it was reasonably clear that UST's claim was covered.

71.     American Home's failure and refusal to pay UST's claim for coverage in light of its actual or constructive knowledge that it had no reasonable basis to deny the claim constitutes a breach of the duty of good faith and fair dealing.

72.     American Home's actions and inactions were a cause of damages to UST.

## CONDITIONS PRECEDENT

73.     All conditions precedent to recovery for all relief requested have been satisfied or waived.

## ATTORNEYS' FEES

74.     UST is entitled to recovery its attorneys' fees and court costs pursuant to Texas Civil Practice and Remedies Code §§ 38.001 (1), (2) and (8); and Texas Insurance Code §§ 541.152 and 542.060.

## DEMAND FOR JURY

75.     UST demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, UST prays for and demands:

1.      Judgment against American Home for all losses covered by the Policy;

2.      Declaratory relief as set out above;

3.      An award of up to treble damages for violations of the Texas Insurance
Code;

4.      An award of prejudgment interest;

5.      An award of interest as damages on the amount of the claim in the
amount of 18% per year;

6.      All costs and attorneys' fees and expenses incurred prosecuting these
claims; and

7.      Such other and further relief as the Court deems just and equitable.

*Dated August 12, 2020.*                    Respectfully submitted,

                                            */s/ Murray Fogler*
                                            Murray Fogler
                                            State Bar No. 07207300
                                            Federal I.D. No. 2003
                                            mfogler@foglerbrar.com
                                            **FOGLER, BRAR, O'NEIL & GRAY LLP**
                                            2 Houston Center
                                            909 Fannin, Suite 1640
                                            Houston, Texas 77010
                                            Telephone: (713) 481-1010
                                            Facsimile:  (713) 574-3224

                                            **LEAD ATTORNEY FOR PLAINTIFF**

Jas Brar
State Bar No. 24059483
Federal I.D. No. 892270
jbrar@foglerbrar.com
Robin O'Neil
State Bar No. 24079075
Federal I.D. No. 1618035
roneil@foglerbrar.com
**FOGLER, BRAR, O'NEIL & GRAY LLP**
2 Houston Center
909 Fannin, Suite 1640
Houston, Texas 77010
Telephone: (713) 481-1010
Facsimile:  (713) 574-3224

**OF COUNSEL FOR PLAINTIFF**