

Property Performance®

## American Home Assurance Company
### (A CAPITAL STOCK COMPANY)
**Executive Offices: 175 Water Street, New York, New York, 10038**

### COMMERCIAL PROPERTY POLICY
### DECLARATIONS

Policy Number: **061818876**                    Renewal of: **061818876**

**Item 1. Named Insured and Address:**

UNIVERSITY OF SAINT THOMAS
3800 MONTROSE BLVD
HOUSTON, TX  77006-4626

The Named Insured includes you and/or your affiliated and subsidiary companies and/or corporations as now exist or may hereafter be incorporated, constituted or acquired, including their interests as may appear in partnerships or joint ventures which you are legally obligated to insure.

**Item 2. Mortgageholder, Loss Payees, and Additional Insureds:**  Per Certificates of Insurance on file with us or any endorsement attached to and forming a part of this Policy.

**Item 3. Policy Period:**

From:  01 February 2020  To:  01 February 2021
(12:01 a.m., Standard Time at the **covered location**.)

**Item 4. Coverage Territory:**

United States, its territories and possessions and Puerto Rico, including their respective coastal waters.  If any coverage is provided on a worldwide basis, such worldwide coverage shall not include any jurisdiction prohibited or restricted under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or the United States of America.  Losses are only covered within the **coverage territory**.

**Item 5. Premium:**

**A.   Total Premium:**                    $610,000

**Item 6. Policy Limit:**  $224,336,441  This is our maximum liability in any one **occurrence** as a result of all covered loss or damage regardless of the number of **covered locations**, coverages, or **covered causes of loss** under this Policy.

**Item 7. Sublimits of Liability:**  The sublimits of liability stated in this Policy are part of and not in addition to the **Policy Limit** and any sublimits of liability shown in Item **7.A.** below.  The sublimits of liability are: (1) the maximum amount we will pay for all covered loss or damage arising out of the specific perils or coverages and/or (2) the maximum number of days for which we will pay for all covered loss or damage for a specific coverage, regardless of the number of **covered locations**, coverages or **covered causes of loss** under this Policy.  The sublimits of liability stated in this Policy are per **occurrence** unless otherwise indicated.

Regardless of the number of **occurrences,** any Annual Aggregate in this Policy is the maximum amount payable for all covered loss or damage for the applicable coverage or **covered cause of loss**.

*If the words NOT COVERED are shown instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or **Covered Cause of Loss,** then no coverage is provided for that coverage or **Covered Cause of Loss.***

**A. Sublimits Applicable to Specified Covered Causes of Loss** – Each of these sublimits is part of and not in addition to the **Policy Limit**.

   **1. Earth Movement**:

      **a.** Annual Aggregate: $25,000,000 for all covered loss or damage arising out of **earth movement**

      **b.** Subject to **A.1.a.** above, the Annual Aggregate for all covered loss or damage arising out of **earth movement** in California, Alaska, Hawaii, and Puerto Rico combined: Not Covered

      **c.** Subject to **A.1.a.** above, the Annual Aggregate for all covered loss or damage arising out of **earth movement** in the **Pacific Northwest Earthquake Zone**: Not Covered

      **d.** Subject to **A.1.a.** above, the Annual Aggregate for all covered loss or damage arising out of **earth movement** in the **New Madrid Earthquake Zone**: Not Covered

      **e. Other Sublimit(s) Applicable to Earth Movement:**

   **2. Flood**:

      **a.** Annual Aggregate: $15,000,000 for all covered loss or damage arising out of **flood**

      **b.** Subject to **A.2.a.** above, the Annual Aggregate for all covered loss or damage arising out of **flood** in a Special Flood Hazard Area (SFHA) as defined by the Federal Emergency Management Agency (FEMA) at the time of the loss: Not Covered

      If the property that sustains physical loss or damage due to **flood** is partially in such Special Flood Hazard Area (SFHA), then the entire property shall be deemed to be in that Special Flood Hazard Area (SFHA) and the loss or damage will be subject to the sublimit stated **A.2.b.** above.

      **c. Other Sublimit(s) Applicable to Flood:**

   **3. Named Storm**:

      **a. Named Storm**:  $50,000,000 for all covered loss or damage arising out of **named storm**

      **b.** Subject to **A.3.a.** above, for all covered loss or damage arising out of **named storm** in the **Tier 1 High Hazard Wind Zone (Consisting of Texas to North Carolina, Hawaii, Puerto Rico and U.S. Virgin Islands)**:  $50,000,000

      **c.** Subject to **A.3.a.** above, for all covered loss or damage arising out of **named storm** in the **Tier 1 High Hazard Wind Zone (Consisting of Virginia to Maine)**: Not Covered

 ©American International Group, Inc.
All Rights Reserved.

    **d.** Subject to **A.3.a.** above, for all covered loss or damage arising out of **named storm** in the **Tier 1 High Hazard Wind Zone (Florida)**: Not Covered

    **e.** Subject to **A.3.a.** above, for all covered loss or damage arising out of **named storm** in the **Tier 2 High Hazard Wind Zone**: $50,000,000

    **f.** **Other Sublimit(s) Applicable to Named Storm:**

For the purpose of the above sublimits of liability, **named storm** includes, but is not limited to, loss or damage from wind, hail, lightning, tornado, rain or water (whether driven by wind or not), **flood**, or any wind driven objects or debris.

In the event loss or damage by **flood** occurs concurrently or in any sequence with a **named storm**, regardless of whether the sublimits of liability for **flood** as shown in **A.2.a., A.2.b.,** and/or **A.2.c.** (hereinafter, the **applicable flood sublimit**) is/are greater or less than the applicable Named Storm sublimit, the maximum amount we will pay per **occurrence** for all such covered loss or damage by **flood** shall be the **applicable flood sublimit**, subject always to the maximum applicable Named Storm sublimit. However, if **flood** is not covered, the maximum amount we will pay per **occurrence** for all such covered loss or damage arising out of **named storm** shall exclude loss or damage by **flood**.

**4.** **Equipment Breakdown:** $150,000,000 for all covered loss or damage from **equipment breakdown**.

    • **Other Sublimit(s) Applicable to Equipment Breakdown:**

    **5.** **Terrorism:** Not Covered

**B.** **Sublimits Applicable to Additional Coverages** – Each of these sublimits is part of and not in addition to the **Policy Limit** and any sublimits shown in Item **7.A.** of the Declarations.

| | | |
|---|---|---|
| **1.** | Accounts Receivable: | $1,000,000 if caused by a **covered cause of loss** or Not Covered if caused by a **cyber peril** |
| **2.** | Arson or Theft Reward: | $100,000 |
| **3.** | Brands and Labels: | $1,000,000 |
| **4.** | Cyber Coverages: | Not Covered |
| **5.** | Debris Removal: | $2,500,000 |
| **6.** | Deferred Payments: | $250,000 |
| **7.** | Demolition and Increased Cost of Construction: | |
| | Demolition Coverage A: | $224,336,441 |
| | Demolition Coverage B: | $5,000,000 |
| | Demolition Coverage C: | $5,000,000 |
| **8.** | Errors or Omissions: | $5,000,000 |
| **9.** | Expediting Expenses: | $500,000 |
| **10.** | Fine Arts: | $500,000 |

 ©American International Group, Inc.
All Rights Reserved.

| | | |
|---|---|---|
| **11.** | Fire Brigade Charges: | $100,000 |
| **12.** | Fungus, Mold or Spore: | $1,000,000 |
| **13.** | Installation Coverage: | $500,000 |
| **14.** | Land and Water Clean-Up: | $100,000 |
| **15.** | Locks and Keys: | $100,000 |
| **16.** | Machinery or Equipment Startup Option: | $2,500,000 |
| **17.** | Miscellaneous Property: | $2,500,000 |
| **18.** | Money: | $100,000 |
| **19.** | Newly Acquired Property: | $2,500,000 |
| **20.** | Outdoor Property: | $500,000 |
| **21.** | Pairs or Sets: | $10,000,000 |
| **22.** | Preservation of Property: | $1,000,000 |
| **23.** | Professional Fees: | $100,000 |
| **24.** | Railroad Rolling Stock: | Not Covered |
| **25.** | Service Interruption: | $1,000,000 |
| **26.** | Spoilage: | $250,000 |
| **27.** | Transit: | $500,000 maximum per **occurrence** sublimit, except Not Covered for all time element loss |
| **28.** | Upgrade to Green®: | 25% of the amount payable for direct physical loss or damage, subject to a maximum per **occurrence** sublimit of $500,000 |
| **29.** | Valuable Papers and Records: | $1,000,000 |

**C. Sublimits Applicable to Additional Time Element Coverages** - Each of these sublimits is part of and not in addition to the **Policy Limit** and any sublimits shown in Item **7.A.** of the Declarations.

| | | |
|---|---|---|
| **1.** | Attraction Property: | 30 days, subject to a maximum per **occurrence** sublimit of $500,000 and a distance limitation of 1 Miles |
| **2.** | Contingent Time Element: | Not Covered |
| **3.** | Contractual Penalties: | $100,000 |
| **4.** | Crisis Management: | Not Covered |
| **5.** | Extended Period of Indemnity: | 60 days |
| **6.** | Extra Expense: | $10,000,000 |
| **7.** | Ingress & Egress: | 30 days, subject to a maximum per **occurrence** sublimit of $1,000,000 and a distance |

©**American International Group, Inc.**
**All Rights Reserved.**

|   |   |   |
|---|---|---|
|   |   | limitation of 1 Miles |
| **8.** | Interruption by Civil or Military Authority: | 30 days, subject to a maximum per **occurrence** sublimit of $1,000,000 and a distance limitation of 1 Miles |
| **9.** | Logistics Extra Cost: | $100,000 |
| **10.** | Rental Value: | Not Applicable months |
| **11.** | Research and Development Expense: | $1,000,000 |
| **12.** | Royalties: | Not Covered |
| **13.** | Service Interruption: | $1,000,000 |
|   | Extended Period of Indemnity: | 60 days |
|   | Qualifying Period: | 24 hours |
| **14.** | Soft Costs: | $1,000,000 |

**D. Contractor's Equipment:** The sublimits below for contractor's equipment are part of and not in addition to the **Policy Limit** and any sublimits shown in Item **7.A.** of the Declarations.

$250,000 for physical loss or damage to contractor's equipment per item subject to a maximum sublimit of $500,000 per **occurrence**

**Item 8. Additional Time Element Provisions:**

**A. Ordinary Payroll:**                                                      Not Covered

**B. Maximum Operations Period of Indemnity (Gross Profits):**      6 months

**C. Maximum Construction Period of Indemnity (Gross Profits):**    6 months

**Item 9. Maximum Amount Payable:**

In the event of covered loss or damage hereunder, our liability shall be limited to the lesser of the following:

**A.** The actual adjusted amount of covered loss or damage, less applicable deductible(s), or

**B.** The **Policy Limit** or applicable sublimit(s) of liability in this Policy.

**Item 10. Deductibles:**

The deductibles shown below apply per **occurrence** unless otherwise stated.

**A. Policy Deductible**:

$25,000 applicable to all covered loss or damage under this Policy.

**B. Earth Movement**:

**1.** $250,000 applicable to all covered loss or damage arising out of **earth movement**.

**C. Flood**:

**1.** $250,000 applicable to all covered loss or damage arising out of **flood**.

**D. Named Storm**:

**1.** $250,000 any one **occurrence** for all covered loss or damage arising out of **named storm** (other than as set forth in this Named Storm deductible section);

    **2.** 3% of Total Insurable Values at the time of the loss at each **covered location** involved in the loss or damage, subject to a minimum of $250,000 any one **occurrence** for all covered loss or damage arising out of **named storm** in the **Tier 1 High Hazard Wind Zone (Consisting of Texas to North Carolina, Hawaii, Puerto Rico and U.S. Virgin Islands)**;

    **3.** 2% of Total Insurable Values at the time of the loss at each **covered location** involved in the loss or damage, subject to a minimum of $250,000 any one **occurrence** for all covered loss or damage arising out of **named storm** in the **Tier 2 High Hazard Wind Zone**;

**E.  Equipment Breakdown:**

    **1. a. Property Damage and Time Element Separate Deductibles:**

        **Property Damage:** $25,000 applicable to all covered loss or damage other than time element loss to **covered equipment** from **equipment breakdown** and in addition, the following Time Element deductible:

        **Time Element:** 24 hours following the **occurrence** applicable to all covered time element loss from **equipment breakdown**.

In each case of loss or damage covered by this Policy, we shall not be liable unless you sustain covered loss or damage in a single **occurrence** greater than any applicable deductible described in this Policy and then only for the amount in excess of such deductible.

If an amount is not shown for any deductible, then that deductible shall not apply. Also, if an amount is not shown with respect to a part of a deductible, then such part shall not apply, but the rest of the deductible shall apply. When this Policy covers more than one **covered location**, the deductible shall apply against the total loss or damage covered by this Policy in any one **occurrence**, unless otherwise stated herein.

If two or more deductible amounts provided in this Policy apply to a single **occurrence**, the total to be deducted shall not exceed the largest applicable deductible unless otherwise stated in this Policy.  However, if a separate Property Damage deductible and a separate Time Element deductible apply to loss or damage in a single **occurrence**, we shall apply both deductibles.  For any coverage for which there is a waiting period or a time period before coverage commences, such period shall apply in addition to any applicable deductible(s) set forth in this Policy.

For avoidance of doubt, with respect to the largest applicable deductible, if covered loss or damage by **flood** occurs concurrently or in any sequence with a **named storm**, then we shall apply the **flood** deductible set forth in Item **10.C.** or the **named storm** deductible set forth in Item **10.D.**, whichever is greater.

**Special Terms and Conditions:**

None

Producer:  Marsh Wortham, a division of Marsh USA Inc
Address:  2929 Allen Parkway, Suite 2500
          Houston, TX 77019

**IN WITNESS WHEREOF**, we have caused this Policy to be signed on the Declarations by our President, Secretary and our duly authorized representative.

_____
President

_____
Secretary

This Policy shall not be valid unless signed at the time of issuance by our authorized representative.

_____
Authorized Representative

_____         _____         _____
Countersignature (if applicable)             Date                      Countersigned At



*Property Performance®*
*Education Segment Endorsement*

**This endorsement, effective 12:01 A.M., 01 February 2020**
**Forms a part of Policy No.: 061818876**
**Issued to: UNIVERSITY OF SAINT THOMAS**
**By: American Home Assurance Company**

This endorsement modifies insurance provided by this Policy:

**SCHEDULE**

The following sublimits of liability are added to Item **7.** of the Declarations:

Each of these sublimits is part of, and not in addition to the **Policy Limit** and any other sublimits shown in Item **7.A.** of the Declarations.

| | | |
|---|---|---|
| **1.** | Personal Property of Students | $100,000 |
| **2.** | Prizes and Giveaways | $250,000 |
| **3.** | Radioactive Contamination | Not Covered |
| **4.** | Research Animals | $500,000 per animal subject to a maximum sublimit of  $1,000,000 |
| **5.** | Research Materials | $80,000,000 |
| **6.** | Evacuation Expenses | $250,000 |
| **7.** | Fundraising Expenses | $250,000 |
| **8.** | Relocation Expenses | $10,000,000 |
| **9.** | Professional Employee Replacement Expense | $5,000,000 |
| **10.** | Restocking Expenses for Library Collections | $5,000,000 |

The following additional deductible is added to Item **10.** of the Declarations:
**Evacuation Expenses:**

_____

**I.** The following provisions are added to the COVERED PROPERTY Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section:

   **1.** Buildings or structures donated to you;

   **2.** Helipads and attached equipment; and

   **3.** Personal property donated to you.

**II.** The following Additional Coverages are added to the ADDITIONAL COVERAGES Section:

   **1. PERSONAL PROPERTY OF STUDENTS**

   We will pay for direct physical loss or damage by a **covered cause of loss**, not including theft, at a **covered location** to personal property of the type insured under this Policy owned by your students, whether or not such property is in your care, custody and control.

   **2. PRIZES AND GIVEAWAYS**

   We will pay for direct physical loss or damage by a **covered cause of loss** to your **prizes and giveaways**:

   **a.** At your fundraising activity or fundraising event; or

**b.**   In transit to or from your fundraising activity or fundraising event.

**Prizes and giveaways** means:

**a.**   Precious metals or precious stones;

**b.**   Motor vehicles and watercraft;

**c.**   Tickets for sporting events, travel or other entertainment; and

**d.**   Certificates or vouchers for services;

that are used by you for fundraising.

With respect to precious metals or precious stones, a **covered cause of loss** is limited only to the peril of theft.

3.   **RADIOACTIVE CONTAMINATION**

If there is direct physical loss or damage, not otherwise excluded, to **covered property** caused by sudden and accidental radioactive contamination from material used or stored or from processes conducted at the **covered location** and there is neither a nuclear reactor nor any new or used nuclear fuel at such **covered location**, then we will pay for:

**a.**   Such damage to the **covered property** at the **covered location**, including resultant radiation damage to such **covered property**, and

**b.**   The costs to clean-up radioactive contamination from **covered property** at the **covered location**,

but not including any costs to test or monitor for any radioactive contamination.

4.   **RESEARCH ANIMALS**

We will pay for:

**a.**   Direct physical loss or damage by a **defined peril**, not otherwise excluded, at a **covered location** to research animals used in your research and development projects.   This Additional Coverage applies only if such research animals are fatally injured or their destruction is made necessary due to such loss or damage; and

**b.**   Your reasonable and necessary project restoration costs from the time of direct physical loss or damage by a **defined peril**, not otherwise excluded, at a **covered location** until the research animals are restored to the same degree of completion as existed prior to such direct physical loss or damage, but for no more than 24 months from the date of such physical loss or damage.

Project restoration costs do not include **ordinary payroll** or continuing fixed costs and expenses.

For the purposes of this Additional Coverage, **defined peril** includes **earth movement**, **flood**, **named storm**, **terrorism**, or interruption of incoming electricity, gas, fuel, steam, water or refrigeration, to the extent any such peril(s) are covered.

In the event that loss or damage is covered under this Additional Coverage and another Additional Coverage, then we shall apply the Additional Coverage that has the higher sublimit only.

 ©American International Group, Inc.
All Rights Reserved.

**5. RESEARCH MATERIALS**

We will pay for your reasonable and necessary project restoration costs from the time of direct physical loss or damage by a **defined peril**, not otherwise excluded, at a **covered location** until the materials used in your research projects are restored to the same degree of completion as existed prior to such direct physical loss or damage, but for no more than 24 months from the date of such physical loss or damage.

Project restoration costs do not include **ordinary payroll** or continuing fixed costs and expenses.

For the purposes of this Additional Coverage, **defined peril** includes **earth movement**, **flood**, **named storm**, **terrorism**, or interruption of incoming electricity, gas, fuel, steam, water or refrigeration, to the extent any such peril(s) are covered.

In the event that loss or damage is covered under this Additional Coverage and another Additional Coverage, then we shall apply the Additional Coverage that has the higher sublimit only.

**III.** The following Additional Time Element Coverages are added to the ADDITIONAL TIME ELEMENT COVERAGES Subsection of the TIME ELEMENT COVERAGES Section:

**1. EVACUATION EXPENSES**

We will pay reasonable and necessary **evacuation expenses** incurred by you as a result of compliance with a **mandatory evacuation order** which requires the evacuation of a **covered location(s)** and first occurs during the policy period.

This Additional Time Element Coverage begins on the date and time at each **covered location** that the **mandatory evacuation order** goes into effect and ends 96 hours after the date and time at each **covered location** when the appropriate civil authority allows you to return, but in no event longer than 30 days after the **mandatory evacuation order** goes into effect at each **covered location** (hereinafter, the **evacuation period**).

Regardless of the number of **covered locations** or **mandatory evacuation orders**, the sublimit of liability shown in the above Schedule is the most that we shall pay for all **evacuation expenses** arising out of one **occurrence**.

The following additional definitions apply to this Additional Time Element Coverage:

**a. Designated persons** means:

**(1)** Students, patients, residents and lawful occupants at a **covered location**; and/or

**(2)** Those employees who are essential to implement the **mandatory evacuation order** at a **covered location**.

**b. Evacuation expenses** means expenses incurred during the **evacuation period** to:

**(1)** Transport **designated persons** to another location;

**(2)** House and maintain **designated persons** at another location;

**(3)** Return **designated persons** to the **covered location** or, if the **covered location** is not habitable, to a suitable alternative location.

**c. Mandatory evacuation order** means the first public broadcast of a compulsory evacuation that: (1) is issued by a responsible civil authority as a result of a **covered**

©American International Group, Inc.
All Rights Reserved.

**cause of loss** and (2) is specific as to the effective date, time and area affected. No coverage is provided for a **mandatory evacuation order** due to the presence or suspected presence of any disease.

## 2. FUNDRAISING EXPENSES

We will pay fixed charges and expenses incurred by you due to the cancellation or interruption of a fundraising activity or event as a result of direct physical loss or damage at the venue where such fundraising activity or event is taking place due to a **covered cause of loss**.

## 3. RELOCATION EXPENSES

We will pay for reasonable and necessary **relocation expenses** incurred by you to relocate students, residents, lawful occupants or patients to other facilities or properties in the event that their rooms or rented space at a **covered location** are uninhabitable due to direct physical loss or damage by a **covered cause of loss**.

**Relocation expenses** means expenses for:

**a.** Packing, sorting, and transportation for students, residents, lawful occupants or patients, including their personal property;

**b.** Re-establishing new utility services, less refunds from discontinued services, at the damaged location;

**c.** Searching for and securing another facility or property;

**d.** Disconnecting and reconnecting fixtures and equipment; and

**e.** Storage costs while awaiting possession of another facility or property or restoration of an existing facility or property.

No coverage is provided for:

**a.** Loss caused by the termination of a lease or other agreement;

**b.** Security deposits, rents or other payments made to landlords or lessors of a new facility or property;

**c.** Down payments, legal fees and/or closing costs for the purchase of a new facility or property; or

**d.** Loss or damage to property.

**Relocation expenses** do not include any expenses paid under the EVACUATION EXPENSES Additional Time Element Coverage**.**

## 4. PROFESSIONAL EMPLOYEE REPLACEMENT EXPENSE

We will pay for reasonable and necessary expenses to replace the following professional employees:

**a.** Professors and teachers;

**b.** Administrators;

**c.** Doctors;

    **d.**  Nurses; and

    **e.**  Researchers;

who resigned due to direct physical loss or damage by a **covered cause of loss** to a **covered location**, provided that, the **period of indemnity** exceeds thirty (30) consecutive days.

Expenses include reasonable and necessary additional costs of hiring third-party recruiting firms, advertising expenses and overtime of your employees used to recruit replacement professionals, but shall not include the benefits or compensation of your employees, any other overtime wages or your general overhead.

**5.  RESTOCKING EXPENSES FOR LIBRARY COLLECTIONS**

We will pay for the reasonable and necessary expenses incurred by you to restock, re-catalog, relabel, and re-shelve your library books, library documents, including **rare materials** due to direct physical loss or damage by a **covered cause of loss** at a **covered location**.

**IV.** The DEMOLITION AND INCREASED COST OF CONSTRUCTION Additional Coverage and SPOILAGE Additional Coverage of the ADDITIONAL COVERAGES Section are deleted in their entirety and replaced with the following:

**1.  DEMOLITION AND INCREASED COST OF CONSTRUCTION**

In the event of direct physical loss or damage by a **covered cause of loss** to a building at a **covered location** that results in the enforcement of any law, ordinance, governmental directive or standard (hereinafter, **law or ordinance**) in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, we will pay:

    **a.**  Demolition Coverage A:  In accordance with the VALUATION Section, the cost to replace the undamaged portion of the damaged building as a consequence of enforcement of the **current code** that requires demolition of the undamaged portion of the same building;

    **b.**  Demolition Coverage B:  For the cost to demolish and clear the site of the undamaged portion of the damaged building, as a consequence of enforcement of the **current code** that requires demolition of the undamaged portion of the same building; and

    **c.**  Demolition Coverage C:  For the increased cost of repair or replacement of the damaged building and undamaged portion of the same building, limited to the cost that would have been incurred in order to comply with the **latest code** applicable to the repair or replacement of the damaged building.  However, we shall not be liable for any such increased cost unless the damaged building is actually repaired or replaced.

We shall not be liable for any cost set forth above:

    **a.**  Necessitated by the enforcement of any **law or ordinance** regulating any form of **pollutant or contaminant**; or

    **b.**  Incurred due to any **law or ordinance** with which you were legally obligated to comply prior to the time of the direct physical loss or damage.

This Additional Coverage only applies if replacement cost valuation applies to the damaged building.

 ©**American International Group, Inc.**
**All Rights Reserved.**

**Current code** means the **law or ordinance** in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the undamaged portion of the damaged building.

**Latest code** means the minimum requirements of the latest published **International Building Code**: (1) in effect at the time of loss or damage applicable to the construction, repair or use and occupancy of the damaged building where the loss occurred and (2) which would be adopted, in due course, by the jurisdiction where the damaged building is located.  If the **International Building Code** would not be adopted by the jurisdiction where the damaged building is located, then the term **latest code** shall be replaced by **current code** in Demolition Coverage C.

**International Building Code** means the model code regulations published by the International Code Council establishing minimum regulations for building systems, including the publicly available codes and standards referenced within the International Building Code (IBC) and International Existing Building Code (IEBC), whichever is applicable.

At your sole discretion, you may elect not to apply the **latest code** to any or all property for which coverage is provided under this Additional Coverage.  In such case, we will adjust the claim in accordance with the other applicable provisions of this Policy.

2. **SPOILAGE**

We will pay for physical loss or damage due to spoilage of your **perishable goods**, including while such goods are in transit, by:

**a.** A **covered cause of loss**.  Such physical loss or damage includes spoilage of your **perishable goods** due to contamination from the release of a refrigerant including, but not limited to, ammonia; or

**b.** An accidental event that results in extremes or changes of temperature, changes in relative humidity or changes in texture.

**V.** The RESEARCH AND DEVELOPMENT EXPENSE Additional Time Element Coverage is deleted and replaced with the following Additional Time Element Coverage:

**RESEARCH AND DEVELOPMENT EXPENSE**

We will pay **ordinary payroll**, but only to the extent shown in Item **8.A.** of the Declarations, and continuing fixed charges and expenses as a result of direct physical loss or damage by a **covered cause of loss** to **covered property** utilized in research and development activities.  The **ordinary payroll** and continuing fixed charges and expenses must be directly attributable to research and development activities, provided that such activities would not have produced income during the **period of indemnity**.

We shall only pay:

**a.** **Ordinary payroll** until research and development activities have been restarted at the same or another location with due diligence and dispatch; and/or

**b.** Continuing fixed charges and expenses until that part of the **covered location** where such research and development activities were performed is repaired, rebuilt or replaced with due diligence and dispatch.

**VI.** The following paragraph is added to the end of the EXTRA EXPENSE Additional Time Element Coverage:

This Additional Coverage does not apply to **relocation expenses** which are covered under the RELOCATION EXPENSES Additional Time Element Coverage and no coverage is provided for **relocation expenses** under this Additional Time Element Coverage.

**VII.** The following Valuation provision is added to Subsection **B.** of the VALUATION Section:

Research animals, if replaced, will be valued solely at the cost to purchase such commercially available laboratory animal.  If not replaced, research animals will be valued at the original purchase price.

**VIII.** Exclusion **1.a.** of the PERILS EXCLUDED Section is deleted in its entirety and replaced with the following:

Nuclear reaction or nuclear radiation or radioactive contamination from any cause, all whether direct or indirect, controlled or uncontrolled, proximate or remote, or contributed to or aggravated by a **covered cause of loss**.  However, if fire or sprinkler leakage not otherwise excluded ensues, we shall be liable for direct physical loss or damage by such ensuing fire or sprinkler leakage, but not including any loss or damage due to nuclear reaction, nuclear radiation, or radioactive contamination.

**IX.** The following definitions in the DEFINITIONS Section are deleted in their entirety and replaced with the following:

**1.** **Fine arts** means paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, including **rare materials**, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft and **money**.

**Fine arts** does not include any item which would qualify as **valuable papers and records**.

**2.** **Valuable papers and records** means:

**a.** Legal and financial agreements such as deeds and mortgages;

**b.** Addressograph plates;

**c.** Any data stored on printouts, punched cards;

**d.** Any paper, record or recording, in any form, that is irreplaceable due to the nature of the recording; and

**e.** Account receivable records.

**Valuable papers and records** does not include **fine arts**, **money** or **electronic data**.

**X.** The following definition is added to the DEFINITIONS Section:

- **Rare materials** means rare: books, manuscripts, periodicals, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm.

All other terms and conditions of the Policy remain the same.



_____
Authorized Representative

©American International Group, Inc.
All Rights Reserved.

**Forms a part of Policy No.: 061818876**
**Issued to: UNIVERSITY OF SAINT THOMAS**

## <u>SPECIAL TERMS AND CONDITIONS SCHEDULE</u>
### (CONTINUED FROM DECLARATIONS)

## AIR SUPPORTED STRUCTURES EXCLUSION (133318 (05/19))

The following property is added to the PROPERTY NOT COVERED Section:

- **Air supported structures**.

As used herein, **air supported structures** means structures composed of air-pressurized membrane beams, arches or other elements to enclose space and where the shape of the structure is attained by air pressure.

## AMENDMENT TO PROFESSIONAL FEES COVERAGE (133315 (05/19))

The PROFESSIONAL FEES Additional Coverage of the ADDITIONAL COVERAGES Section is deleted in its entirety and replaced with the following:

**PROFESSIONAL FEES**

We will pay reasonable and necessary expenses incurred by you for:

**1.** Your accountants, architects, auditors, engineers, or other professionals, or

**2.** Your own employees,

to prepare and certify particulars or details of your claim required by us resulting from a covered loss under this Policy for which we have accepted liability.

We will not pay for expenses incurred by you to utilize the services of property managers, attorneys, public adjusters, insurance agents or brokers, or any of their subsidiaries, related or associated entities, except that coverage is provided for your broker's forensic accounting units. We will not pay any fees or costs for consultation on coverage or negotiation of claims.

## BRIDGES AND TUNNELS EXCLUSION (133333 (05/19))

The words, "[b]ridges and tunnels intended for use by motor vehicles" in the PROPERTY NOT COVERED Section is deleted in its entirety and replaced with the following:

- Bridges and tunnels used for vehicular or rail travel;

## CONSTRUCTION ALL RISK COVERAGE (133311 (05/19))

### SCHEDULE

The following sublimits of liability are added to Item **7.B.** of the Declarations:

New Construction and Additions Sublimit:          $5,000,000
_____

**I.** The following **covered property** is deleted from the COVERED PROPERTY Subsection of INSURING AGREEMENT AND COVERED PROPERTY Section:

New construction and additions under construction at a **covered location**; and

Materials, equipment and supplies for new construction, additions, buildings or structures.

**II.** The following real and personal property is added to PROPERTY NOT COVERED Section:

New construction and additions under construction; and

Materials, equipment and supplies for new construction, additions, buildings or structures.

**III.** Subsection **b.** of the MISCELLANEOUS PROPERTY Additional Coverage is deleted in its entirety.

**IV.** The following Additional Coverage is added to the ADDITIONAL COVERAGES Section:

**NEW CONSTRUCTION AND ADDITIONS**

Subject to New Construction and Additions sublimit of liability shown in the above Schedule, we will pay for:

**1.** Direct physical loss or damage by a **covered cause of loss** to: **(i)** new buildings, structures and/or additions while in the course of construction at your **covered location** and **(ii)** materials, equipment and supplies for such new buildings, structures and/or additions at your **covered location**; and

**2.** Direct physical loss or damage by a **covered cause of loss** to construction materials that are intended to be used in your construction project at a **covered location**:

    **a.** From the time such construction materials are delivered to you or your contractor; and

    **b.** While such construction materials are:

        **i.** Located at an **off premises storage site**; or

        **ii.** In transit from an **off premises storage site** to another **off premises storage site** or to your construction project at a **covered location**; and

**3.** **Business income** loss and **extra expense** incurred by you during the **period of indemnity** as described for new buildings or additions in the course of construction if the **covered property** sustains direct physical loss or damage by a **covered cause of loss**.

In no event, shall **extra expense** include **soft costs**. The **period of indemnity** does not include any additional time to meet any **law or ordinance** requirements.

The definitions of the Policy apply to this endorsement. However, the following definition is added to this endorsement and supersedes any similar definitions to the contrary:

- **Off premises storage site** means a storage site away from a **covered location.**

In the event that loss or damage is covered under this Additional Coverage and another Additional Coverage, then we shall apply the Additional Coverage that has the lower sublimit only.

## CONTRACTOR'S EQUIPMENT DEFINITION (133312 (05/19))

The following definition is added to the DEFINITIONS Section :

- **Contractor's equipment** means equipment owned, leased or operated by contractors and/or subcontractors for new construction, additions, alterations or repairs at your **covered location** to the extent of your legal liability for direct physical loss or damage to such property.

The term **contractor's equipment** whether or not appearing in boldfaced type in the Policy shall be treated as having the meaning set forth in this endorsement.

## COVERAGE TERRITORY AMENDMENT (133314 (05/19))
### (EXCLUDING PUERTO RICO AND UNITED STATES VIRGIN ISLANDS– LOCAL VERSION)

Item **4.** of the Declarations, Coverage Territory, is deleted in its entirety and replaced with the following:

> **Item 4.  Coverage Territory:**
>
> United States, its territories and possessions, including their respective coastal waters, except Puerto Rico and the United States Virgin Islands.  If any coverage is provided on a worldwide basis, such worldwide coverage shall not include any jurisdiction prohibited or restricted under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or the United States of America.  Losses are only covered within the **coverage territory**.

## (1) DAMS, DIKES AND LEVEES AND (2) FILL BENEATH ANY BUILDINGS OR STRUCTURES EXCLUSION (133335 (05/19))

**I.**   Subsection **2.** of the PROPERTY NOT COVERED Section is deleted in its entirety and replaced with the following:

> **2.**   Land, land values, any substance in or on land, or any alteration to the natural condition of the land;

**II.**   The following is added to the PROPERTY NOT COVERED Section:

- Dams, dikes, levees, aqueducts and other surface containments.

- Fill beneath any buildings or structures.

## FURS, JEWELRY, PRECIOUS METALS, PRECIOUS STONES AND SEMI-PRECIOUS STONES EXCLUSION (133320 (05/19))

**I.**   The following is added to the PROPERTY NOT COVERED Section:

- Furs, jewelry, precious metals, precious stones, and semi-precious stones.  This exclusion does not apply to precious metals, precious stones and semi-precious stones used by you for industrial purposes.

**II.**   The exclusion beginning with the words, "Theft of precious metals . . ." and ending with the words, ". . . by you for industrial purposes[.]" is deleted in its entirety from Subsection **2.** of the PERILS EXCLUDED Section.

For avoidance of doubt, theft of precious metals or precious stones, except for those precious metals or precious stones used by you for industrial purposes is still excluded.

## GRAIN ELEVATOR EXCLUSION (133322 (05/19))

The following is added to the PROPERTY NOT COVERED Section:

- **Grain elevators**

As used herein, **grain elevator(s)** means the entire grain elevator complex, including receiving and testing offices, weighbridge, storage facilities, and processing facilities, and further includes any facility, silo, tower or elevator designed to stockpile, store, process, deposit or move grain.

## HAIL DEDUCTIBLE (124466 (09/17))
### (TIER 1 AND TIER 2 HIGH HAZARD HAIL ZONES)

**I.**   The following Hail deductibles are added to Item **10.** of the Declarations:

- **Hail**

    **1.  a.  Property Damage and Time Element Combined Deductible:**

    $250,000 applicable to all covered loss or damage arising out of **hail** (other than as set forth in **2.** or **3.** below); or

    **b.  Property Damage and Time Element Separate Deductibles:**

    Property Damage: Not applicable to all covered loss or damage other than time element loss arising out of **hail** (other than as set forth in **2.** or **3.** below); and

    Time Element: Not applicable to all covered time element loss arising out of hail (other than as set forth in **2.** or **3.** below).

    **2.**  3% of Total Insurable Values at the time of the loss at each **covered location** involved in the loss or damage, subject to a minimum of $250,000 any one **occurrence** for all covered loss or damage arising out of **hail** in the **Tier 1 High Hazard Hail Zone**.

    **3.**  3% of Total Insurable Values at the time of the loss at each **covered location** involved in the loss or damage, subject to a minimum of $250,000 any one **occurrence** for all covered loss or damage arising out of **hail** in the **Tier 2 High Hazard Hail Zone**.

    **Other Hail Deductible(s):**

**II.**   The following definitions are added to the DEFINITIONS Section and supersede any similar definitions of this Policy to the contrary:

**1. Tier 1 High Hazard Hail Zone** means the following hail zone within the geographic areas of the following states:

| | |
|---|---|
| Colorado | Counties of Adams, Arapahoe; Baca; Bent; Cheyenne; Crowley; Elbert; Kiowa; Kit Carson; Lincoln; Logan; Morgan; Phillips; Prowers; Sedgwick; Washington; Weld; and Yuma; |
| Kansas | Counties of Barber; Barton; Butler; Cheyenne; Clark; Comanche; Cowley; Decatur; Dickinson; Edwards; Ellis; Ellsworth; Finney; Ford; Gove; Graham; Grant; Gray; Greeley; Hamilton; Harper; Harvey; Haskell; Hodgeman; Jewell; Kearny; Kingman; Kiowa; Lane; Lincoln; Logan; Marion; McPherson; Meade; Mitchell; Morton; Ness; Norton; Osborne; Ottawa; Pawnee; Phillips; Pratt; Rawlins; Reno; Rice; Rooks; Rush; Russell; Saline; Scott; Sedgwick; Seward; |

|  | Sheridan; Sherman; Smith; Stafford; Stanton; Stevens; Sumner; Thomas; Trego; Wallace; and Wichita; |
|---|---|
| Nebraska | Counties of Arthur; Banner; Blaine; Box Butte; Brown; Buffalo; Chase; Cherry; Cheyenne; Custer; Dawes; Dawson; Deuel; Dundy; Franklin; Frontier; Furnas; Garden; Gosper; Grant; Harlan; Hayes; Hitchcock; Hooker; Kearney; Keith; Kimball; Lincoln; Logan; Loup; McPherson; Morrill; Perkins; Phelps; Red Willow; Rock; Scotts Bluff; Sheridan; Sherman; Sioux; Thomas; and Valley; |
| New Mexico | Counties of Chaves; Curry; Eddy; Lea; Quay; and Roosevelt; |
| Oklahoma | Counties of Alfalfa; Beaver; Beckham; Blaine; Caddo; Canadian; Carter; Cimarron; Cleveland; Comanche; Cotton; Custer; Dewey; Ellis; Garfield; Garvin; Grady; Grant; Greer; Harmon; Harper; Jackson; Jefferson; Kay; Kingfisher; Kiowa; Lincoln; Logan; Love; Major; Marshall; McClain; Murray; Noble; Oklahoma; Osage; Pawnee; Payne; Pottawatomie; Roger Mills; Stephens; Texas; Tillman; Washita; Woods; and Woodward; |
| South Dakota | Counties of Bennett; Butte; Custer; Fall River; Haakon; Harding; Jackson; Lawrence; Meade; Pennington; Perkins; Oglala Lakota; Todd; and Ziebach; |
| Texas | Counties of Andrews; Archer; Armstrong; Bailey; Baylor; Borden; Bosque; Brewster; Briscoe; Brown; Callahan; Carson; Castro; Childress; Clay; Cochran; Coke; Coleman; Collin; Collingsworth; Comanche; Concho; Cooke; Cottle; Crane; Crosby; Dallam; Dallas; Dawson; Deaf Smith; Denton; Dickens; Donley; Eastland; Ector; Ellis; Erath; Fisher; Floyd; Foard; Gaines; Garza; Glasscock; Gray; Grayson; Hale; Hall; Hamilton; Hansford; Hardeman; Hartley; Haskell; Hemphill; Hill; Hockley; Hood; Howard; Hutchinson; Jack; Johnson; Jones; Kent; King; Knox; Lamb; Lampasas; Lipscomb; Loving; Lubbock; Lynn; Martin; McCulloch; Midland; Mills; Mitchell; Montague; Moore; Motley; Nolan; Ochiltree; Oldham; Palo Pinto; Parker; Parmer; Pecos; Potter; Randall; Roberts; Rockwall; Runnels; San Saba; Scurry; Shackelford; Sherman; Somervell; Stephens; Sterling; Stonewall; Swisher; Tarrant; Taylor; Terrell; Terry; Throckmorton; Tom Green; Upton; Ward; Wheeler; Wichita; Wilbarger; Winkler; Wise; Yoakum; and Young; and |
| Wyoming | Counties of Campbell; Crook; Goshen; Laramie; Niobrara; Platte; and Weston. |

**2. Tier 2 High Hazard Hail Zone** means the following hail zone within the geographic areas of the following states:

| Colorado | Counties of Denver; Douglas; El Paso; Las Animas; Otero; and Pueblo; |
|---|---|
| Kansas | Counties of Allen; Anderson; Atchison; Bourbon; Brown; Chase; Chautauqua; Cherokee; Clay; Cloud; Coffey; Crawford; Douglas; Elk; Franklin; Geary; Greenwood; Jackson; Jefferson; Johnson; Labette; Leavenworth; Linn; Lyon; Marshall; Miami; Montgomery; Morris; Nemaha; Neosho; Osage; Pottawatomie; Republic; Riley; Shawnee; Wabaunsee; Washington; Wilson; Woodson; and Wyandotte; |
| Missouri | Counties of Andrew; Atchison; Barry; Barton; Bates; Benton; Buchanan; Camden; Cass; Cedar; Christian; Clay; Clinton; Crawford; Dade; Dallas; Dekalb; Dent; Douglas; Franklin; Gasconade; Greene; Henry; Hickory; Holt; Howell; Jackson; Jasper; Jefferson; Johnson; Laclede; Lafayette; Lawrence; |

©American International Group, Inc.
All Right Reserved.

|  | Lincoln; Maries; McDonald; Newton; Nodaway; Oregon; Osage; Ozark; Phelps; Platte; Polk; Pulaski; Ray; Shannon; St. Charles; St. Clair; St. Louis; Stone; Taney; Texas; Vernon; Warren; Washington; Webster; and Wright; and the City of St. Louis; |
|---|---|
| Nebraska | Counties of Adams; Antelope; Boone; Boyd; Burt; Butler; Cass; Cedar; Clay; Colfax; Cuming; Dodge; Douglas; Fillmore; Gage; Garfield; Greeley; Hall; Hamilton; Holt; Howard; Jefferson; Johnson; Keya Paha; Knox; Lancaster; Madison; Merrick; Nance; Nemaha; Nuckolls; Otoe; Pawnee; Pierce; Platte; Polk; Richardson; Saline; Sarpy; Saunders; Seward; Stanton; Thayer; Thurston; Washington; Wayne; Webster; Wheeler; and York; |
| New Mexico | Counties of Colfax; De Baca; Guadalupe; Harding; Lincoln; San Miguel; and Union; |
| Oklahoma | Counties of Adair; Atoka; Bryan; Cherokee; Choctaw; Coal; Craig; Creek; Delaware; Haskell; Hughes; Johnston; Latimer; Le Flore; Mayes; McCurtain; McIntosh; Muskogee; Nowata; Okfuskee; Okmulgee; Ottawa; Pittsburg; Pontotoc; Pushmataha; Rogers; Seminole; Sequoyah; Tulsa; Wagoner; and Washington; |
| South Dakota | Counties of Aurora; Beadle; Bon Homme; Brookings; Brown; Brule; Buffalo; Campbell; Charles Mix; Clark; Clay; Codington; Corson; Davison; Day; Deuel; Dewey; Douglas; Edmunds; Faulk; Gregory; Hamlin; Hand; Hanson; Hughes; Hutchinson; Hyde; Jerauld; Jones; Kingsbury; Lake; Lincoln; Lyman; Marshall; McCook; McPherson; Mellette; Miner; Minnehaha; Moody; Potter; Sanborn; Spink; Stanley; Sully; Tripp; Turner; Union; Walworth; and Yankton; |
| Texas | Counties of Anderson; Bandera; Bell; Bexar; Blanco; Bowie; Burnet; Camp; Cass; Cherokee; Comal; Coryell; Crockett; Culberson; Delta; Edwards; Falls; Fannin; Franklin; Freestone; Gillespie; Gregg; Harrison; Hays; Henderson; Hopkins; Hunt; Irion; Jeff Davis; Kaufman; Kendall; Kerr; Kimble; Kinney; Lamar; Limestone; Llano; Marion; Mason; Maverick; McLennan; Medina; Menard; Morris; Navarro; Panola; Presidio; Rains; Reagan; Real; Red River; Reeves; Rusk; Schleicher; Smith; Sutton; Titus; Travis; Upshur; Uvalde; Val Verde; Van Zandt; Williamson; Wood; and Zavala; and |
| Wyoming | Counties of Albany; Converse; Johnson; and Sheridan. |

3. **Hail**, with respect to the application of the deductibles set forth in this Endorsement only, means precipitation in the form of small balls or lumps usually consisting of concentric layers of clear ice and compact snow.

## HIGH HAZARD EARTHQUAKE ZONES (134577 (09/19))
### (LOCAL VERSION)

The following definitions in the DEFINITIONS Section are deleted and replaced with the following:

- **New Madrid Earthquake Zone** means the following counties (unless otherwise stated) within the following states of the United States of America:

  1. **Arkansas:** Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Lee, Mississippi, Monroe, Poinsett, Prairie, Randolph, Sharp, St. Francis;

©American International Group, Inc.
All Right Reserved.

2. **Illinois:** Alexander, Massac, Pulaski, Union, Williamson, Johnson, Pope, Saline, Jackson, Franklin, Perry, Hardin, Randolph, Monroe, St. Clair, Washington, Clinton, Bond, Madison, Jefferson;

3. **Indiana:** Posey, Vanderburgh, Gibson, Warrick, Pike;

4. **Kentucky:** Ballard, Carlisle, Fulton, Graves, Hickman, Livingston, McCracken, Marshall, Calloway;

5. **Mississippi:** Desoto, Tunica, Marshall, Tate, Coahoma, Bolivar;

6. **Missouri:** Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard, St. Louis, St. Francois, St. Charles, Jefferson, Franklin, Warren, Washington, Iron, Wayne, Reynolds, Madison, St. Genevieve, Perry and the City of St. Louis;

7. **Tennessee:** Carroll, Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton, Gibson, Madison, Fayette, Hardeman, Weakley.

- **Pacific Northwest Earthquake Zone** means:

1. The following counties within Washington state: Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, and Whatcom;

2. The following counties within Oregon state: Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Jackson, Josephine, Klamath, Lane, Lincoln, Linn, Marion, Multnomah, Tillamook, Polk, Washington, Yamhill; and

3. The Province of British Columbia, Canada.

## KNOWLEDGE OF OCCURRENCE (124471 (01/17))
### (RISK MANAGER, LEGAL COUNSEL, EXECUTIVE OFFICER)

The following is added to the GENERAL CONDITIONS Section:

**KNOWLEDGE OF OCCURRENCE**

Knowledge of loss or damage arising out of an **occurrence** on the part of your risk manager, legal counsel, **executive officer** or anyone authorized to give or receive notice of a claim constitutes knowledge by you.

As used herein, **executive officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

## LOSS PAYEE (124472 (01/17))

### SCHEDULE

**Loss Payee:**


**MailFinance Inc., ISAOA**
**P.O. Box 3547**
**Bellevue,**

**WA 98009**
**Mail Equip Lease # N11031550A**

©American International Group, Inc.
All Right Reserved.

**BB&T Insurance Center - Real Estate**
**P.O. Box 200047**
**Kennesaw, GA 30156-9246**


**Berkadia Commercial Mortgage, LLC**
**c/o Berkadia**
**P.O. Box 557**
**Ambler, PA 19002**


**The Bank of New York Mellon Trust Company, N.A.**
**Attn: Mr. James Henry**
**601 Travis St., 16th Floor**
**Houston, TX  77002**


**The Bank of New York**
**Attn: Bobby Smith**
**Towermark Plaza, 3rd Floor**
**10161 Centurion Pkwy**
**Jacksonville, FL 32256**


**The Northern Trust Company, ISAOA**
**PO Box 7060**
**Troy, MI 48007-7060**

---

**1.** Subject to the terms and conditions of this Policy, we will not pay any Loss Payee more than its financial interest in the **covered property**.

**2.** The Loss Payee shown in the above Schedule is a creditor, including a mortgageholder or trustee, whose interest in the **covered property** is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

**3.** For **covered property** in which both you and a Loss Payee have an insurable interest:

    **a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the **covered property**.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Policy, including occupation of the premises for purposes more hazardous than are permitted by the Policy, the Loss Payee shall still have the right to receive loss payment if the Loss Payee:

  **(1)** Pays any premium due under this Policy at our request if you have failed to do so;

  **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of the Loss Payee's failure to do so; and

  **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

  All of the terms of this Policy will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Policy:

  **(1)** The Loss Payee's rights will be transferred to us to the extent of the amount of our payment; and

  **(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

  At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest.  In this event, you will pay your remaining debt to us.

**e.** If we cancel this Policy, we will give written notice to the Loss Payee at least:

  **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

  **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

## PLAYING FIELD COVERAGE (124481 (01/17))

### SCHEDULE

Playing Field Sublimit:                            $10,000,000 per **occurrence**

Description of Playing Field:

 Foot ball field, tennis court, Soccer field,  Baseball field and  Volley ball court.

_____

The following Additional Coverage is added to the ADDITIONAL COVERAGES Section:

**PLAYING FIELD**

Subject to the Playing Field Sublimit of Liability, we will pay for direct physical loss or damage by a **covered cause of loss** to the **playing field** at the **covered location**.

As used herein, **playing field** means the playing field(s) as set forth in the Description of Playing Field above.

Coverage for the **playing field** at the **covered location** shall only be covered under this Additional Coverage.

## UNAUTHORIZED USE OF ELECTRICITY, GAS AND WATER (117394 (01/17))

### SCHEDULE

Unauthorized Use of Electricity, Gas and Water Sublimit:     $500,000 per **occurrence**

_____

The following Additional Coverage is added to the ADDITIONAL COVERAGES Section:

**UNAUTHORIZED USE OF ELECTRICITY, GAS AND WATER**

Subject to the Unauthorized Use of Electricity, Gas and Water sublimit of liability, we will pay for the additional cost of electricity, gas and/or water if you are legally responsible for the direct payment of such services when that cost arises from the unauthorized use by unauthorized persons taking possession, keeping possession or occupying the **covered location**.

For coverage to apply: (1) you must immediately report any unauthorized use to us upon such discovery; and (2) you must take all necessary steps to terminate such unauthorized use as soon as possible, but in no event later than 30 days after the unauthorized use is discovered.   Such unauthorized use of electricity, gas and/or water must first occur during the policy period and the expiration date of this Policy shall not cut short the Additional Coverage provided herein.

## VEHICLE PHYSICAL DAMAGE COVERAGE EXTENSION (117395 (01/17))
### (ON-PREMISES COVERAGE)

### SCHEDULE

Vehicle Physical Damage Sublimit:     $3,000,000 per **occurrence**

_____

The following Additional Coverage is added to the ADDITIONAL COVERAGES Section:

**VEHICLE PHYSICAL DAMAGE**

Subject to the Vehicle Physical Damage Sublimit, the following changes constitute the addition of on-premise Vehicle Physical Damage Coverage to this Policy.

**I.**   The following provision, "[v]ehicles licensed for highway use, **railroad rolling stock** and locomotives;" of the PROPERTY NOT COVERED Section is deleted in its entirety and replaced with the following:

   (a) Vehicles licensed for highway use, unless such vehicles are your owned or leased vehicles and located at or within 1000 feet of the **covered location**; (b) **railroad rolling stock**; or (c) locomotives;

**II.**   The following exclusion is added to Subsection **2.** of the PERILS EXCLUDED Section:

   Collision of a covered vehicle licensed for highway use with any other vehicle or property.

**III.**   The following Valuation provision is added to Subsection **B.** of the VALUATION Section:

Covered vehicles licensed for highway use at or within 1000 feet of the **covered location** will be valued at the least of the following:

**a.** The actual cash value of the damaged or stolen property at the time and place of the loss;

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality at the time and place of the loss; or

**c.** The reported value shown in the Schedule corresponding to the damaged or stolen covered vehicle.

This Additional Coverage does not apply to any Time Element coverage.

## WATER DAMAGE DEDUCTIBLE (124508 (01/17))

The following deductible is added to Item **10.** of the Declarations:

**Water Damage:**

$50,000 applicable to all covered loss or damage arising out of **water damage**.

As used herein, **water damage** means:

**a.** Discharge or leakage of water or steam from a plumbing, heating, air conditioning or other system or appliance; or

**b.** Discharge or leakage from fire protection equipment, other than discharge due to a fire, explosion or **earth movement**.

All other terms and conditions of the Policy remain the same.



Authorized Representative

©American International Group, Inc.
All Right Reserved.



Property Performance®

## American Home Assurance Company
### (A CAPITAL STOCK COMPANY)
**Executive Offices: 175 Water Street, 18th Floor, New York, New York 10038**

### COMMERCIAL PROPERTY POLICY

Various provisions in this Policy restrict coverage.  Please read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in Item **1.** on the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.  The word "Policy" includes the Declarations, the Special Terms and Conditions, endorsements and Schedules.  The words "Additional Coverage(s)" (without further description) include all: Additional Coverages and Additional Time Element Coverages.

Other words and phrases that appear in boldface type have special meaning.  Refer to: (1) the DEFINITIONS Section, (2) the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section, and (3) elsewhere in this Policy.  If such ordinarily boldfaced words and phrases are not bolded then such words and phrases shall include, but not be limited to, the specific meaning set forth in this Policy.

### SECTION I – INSURING AGREEMENT AND COVERED PROPERTY

**A.  INSURING AGREEMENT**

Subject to the terms and conditions of this Policy, we will pay for all risks of direct physical loss or damage by a **covered cause of loss** to **covered property** at a **covered location** (or within 1000 feet thereof) as described in the most recent Statement of Locations and Values on file with us.

**B.  SPECIFIED COVERED CAUSES OF LOSS**

Subject to the terms and conditions of this Policy, **covered causes of loss** include the following specified **covered causes of loss**.  With respect to **earth movement**, **flood** and **named storm**, coverage may be limited to specific areas, regions or zones.

1.  **Earth movement**, which means any natural or manmade:

    a.  Earthquake, including any earth sinking, rising or shifting related to such event;

    b.  Landslide, including any earth sinking, rising or shifting related to such event;

    c.  Mine subsidence, meaning subsidence of a manmade mine, whether or not mining activity has ceased;

    d.  Earth sinking, rising or shifting, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of real or personal property.  Soil conditions include, but are not limited to, contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface;

    e.  Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, sinkhole collapse, or subsidence; or

©**American International Group, Inc.**
**All Rights Reserved.**

    **f.**  Tsunami arising out of any of the above.

**2.** **Flood**, which means, whether natural or manmade, flood waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levy, dike or other surface containment structure, storm surge, storm tide, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not.  A tsunami shall not be considered a **flood**.

**3.** **Named storm**, which means a storm that, at any time, has been declared by the United States National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm, or Tropical Depression, including any status or designation change with respect to such storm.

If **earth movement**, **flood** or **named storm** is not covered, then any cause or event occurring concurrently or in any sequence with such peril(s) is also not covered, except for direct physical loss or damage to **covered property** caused by fire, sprinkler leakage or explosion following **earth movement**, **flood** or **named storm**, whichever is applicable.

Direct physical loss or damage to **covered property** caused by fire, sprinkler leakage or explosion shall not be considered loss or damage by **earth movement**, **flood** or **named storm**, whichever is applicable, within the terms and conditions of this Policy.

**4.** **Equipment Breakdown**, which means direct physical loss or damage to **covered equipment** that is the direct result of an **accident**.

**5.** **Terrorism**, which means the use or threatened use of force or violence against a person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

    **a.**  A government;

    **b.**  The civilian population of a country, state or community; or

    **c.**  Disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto (the "Act") is in effect, **terrorism** includes a certified act of terrorism defined by Section 102.  Definitions of the Act.

If **terrorism** is covered under this Policy, then a corresponding premium will be shown in Item **5.B.** of the Declarations. Whether or not **terrorism** is covered under this Policy, we do not cover loss or damage caused directly or indirectly by **biological and/or chemical terrorism** or **nuclear terrorism** whether controlled or uncontrolled, proximate or remote, sudden or over any length of time, or which is contributed to or aggravated by any other cause or event.  Such **biological and/or chemical terrorism** or **nuclear terrorism** is excluded regardless of any other cause or event occurring concurrently or in any sequence with such **biological and/or chemical terrorism** or **nuclear terrorism**.  **Biological and/or chemical terrorism** means the dispersal, discharge, or release of pathogenic, toxic, poisonous, or damaging biological or chemical agents or substances in an act(s) of **terrorism**.  **Nuclear terrorism** means an act(s) of **terrorism** involving or resulting in nuclear reaction or nuclear radiation or radioactive contamination.

©American International Group, Inc.    
All Rights Reserved.

If **terrorism** is not covered then any cause or event occurring concurrently or in any sequence with such **terrorism** is also not covered, including, any action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**, except for direct physical loss or damage to **covered property** caused by fire following **terrorism**.  With respect to this exception for fire following **terrorism**, no coverage is provided for: (1) fire following **biological or chemical terrorism** or **nuclear terrorism**, (2) any Additional Coverage, except debris removal under the DEBRIS REMOVAL Additional Coverage, or (3) any time element loss (including time element loss related to debris removal).  Notwithstanding any other valuation provision of this Policy to the contrary, we shall only pay the actual cash value of the insured building or other **covered property** at the time and place of the loss caused directly by the ensuing fire.

## C.  COVERED PROPERTY

We insure the following real property and personal property, unless excluded, at or within 1000 feet of a **covered location** that you own, operate, control or for which you are under an obligation to insure for direct physical loss or damage, to the extent of your interest in such property.

**1.**  Real Property:

Such property includes:

**a.**  Buildings or structures;

**b.**  New construction and additions under construction at a **covered location**;

**c.**  Improvements, betterments, alterations and repairs to buildings or structures;

**d.**  Materials, equipment and supplies for new construction, additions, buildings or structures;

**e.**  Temporary structures;

**f.**  Machinery, equipment, and fixtures that are permanently attached to a building;

**g.**  Above and below ground pipes, tanks, flues and drains; and

**h.**  Contractors' interests in Subsections **a.** through **g.** above, inclusive, to the extent that you have agreed in writing prior to loss to insure such interests.

**2.**  Personal Property:

Such property includes:

**a.**  Machinery and equipment;

**b.**  Merchandise, stock, supplies, **raw materials** and **finished goods**;

**c.**  Furniture and fixtures;

**d.**  Electronic equipment;

**e.**  **Processing water**;

**f.**  Molds and dies;

©**American International Group, Inc.**
**All Rights Reserved.**

**g.** Improvements and betterments in which you have an insurable interest;

**h.** Personal property, other than motor vehicles, of your directors, officers and employees at a **covered location**; and

**i.** Personal property of others in your care, custody and control at a **covered location** and for which you are legally liable.

## SECTION II − ADDITIONAL COVERAGES

Subject to the terms and conditions of this Policy, the following Additional Coverages in this Section and any Additional Coverage(s) added to this Section by endorsement or through the Special Terms and Conditions include coverage for **business income** loss and **extra expense** (unless otherwise stated). All loss or damage, including **business income** loss and **extra expense**, for which coverage is provided under the Additional Coverages is subject to the sublimits of liability as shown in Item **7.B.** of the Declarations, sublimits of liability shown elsewhere in this Policy and the **Policy Limit**. All **extra expense** is further limited to the Extra Expense sublimit of liability as shown in Item **7.C.** of the Declarations.

In addition, the maximum amount that we will pay per **occurrence** for all loss or damage with respect to:

**1.** Miscellaneous property as set forth in the MISCELLANEOUS PROPERTY Additional Coverage,

**2.** Newly acquired property as set forth in the NEWLY ACQUIRED PROPERTY Additional Coverage, or

**3.** Locations for which coverage is provided under the ERRORS OR OMISSIONS Additional Coverage,

is the corresponding Miscellaneous Property sublimit of liability, Newly Acquired Property sublimit of liability or Errors or Omissions sublimit of liability, all as shown in Item **7.B.** of the Declarations for each such Additional Coverage regardless of any other applicable coverages, Additional Coverages or Additional Time Element Coverages.

**1. ACCOUNTS RECEIVABLE**

We will pay your shortage in the collection of accounts receivable resulting from: (i) direct physical loss or damage by a **covered cause of loss** to your accounts receivable records or (ii) **corruption, erasure or alteration** by a **cyber peril**, not otherwise excluded, to your accounts receivable records stored as **electronic data**.

In addition, we will pay for:

**a.** Any collection expenses over and above the normal collection costs; and

**b.** Interest charges on any loan to offset impaired collections pending payment of such sums that cannot be collected.

In the event it is not possible to reconstruct your accounts receivable records after they have been physically lost or damaged, or corrupted, erased or altered and a shortage in the collection of accounts receivable is sustained, in calculating the amount due under this Additional Coverage, we shall consider the experience of the business in the collection of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurred and take into consideration any fluctuations during this same period.

You shall reimburse us for all amounts you recover on accounts receivable paid by us under this Additional Coverage, provided that such amounts were outstanding at the time of such loss or damage.   Any amount in excess of the amount of loss paid by us under this Additional Coverage shall belong to you.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

This ACCOUNTS RECEIVABLE Additional Coverage does not apply to loss due to:

**a.** Bookkeeping, accounting or billing errors or omissions; or

**b.** Alteration, corruption, erasure, falsification, manipulation, concealment, destruction, or disposal of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of **money**, or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

**2. ARSON OR THEFT REWARD**

We cover reasonable payment of any reward offered by you or on your behalf for information that leads to conviction of the perpetrator(s) of arson or theft to **covered property**.

Regardless of the number of informants, the amount of information obtained or the usefulness of such information, our maximum liability for any one **occurrence** of arson and/or theft is the Arson or Theft Reward sublimit of liability as shown in Item **7.B.** of the Declarations.

**3. BRANDS AND LABELS**

If branded or labelled merchandise covered by this Policy is physically damaged by a **covered cause of loss** and we elect to take all or any part of such merchandise at the value established by the terms of this Policy, we will pay reasonable costs incurred by you to:

**a.** Stamp "SALVAGE" on the merchandise or its containers or remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise; and

**b.** Re-label the merchandise or containers in compliance with the requirements of applicable law.

**4. CYBER COVERAGES**

**a. Electronic Data**

**i.** Standard Perils:

We will pay for: (1) **corruption, erasure or alteration** of your **electronic data** by: a **covered cause of loss** or lack of electricity or refrigeration by a **covered cause of loss**, and (2) the actual **business income** loss sustained by you arising out of such covered loss during the **cyber period of indemnity**.  Such **electronic data** is covered anywhere in the world, including while in transit.

**ii.** Cyber Perils:

We will pay for: (1) **corruption, erasure or alteration** of your **electronic data** arising out of a **cyber peril**, and (2) the actual **business income** loss sustained by you arising out of

©American International Group, Inc.
All Rights Reserved.

such covered loss during the **cyber period of indemnity**.  Such **electronic data** is covered anywhere in the world, including while in transit.

We will not pay for any loss under this Cyber Perils Additional Coverage for which coverage is provided under the Electronic Equipment Additional Coverage or would be provided under the Electronic Equipment Additional Coverage but for the exhaustion of the Electronic Equipment sublimit of liability shown in Item **7.B.** of the Declarations.

**b.** **Electronic Equipment**

We will pay for: (1) your covered electronic equipment, including electronic devices, electronic components or electronic storage media that is rendered useless for its intended purpose due to the introduction of **malicious code** which reprograms the software, including the firmware of such equipment, and (2) the actual **business income** loss sustained by you arising out of such covered loss during the **cyber period of indemnity**.  Such equipment is covered in the **coverage territory**, including while in transit.

**c.** **Denial of Service Attack**

We will pay the actual **business income** loss sustained by you during the **cyber period of indemnity** arising out of a **denial of service attack** that prevents access to or use of **your computer system**.

**d.** **Cyber Peril Service Interruption**

We will pay for physical loss or damage to **covered property** and the actual **business income** loss sustained by you arising from an interruption in: (1) incoming electricity, gas, fuel, steam, water, or refrigeration, (2) your **cloud computing service** or your **data, voice or video service**, or (3) outgoing sewerage, if such interruption is caused by:

**i.** **Corruption, erasure or alteration** of your service provider's **electronic data** on **your service provider's computer system** by a **cyber peril**, or

**ii.** **Denial of service attack** that prevents access to or use of **your service provider's computer system**.

There shall be no **business income** loss payable under this Cyber Peril Service Interruption Additional Coverage until the interruption exceeds the Cyber Peril Service Interruption Qualifying Period shown in Item **7.B.** of the Declarations and then the **business income** loss shall be measured from the date and time of the loss.  However, such Qualifying Period does not apply if there is physical loss or damage to **covered property** caused by the interruption.  This Additional Coverage ends on the date and time when: (1) incoming electricity, gas, fuel, steam, water, or refrigeration, (2) **cloud computing service** or **data, voice or video service,** or (3) outgoing sewerage, is restored, plus the lesser of the following:

**i.** The actual length of time required to restore your business to the condition that would have existed had no loss occurred; or

**ii.** The length of time set forth as the Cyber Peril Service Interruption Extended Period of Indemnity shown in Item **7.B.** of the Declarations,

subject to the Cyber Peril Service Interruption sublimit of liability shown in Item **7.B.** of the Declarations.

This period of time shall not be cut short by the end of the policy period.

Notwithstanding the foregoing, we will not pay for any interruption intentionally caused by you or any service provider.

No **extra expense** is provided under this Cyber Peril Service Interruption Additional Coverage.

In the event that loss or damage is covered under this Additional Coverage and another Additional Coverage, then we shall apply the Additional Coverage that has the higher sublimit only.

**e.   Data Preservation Expenses**

If coverage is provided under Subsections **4.a.** through **4.c.** above, inclusive, we will also pay the reasonable and necessary costs, over and above normal operating costs, incurred by you for your actions during or after a covered:

**i.**   **Denial of service attack** that prevents access to or use of **your computer system**, to temporarily protect against or minimize the effect of such **denial of service attack**; or

**ii.**   Loss involving **corruption, erasure or alteration** of your **electronic data** on **your computer system**, to prevent further **corruption, erasure or alteration** of your **electronic data** on **your computer system** from such loss.

Such reasonable and necessary costs are limited to the following, and such costs shall not be considered an **extra expense** under any other Additional Coverage:

**(a)**   Safeguarding your **electronic data** by moving such data to another location;

**(b)**   Temporarily obtaining additional bandwidth and/or equipment to support such bandwidth;

**(c)**   Conducting an investigation (including a forensic investigation) to determine the cause and scope of the **denial of service attack** or the **corruption, erasure or alteration** of your **electronic data**;

**(d)**   Hiring an expert to consult with you on: (i) the protection of your **electronic data** and (ii) the eradication of **malicious code** from **your computer system**; and

**(e)**   Paying employee overtime wages or contractor's costs to protect or preserve your **electronic data**.

**f.   Additional Exclusions**

The following additional exclusions apply to all Additional Coverages set forth in the CYBER COVERAGES Additional Coverage:

**i.**   We will not pay any loss, damage, cost or expense arising out of a breach in confidentiality or privacy of, or release of, any **electronic data** for any reason.

**ii.**   We do not cover theft of any **electronic data** unless there has been **corruption, erasure or alteration** of your **electronic data** and then we shall only pay the covered loss that is related to the **corruption, erasure or alteration** of your **electronic data**.

**iii.**   We will not pay any extortion payments or public relations expenses.

**iv.** We will not pay any loss, damage, cost or expense arising out of a **cyber peril** or **denial of service attack**, otherwise excluded under this Policy.

The maximum amount that we will pay for all loss or damage (including **corruption, erasure or alteration**) under any single Additional Coverage under this CYBER COVERAGES Additional Coverage is the corresponding sublimit of liability for such single Additional Coverage as shown in Item **7.B.** of the Declarations, regardless of any other applicable coverages, Additional Coverages or Additional Time Element Coverages.

For the purposes of the CYBER COVERAGES Additional Coverage, Subsection **4.a.i**, **4.a.ii.**, **4.b.**, **4.c.**, **4.d.** and **4.e.** shall each be treated as a separate Additional Coverage.

**5. DEBRIS REMOVAL**

If **covered property** at a **covered location** sustains direct physical loss or damage by a **covered cause of loss**, we will pay the reasonable and necessary expenses to remove debris of:

**a.** **Covered property** remaining from the **covered location** and the area immediately adjacent to such **covered location**; and

**b.** Uninsured property from the **covered location**.

We shall not be liable for the expense of removing contaminated or polluted uninsured property, nor the **pollutant or contaminant** therein or thereon, whether or not the pollution or contamination results from a **covered cause of loss**.

**6. DEFERRED PAYMENTS**

We will pay for your interest in personal property that sustains direct physical loss or damage caused by a **covered cause of loss** that is sold by you under a conditional sale, trust agreement or installment or deferred payment plan, but only to the extent you are unable to collect the unpaid balance of such interest.

This DEFERRED PAYMENTS Additional Coverage applies only to loss or damage occurring after the personal property is sold but prior to the earlier of the time your financial interest in such personal property has ceased or the termination or expiration of this Policy.

We shall only pay the least of the following:

**a.** The total amount of unpaid installments due to you with respect to such personal property;

**b.** The extent of your financial interest in such personal property;

**c.** The actual cash value of such personal property at the time such direct physical loss or damage occurs; or

**d.** The cost to repair or replace such personal property with materials of like kind and quality.

This DEFERRED PAYMENTS Additional Coverage does not apply to: (1) default by the buyer of such agreement or plan, or (2) the peril of theft or conversion by the buyer.

**7. DEMOLITION AND INCREASED COST OF CONSTRUCTION**

In the event of direct physical loss or damage by a **covered cause of loss** to a building at a **covered location** that results in the enforcement of any law, ordinance, governmental directive

or standard (hereinafter, **law or ordinance**) in effect at the time of loss or damage, regulating the construction, repair or use and occupancy of the property, we will pay:

**a.**   Demolition Coverage A:  In accordance with the VALUATION Section, the cost to replace the undamaged portion of the damaged building as a consequence of enforcement of a **law or ordinance** that requires demolition of the undamaged portion of the same building;

**b.**   Demolition Coverage B:  For the cost to demolish and clear the site of the undamaged portion of the damaged building, as a consequence of enforcement of a **law or ordinance** that requires demolition of undamaged portion of the same building; and

**c.**   Demolition Coverage C:  For the increased cost of repair or replacement of the damaged building and undamaged portion of the same building, limited to the cost that would have been incurred in order to comply with the minimum requirements of such **law or ordinance** regulating the repair or replacement of the damaged building.  However, we shall not be liable for any such increased cost unless the damaged building is actually repaired or replaced.

We shall not be liable for any cost set forth above:

**a.**   Necessitated by the enforcement of any **law or ordinance** regulating any form of **pollutant or contaminant**; or

**b.**   Incurred due to any **law or ordinance** with which you were legally obligated to comply prior to the time of the direct physical loss or damage.

## 8.   ERRORS OR OMISSIONS

We will pay for direct physical loss or damage by a **covered cause of loss** at locations within the **coverage territory** that are owned, leased or operated by you, if such loss or damage is not payable under this Policy solely due to:

**a.**   Any inadvertent error or unintentional omission in the description of the address of the property whether made at the inception of the policy period or subsequent thereto; or

**b.**   Failure through any inadvertent error or unintentional omission to:

    **i.**   Include in the Statement of Locations and Values any location that you intended to cover at the inception of this Policy; or

    **ii.**   Report any newly acquired property before the automatic coverage period ceases under the NEWLY ACQUIRED PROPERTY Additional Coverage.

We shall only pay for such direct physical loss or damage to the extent we would have paid had such error or omission not been made.

It is a condition of this ERRORS OR OMISSIONS Additional Coverage that any error or omission be reported to us when discovered and that you shall pay any additional premium due.

No coverage is provided at any location for new buildings, additions or alterations in the course of construction if you have failed to report such location due to an error or omission (other than inadvertent error or unintentional omission in the description of the address of the property).

This ERRORS OR OMISSIONS Additional Coverage does not apply to loss or damage which is covered under the MISCELLANEOUS PROPERTY Additional Coverage or NEWLY ACQUIRED PROPERTY Additional Coverage.

©American International Group, Inc.
All Rights Reserved.

**9. EXPEDITING EXPENSES**

We will pay reasonable and necessary expediting expenses to:

**a.** Make temporary repairs to **covered property**; or

**b.** Expedite the permanent repair or replacement of **covered property**;

that has sustained direct physical loss or damage by a **covered cause of loss**.

**10. FINE ARTS**

We will pay for direct physical loss or damage by a **covered cause of loss** to your **fine arts** at a **covered location**, a fair or exhibition or while in transit.  However, we will not pay for loss or damage as a result of restoring, repairing or retouching processes.

**11. FIRE BRIGADE CHARGES**

We will pay the following expenses resulting from a **covered cause of loss** to **covered property**:

**a.** Fire brigade charges and extinguishing expenses which you incur; and

**b.** Loss and disposal of fire extinguishing materials expended.

**12. FUNGUS, MOLD OR SPORE**

We will pay for direct physical loss or damage to **covered property** caused by or resulting from **fungus, mold or spore**, when such **fungus, mold or spore** is the direct result of direct physical loss or damage by a **covered cause of loss**.  This coverage includes reasonable and necessary costs or expenses to clean up, remove, contain, treat, detoxify or neutralize **fungus, mold or spore** from **covered property** resulting from such loss or damage.

**13. INSTALLATION COVERAGE**

We will pay for direct physical loss or damage by a **covered cause of loss** to your materials, equipment, machinery and supplies that you designate for use in construction or installation projects at locations other than **covered locations**.

Coverage begins at the time when the materials, equipment, machinery or supplies arrive at the site of installation and ends on the earliest of the following times:

**a.** When your interest in such property ceases;

**b.** When such property has been substantially accepted by the owner or purchaser; or

**c.** When this Policy is cancelled or expires.

**14. LAND AND WATER CLEAN-UP**

We will pay reasonable and necessary expenses incurred by you to remove, dispose of, or clean-up the actual presence of **pollutants or contaminants** from land or water at a **covered location** when such land or water is contaminated or polluted due to a **covered cause of loss** at that **covered location**.  This LAND AND WATER CLEAN-UP Additional Coverage does not apply unless such expenses are reported to us within 180 days after the date of such **covered cause of loss**.

©**American International Group, Inc.**
**All Rights Reserved.**

**15. LOCKS AND KEYS**

We will pay reasonable and necessary expenses incurred by you for replacing or reprogramming your locks and keys resulting from direct physical loss or damage to such locks and keys by a **covered cause of loss**.

Coverage includes the reasonable and necessary cost to replace, adjust or reprogram undamaged locks to accept new keys or entry codes.

**16. MACHINERY OR EQUIPMENT STARTUP OPTION**

If your covered machinery or equipment has sustained direct physical loss or damage by a **covered cause of loss** and if such machinery or equipment sustains direct physical loss or damage as a result of a **startup**, then you shall have the option to:

**a.** Treat all such loss or damage to your machinery and equipment as a single **occurrence**; or

**b.** Treat the subsequent loss or damage to your machinery and equipment as a separate **occurrence**.

This MACHINERY OR EQUIPMENT STARTUP OPTION Additional Coverage only applies if the **startup** occurs during this policy period or the policy period of the subsequent renewal Policy issued by us to you.   The additional direct physical loss or damage to your machinery and equipment as a result of such **startup** shall be subject to the Machinery or Equipment Startup Option sublimit of liability as shown in Item **7.B.** of the Declarations.

As used herein, **startup** means:

**a.** The introduction of feedstock or other materials into your machinery or equipment; or

**b.** The commencement of fuel or energy supply to your machinery or equipment.

**17. MISCELLANEOUS PROPERTY**

We will pay for direct physical loss or damage to property of the type insured by a **covered cause of loss** to the extent of your insurable interest:

**a.** At or which is a **miscellaneous unnamed location**;

**b.** Consisting of construction materials that are intended to be used in your construction project at a **covered location**:

  **i.** From the time such construction materials are delivered to you or your contractor; and

  **ii.** While such construction materials are:

   **(a)** Located at an **off premises storage site**; or

   **(b)** In transit from an **off premises storage site** to another **off premises storage site** or to your construction project at a **covered location**.

  As used herein, **off premises storage site** means a storage site away from a **covered location**.

**c.** Consisting of personal property:

  **i.** owned by you; or

    **ii.**  in your care, custody and control, but only to the extent of your legal liability,

    while such personal property is temporarily at a location you do not own, rent, lease or operate.

No coverage is provided for new buildings, additions or alterations in the course of construction under this MISCELLANEOUS PROPERTY Additional Coverage.

This MISCELLANEOUS PROPERTY Additional Coverage does not apply to loss or damage which is covered under the ERRORS OR OMISSIONS Additional Coverage or NEWLY ACQUIRED PROPERTY Additional Coverage.

## 18. MONEY

We will pay for direct physical loss or damage to **money** by a **covered cause of loss** at a **covered location**, except theft of any kind or description by any means or method including, but not limited to, theft by electronic means, burglary, robbery, larceny, conversion, extortion or voluntary parting of property for any reason.

## 19. NEWLY ACQUIRED PROPERTY

We will pay for direct physical loss or damage by a **covered cause of loss** to real or personal property of the type insured under this Policy that you rent, lease, purchase or acquire after the inception date of this Policy to the extent of your interest in such property.  This NEWLY ACQUIRED PROPERTY Additional Coverage ceases at the earliest of the following:

**a.**  120 days after the effective date of the rental, lease, purchase or acquisition of such property;

**b.**  When the newly acquired property is bound by us;

**c.**  When we notify you that we will not bind the newly acquired property; or

**d.**  When this Policy is cancelled or expires.

This NEWLY ACQUIRED PROPERTY Additional Coverage does not apply to loss or damage which is covered under the ERRORS OR OMISSIONS Additional Coverage or MISCELLANEOUS PROPERTY Additional Coverage.

## 20. OUTDOOR PROPERTY

We will pay for direct physical loss or damage to **outdoor property** at a **covered location**, but only for loss or damage caused directly by a **defined peril** (other than **windstorm or hail**), not otherwise excluded.

## 21. PAIRS OR SETS

If two or more components or parts that comprise **covered property** are necessary for a whole or complete object, then we will pay for the reduction in value of insured components or parts of such object due to direct physical loss or damage by a **covered cause of loss** to the other insured components or parts of such object.

## 22. PRESERVATION OF PROPERTY

We will pay for:

**a.** Reasonable and necessary costs, over and above normal operating costs, incurred by you for actions to temporarily protect or preserve **covered property**, and

**b.** Direct physical loss or damage by a **covered cause of loss** to **covered property** removed from a **covered location**,

provided that such actions or removal is necessary due to imminent direct physical loss or damage to **covered property** by a **covered cause of loss**. The Preservation of Property sublimit of liability as shown in Item **7.B.** of the Declarations does not apply to Subsection **b.** above.

This PRESERVATION OF PROPERTY Additional Coverage does not apply to **covered property** while in transit.

## 23. PROFESSIONAL FEES

We will pay reasonable and necessary expenses incurred by you for:

**a.** Your accountants, architects, auditors, engineers, or other professionals,

**b.** Your own employees, or

**c.** Your insurance agent's or broker's subsidiaries, related or associated entities,

to prepare and certify particulars or details of your claim required by us resulting from a covered loss under this Policy for which we have accepted liability.

We will not pay for expenses incurred by you to utilize the services of property managers, attorneys, public adjusters, or any of their subsidiaries, related or associated entities or insurance agents or brokers. We will not pay any fees or costs for consultation on coverage or negotiation of claims.

## 24. RAILROAD ROLLING STOCK

We will pay for direct physical loss or damage by a **covered cause of loss** for your insurable interest in **railroad rolling stock**, but only while located at a **covered location**.

## 25. SERVICE INTERRUPTION

We will pay for physical loss or damage to **covered property** arising from an interruption in: (1) incoming electricity, gas, fuel, steam, water or refrigeration, (2) your **cloud computing service** or your **data, voice or video service**, or (3) outgoing sewerage, caused by direct physical loss or damage by a **covered cause of loss** to a service provider's property of the type insured under this Policy or to a transmission, distribution or communication line or a satellite, situated outside of the **covered location**.

If such service provider's property of the type insured and/or transmission, distribution or communication lines that sustain loss or damage by a **covered cause of loss** are located at the **covered location**, then, notwithstanding Subsection **1.e.** as set forth in the PERILS EXCLUDED Section, we will pay for physical loss or damage to **covered property** and such loss or damage is not subject to the Service Interruption sublimit of liability shown in Item **7.B.** of the Declarations.

No coverage for **business income** loss or **extra expense** is provided under this SERVICE INTERRUPTION Additional Coverage. However, **business income** loss and **extra expense** for Service Interruption may be provided under the SERVICE INTERRUPTION Additional Time Element Coverage.

©American International Group, Inc.
All Rights Reserved.

We shall not pay any loss under this SERVICE INTERRUPTION Additional Coverage for any interruption intentionally caused by you or any service provider.

**26. SPOILAGE**

We will pay for physical loss or damage due to spoilage of your **perishable goods**, including while such goods are in transit, by a **covered cause of loss.** Such physical loss or damage includes spoilage of your **perishable goods** due to contamination from the release of refrigerant including, but not limited to, ammonia.

**27. TRANSIT**

We will pay for direct physical loss or damage to **covered property** by a **covered cause of loss** while such property is in transit, including the following:

**a.** Personal property shipped to customers on F.O.B., C & F, or similar terms.  Your contingent interest in such shipments is admitted.

**b.** Your interest in, and legal liability for, personal property of others in your actual or constructive custody.

**c.** Personal property of others that you have sold for which you have agreed, prior to loss, to insure during the course of delivery.

**d.** Reasonable and necessary costs incurred by you following such loss or damage for:

    **i.** The transfer of **covered property** to another road vehicle and the delivery to the original destination or return to the original point of shipment, necessitated by fire, collision or overturning of any road vehicle operated by you;

    **ii.** The reloading of **covered property** onto a road vehicle operated by you for **covered property** which has fallen from a road vehicle operated by you; and

    **iii.** The removal of debris of **covered property** and site clearance of **covered property**, other than the removal of **pollutants or contaminants**.

**e.** Preservation of **covered property** necessarily and reasonably incurred to minimize such loss or damage.

**f.** General average and salvage charges on shipments for which coverage is provided under this TRANSIT Additional Coverage.

Subject to the terms and conditions of this Policy, this TRANSIT Additional Coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit in the **coverage territory** and Canada until delivered at the destination, provided that, the original point of shipment and the point of destination are within the **coverage territory**.

Permission is granted to you, without prejudice to this insurance, to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts.  You may waive subrogation against railroads under sidetrack agreements, but you shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

In addition to the property that is not covered under the PROPERTY NOT COVERED Section, the following property is not covered under this TRANSIT Additional Coverage:

a. Property insured under ocean marine policies.  Coverage on export shipments, not insured under ocean marine policies, does not extend beyond the time when the property is loaded on board an overseas vessel or aircraft.  Coverage on import shipments, not insured under ocean marine policies, does not attach until after discharge from an overseas vessel or aircraft;

b. Waterborne shipments unless by: (i) inland waters; (ii) roll-on/roll-off ferries operating between ports; or (iii) coastal shipments;

c. Shipments made by air unless via regularly scheduled passenger airlines or air freight carriers;

d. Property shipped by mail;

e. Property of others, including your legal liability therefor, hauled on vehicles owned, leased, or operated by you when acting as a common or contract carrier as defined by the Interstate Commerce Commission Regulations or other state regulatory agencies; or

f. Any transporting vehicle or conveyance.

These additional exclusions for transit also apply to any Additional Coverage providing coverage for transit.

If another Additional Coverage, other than this TRANSIT Additional Coverage, provides coverage for a specific type of **covered property** or **electronic data** while such property is in transit, then loss or damage for such property shall be subject to the sublimit of liability applicable to such Additional Coverage and no coverage for such property shall be provided under this TRANSIT Additional Coverage.

## 28. UPGRADE TO GREEN®

In the event of direct physical loss or damage to **covered property** by a **covered cause of loss**, we will pay for reasonable additional costs you incur to:

a. Repair or replace damaged **covered property** with that of like kind and quality which qualifies as **green**;

b. Clean-up, sort, segregate, and transport debris of damaged **covered property** to recycling facilities, if such debris can be recycled.  The amount we will pay is in addition to the DEBRIS REMOVAL Additional Coverage provided by this Policy;

c. Replace the physically damaged portion of your roof with a vegetative roof;

d. Flush out the air in the damaged area of the building that has been upgraded to **green** with 100% outside air and provide replacement filtration media for the building's ventilation system that controls the upgraded area;

e. Hire an architect and/or engineer accredited by a **green authority** to participate in the design and/or construction administration of the damaged portion of the building; and

f. Register, re-register and/or apply for certification or recertification of a building in accordance with requirements of the **green authority**.

The following additional exclusions apply to this UPGRADE TO GREEN Additional Coverage. We will not pay to upgrade to **green**:

**a.** Stock, **raw materials**, **finished goods**, merchandise, production machinery and equipment, **outdoor property**, electronic equipment not used in the functional support of the real property, **processing water**, molds and dies, personal property of others, or personal property of directors, officers and employees;

**b.** Any property which is valued at other than repair or replacement cost basis; or

**c.** Any cost incurred due to any **law or ordinance** with which you were legally obligated to comply prior to the time of the direct physical loss or damage.

**Green** means products, materials, methods and processes certified by a **green authority** that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

**Green authority** means an authority on **green** buildings, products, materials, methods or processes that is certified and accepted by Leadership in Energy and Environmental Design (LEED®), Green Building Initiative Green Globes®, Energy Star Rating System, BREEAM or any other recognized **green** rating system.

## 29. VALUABLE PAPERS AND RECORDS

We will pay for direct physical loss or damage to **valuable papers and records** by a **covered cause of loss**, including while in transit.

**SECTION III – VALUATION**

Subject to the terms and conditions of this Policy, the property described below will be valued as follows, unless otherwise provided in this Policy:

**A.** Buildings:

**1.** We shall pay the lesser of:

**a.** The cost to repair or replace (whichever is less) the building at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence, or

**b.** The actual cost incurred to repair or replace the building.

**2.** If the building is not repaired or replaced within 2 years after the date of loss, then we shall pay the actual cash value of such building at the time and place of the loss.

**3.** You may elect to rebuild at another site.  However, if you rebuild at another site, then our liability shall not be more than what we would have paid to repair or replace at the original site.

**B.** For Property Other Than Buildings:  Except with respect to the property set forth in Subsections **B.1.** through **B.12.** below, adjustment of loss or damage shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence unless not repaired or replaced, then at actual cash value:

**1.** Stock in process will be valued at the cost of **raw materials** and labor expended plus the proper proportion of overhead charges.

 ©American International Group, Inc.
All Rights Reserved.

2. **Finished goods** will be valued at the regular **selling price** at the location where the loss occurred or where the **finished goods** would ordinarily have been sold, whichever is greater.

3. **Raw materials**, supplies and other merchandise not manufactured by you will be valued at the replacement cost.

4. **Valuable papers and records** will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If such papers or records are not or cannot be replaced or restored, we will only pay the value of the blank papers or blank records.

5. **Electronic data** will be valued at the cost to restore the **electronic data** from duplicates to the condition that existed prior to the time of the loss.

   If duplicate **electronic data** is not available, then the **electronic data** will be valued at the cost to research, gather and assemble the **electronic data** to the condition that existed prior to the time of the loss.

6. Jigs and fixtures, dies, small tools and patterns will be valued at replacement cost, if replacement cost values have been reported to us and if actually replaced; otherwise, such items will be valued at the replacement cost minus the proper deduction for depreciation and/or obsolescence, but not to exceed the cost to repair or replace the property with materials of like kind and quality.

7. Leasehold improvements and betterments will be valued as follows:

   a. If repaired or replaced at your expense within 2 years after the date of the loss, the cost to repair or replace the damaged improvements and betterments with materials of like kind and quality;

   b. If not repaired or replaced within 2 years after the date of the loss, a proportion of your original cost determined by:

      i. Multiplying the original cost by the number of days from the date of loss to the expiration of the lease; and

      ii. Dividing the amount determined in **i.** above by the number of days from the installation of improvements to the expiration of the lease.

      If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

   c. If others pay for repairs or replacement, then no amount shall be payable.

8. **Fine arts** will be valued at the least of the following:

   a. The reasonable and necessary cost to repair or replace the **fine art**;

   b. The appraised value had no loss or damage occurred which will be determined at the time of the loss; or

   c. The agreed value, if any, on file with us.

9. Accounts receivable will be valued in accordance with the ACCOUNTS RECEIVABLE Additional Coverage.

 ©**American International Group, Inc.**
**All Rights Reserved.**

10. Property in Transit will be valued as follows:

    **a.** Property shipped to you or for your account will be valued at the actual invoice to you, plus such costs and charges (including your commission as selling agent) as may have accrued and become legally due on such property;

    **b.** Property which has been sold by you and has been shipped to the purchaser or for the account of the purchaser (if covered hereunder) will be valued at the amount of your selling invoice, including prepaid or advanced freight;

    **c.** Property of others not under invoice will be valued at the actual market value at the point of destination on the date of the loss, less any charges saved which would have become due and payable upon delivery at the destination; or

    **d.** Your property not under invoice will be valued in accordance with this VALUATION Section applying at the location from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination.

11. **Railroad rolling stock** will be valued at the lesser of the following:

    **a.** The actual cash value of the **railroad rolling stock** at the time and place of the loss; or

    **b.** The cost of repairing or replacing the **railroad rolling stock** at the time and place of the loss with other property of like kind and quality.

12. Contractor's equipment will be valued at actual cash value, unless an agreed value is on file with us.

**C.** In the alternative, you may elect not to repair or replace: (1) the building, (2) furniture and fixtures, (3) machinery, equipment, and fixtures that are permanently attached to the building, (4) electronic equipment and/or (5) leasehold improvements and betterments.  In such case, we will pay the loss proceeds based upon the cost to repair or replace (whichever is less) such property at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence, provided that such proceeds have been expended on other capital expenditures related to your business operations within 2 years after the date of loss.  We will not pay any loss proceeds for increased cost of repair or replacement of any property in order to comply with any **law or ordinance.**

If the above alternative is not elected by you or not payable under the terms set forth in the above paragraph, then the valuation provisions in Subsection **A.** or **B.** above, whichever is applicable, shall apply to such property.

With respect to this VALUATION Section, unless otherwise specifically stated, we will compute the valuations at the time and place of the loss.

### SECTION IV – PROPERTY NOT COVERED

Except as otherwise provided under the Additional Coverages or Additional Time Element Coverages (and in such event, only to the extent provided therein), we do not insure the following property:

1. **Money** or **fine arts**;

 ©American International Group, Inc.
All Rights Reserved.

2. Land, land values, any substance in or on land, or any alteration to the natural condition of the land; however, we do insure the following:

   **a.** Any manmade: dams, dikes, levees, aqueducts and other surface containments, if values for such structures are reported to us and accepted by us; and

   **b.** Fill beneath any buildings or structures;

3. Water, except water that is contained within any enclosed tank, piping system, or **processing water**;

4. **Outdoor property**;

5. Standing timber, growing crops or animals;

6. Vehicles licensed for highway use, **railroad rolling stock**, and locomotives;

7. Property sold by you under conditional sale, trust agreement, installment plan or other deferred payment plan;

8. Property in transit;

9. Underground mines, caverns, or mining shafts, and any property contained therein;

10. Offshore property, including offshore rigs, platforms or similar structures, and property contained therein or thereon;

11. Watercraft, aircraft including drones, satellites, and spacecraft, except:

    **a.** When unfueled and manufactured by you; or

    **b.** When drones are located at a **covered location** and used as part of your business operations;

12. Bridges and tunnels intended for use by motor vehicles;

13. Bulkheads, pilings, docks, piers and wharves;

14. Transmission, distribution and communication lines of any type or description; except when located at the **covered location** or within 1000 feet thereof;

15. Personal property in your care, custody, and control while you are acting as a bailee, a warehouseman, or a carrier for hire; and

16. **Electronic data**.

©American International Group, Inc.
All Rights Reserved.

## SECTION V − PERILS EXCLUDED

1. Except as otherwise provided under the Additional Coverages or Additional Time Element Coverages (and in such event, only to the extent provided therein), we do not insure loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage.  The following exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

   a. Nuclear reaction or nuclear radiation or radioactive contamination from any cause, all whether direct or indirect, controlled or uncontrolled, proximate or remote, or contributed to or aggravated by a **covered cause of loss**.  However:

   i. If fire or sprinkler leakage not otherwise excluded ensues, we shall be liable for direct physical loss or damage by such ensuing fire or sprinkler leakage, but not including any loss or damage due to nuclear reaction, nuclear radiation, or radioactive contamination; and

   ii. If there is direct physical loss or damage, not otherwise excluded, to **covered property** caused by sudden and accidental radioactive contamination from material used or stored or from processes conducted at the **covered location** and there is neither a nuclear reactor nor any new or used nuclear fuel at such **covered location**, then we will pay for:

   (a) Such damage to the **covered property** at the **covered location**, including resultant radiation damage to such **covered property**, and

   (b) The costs to clean-up radioactive contamination from **covered property** at the **covered location**,

   but not including any costs to test or monitor for any radioactive contamination.

   b. i. War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

   (a) By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

   (b) By military, naval, or air forces; or

   (c) By an agent of any such government, power, authority, or force;

   ii. Any weapon employing atomic fission, fusion or radioactive force, or any weapon that disperses radioactive material or a directed-energy or electromagnetic weapon, whether in time of peace or war, whether or not its discharge was accidental; or

   iii. Insurrection, rebellion, revolution, civil war, usurped power, seizure or destruction or any action taken by governmental authority in hindering, combating, or defending against such event;

   Including any consequence of Subsection **i.**, **ii.**, or **iii.** above of this exclusion.

   c. Asbestos removal, except asbestos that is part of **covered property** that incurs direct physical loss or damage caused by a **covered cause of loss** at the **covered location**.

 ©American International Group, Inc.
All Rights Reserved.

**d.** The actual, alleged or threatened release, discharge, escape or dispersal of **pollutants or contaminants**, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any **covered cause of loss** under this Policy.

However, this exclusion shall not apply to direct physical loss or damage to **covered property** from **pollutants or contaminants** caused by a **covered cause of loss** at the **covered location**, including the cost to clean-up **pollutants or contaminants** from **covered property** at the **covered location** resulting from such loss or damage.   No coverage is provided for testing or monitoring for **pollutants or contaminants.**   For the purpose of the exception to this exclusion only, **pollutants or contaminants** do not include radioactive contaminants.

**e.** Lack of:

**i.** Incoming electricity, fuel, water, gas, steam or refrigeration,

**ii.** Cloud computing service or data, voice or video service, or

**iii.** Outgoing sewerage.

**f.** Costs, expenses, fines or penalties incurred or sustained by or imposed on you by any government agency, court or other authority.

**g.** Any functioning or malfunctioning or lack of:

**i.** The internet or similar facility; or

**ii.** An intranet or private network, computer system, computer or computing device or similar facility;

all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, we shall cover only such ensuing loss or damage.

**h.** Error or omission in machine programming or instructions of **electronic data**, including, loss attributable to program design constraints, networking compatibility and original business software; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, we shall cover only such ensuing loss or damage.

**i.** Loss or damage to electronic equipment, including electronic devices, electronic components or electronic storage media that is rendered useless for its intended purpose due to the introduction of code which reprograms the software, including the firmware of such equipment; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, we shall cover only such ensuing loss or damage.

This exclusion shall not apply to such aforementioned electronic equipment that is physically damaged, other than the loss or damage sustained directly through the reprogramming of the software, including the firmware of such equipment.

**j.** Loss or damage due to any **cyber peril**, **denial of service attack**, or other similar peril affecting **electronic data** or the access to or use of computer hardware, software or other components thereof; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, we shall cover only such ensuing loss or damage.

**k.** Any fraudulent or dishonest act or acts committed alone or in collusion with others: by any of your proprietors, partners, directors, trustees, officers or employees, or by any party to whom property may have been entrusted (other than a carrier for hire).

However, a willful act of destruction by your employee without the knowledge of any of your proprietors, partners, directors, trustees or officers is covered.

**l.** **Fungus, mold or spore**; or any spores or toxins created or produced by or emanating from such **fungus, mold or spore**; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, we shall cover only such ensuing loss or damage.

**m.** Confiscation, seizure, appropriation, expropriation, nationalization, requisition for use or title, or willful destruction by any government, sovereign power, civil authority or military authority (de jure or de facto).

**n.** Loss or damage arising out of any **covered cause of loss**, Additional Coverages or Additional Time Element Coverages for which the words NOT COVERED or for which a specified amount or number of days is not shown in Item **7.** of the Declarations.

**2.** We will not pay for loss or damage caused by or attributable to any of the following:

**a.** Delay, loss of market, or loss of use.

**b.** Indirect, remote, or consequential loss or damage.

**c.** Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

**d.** Voluntary parting with title or possession of any property, including voluntary parting which is the result of larceny, false pretenses or any other similar act.

**e.** Faulty workmanship, material, construction, installation or design from any cause; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, we shall cover only such ensuing loss or damage.

**f.** Processing, fabricating, testing, packaging or other similar operations as part of manufacturing or processing of stock, materials or **finished goods**, including any voluntary or involuntary recall of any product for any reason; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, we shall cover only such ensuing loss or damage.

**g.** Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature or changes in relative humidity, all whether atmospheric or not; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, we shall cover only such ensuing loss or damage. However, with respect to extremes or changes in temperature, we will cover damage to fire protection equipment and machinery or equipment caused by such extremes or changes in temperature.

**h.** Settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; all unless direct physical loss or damage not otherwise excluded by this Policy ensues, in which event, we shall cover only such ensuing loss or damage.

**i.** Theft of precious metals or precious stones, except for those precious metals or precious stones used by you for industrial purposes.

©American International Group, Inc.
All Rights Reserved.

## SECTION VI − TIME ELEMENT COVERAGES

### A.  INSURING AGREEMENT

We will pay the actual **business income** loss sustained by you due to the necessary partial or total interruption of your business operations, services or production during the **period of indemnity** as a result of direct physical loss or damage to: (1) **covered property** by a **covered cause of loss** or (2) property of the type insured under this Policy by a **covered cause of loss** which directly affects your use of the **covered property**, provided that you are a lessee or occupant of the premises where the direct physical loss or damage occurred.

### B.  BUSINESS INCOME LOSS CALCULATIONS

For **business income** loss covered under this Policy, we will pay the greater of **Business Income Option #1** or **Business Income Option #2**, and all time element losses payable under any Additional Coverage or Additional Time Element Coverage will be adjusted using the same option:

1.  **Business Income Option #1 (Gross Profits):**

    a.  **Business income** means **gross profits** which is calculated as the sum produced by adding the **net profit** to the charges and expenses (including **ordinary payroll**, but only to the extent shown in Item **8.A.** of the Declarations) which necessarily continue during the **period of indemnity**.  If there is no **net profit**, **business income** means the sum of such charges and expenses which necessarily continue less any loss from business operations which would have been sustained had there been no **occurrence**.

    The amount payable as **gross profits** shall be limited to such loss resulting from a reduction in sales and shall not include **rental value**.

    b.  **Net profit** means the net profit after charges and expenses, but not including any capital receipts, outlays properly chargeable to capital, and deductions for taxes on profits.

2.  **Business Income Option #2 (Gross Earnings):**

    a.  **Business income** means:

        **(1)  Gross earnings**, less

        **(2)**  Charges and expenses which do not necessarily continue.

    b.  **Gross earnings** means net sales, including the sales value of production, derived from the operation of the business, excluding **rental value**, less the cost of all:

        **(1)  Raw materials** utilized in such production;

        **(2)**  Materials and supplies consumed in the operations or services;

        **(3)**  Services purchased from others (not your employees, including leased or temporary employees) that do not continue under contract;

        **(4)**  Merchandise sold; and

        **(5)  Ordinary payroll** (except to the extent **ordinary payroll** is shown in Item **8.A.** of the Declarations).

**3. Expenses to Reduce Loss**

We will pay expenses, over and above normal operating expenses, you incur in reducing loss otherwise payable under this coverage, but in no event shall we be liable for an amount greater than that for which we would have been liable had you been unable to continue any business operations or services.

**C. ADDITIONAL TIME ELEMENT CONDITIONS**

**1.** The following conditions are taken into consideration when calculating time element loss under this Policy:

**a.** Any amount recovered elsewhere under this Policy for loss or damage to goods and merchandise valued at **selling price** will not be considered as part of your **business income** loss nor shall the time required for the reproduction of **finished goods** be included as part of your **business income** loss.

**b.** Due consideration shall be given to the experience of the business before the date of loss or damage and the probable experience thereafter during the **period of indemnity** had no loss or damage occurred and to the continuation of only those normal charges and expenses that would have existed had no interruption of production or suspension of business operations or services occurred.

**c.** Any goods sold or services rendered at any location, whether or not a **covered location**, for the benefit of the business, either by you or on your behalf, shall be included in determining the amount of sales during the **period of indemnity**.

**d.** Due consideration shall be given to any **business income** which is made up within a reasonable period of time, not limited to the period during which business is interrupted.

**2.** You agree, as soon as practicable, to use overtime, extra time and any service or property owned, controlled or acquired by you or obtainable from other sources, whether or not the property or service is at a **covered location** or at any other location, for the purpose of continuing sales and reducing the loss payable hereunder.

**3.** You must act with due diligence and dispatch in repairing or replacing, in whole or in part, the physically damaged property to the same or equivalent physical and operating conditions that existed prior to the damage in order to continue sales and to reduce the loss payable hereunder.

**D. ADDITIONAL TIME ELEMENT COVERAGES**

The following Additional Time Element Coverages and any Additional Time Element Coverages added to this Subsection by endorsement or through the Special Terms and Conditions are subject to the terms and conditions of this Policy.  All loss or damage, including **business income** loss and **extra expense**, for which coverage is provided under the Additional Time Element Coverages is subject to the sublimits of liability as shown in Item **7.C.** of the Declarations, the sublimits of liability shown elsewhere in this Policy and the **Policy Limit**.  All **extra expense** is further limited to the Extra Expense sublimit of liability as shown in Item **7.C.** of the Declarations.

The **period of indemnity** for each Additional Coverage or Additional Time Element Coverage shall be the period corresponding with **Business Income Option #1 (Gross Profits)** or **Business Income Option #2 (Gross Earnings)**, whichever is applicable, unless a different time period is set forth in any of the Additional Coverages or Additional Time Element Coverages.

1.  **ATTRACTION PROPERTY**

    We will pay the actual **business income** loss sustained by you and **extra expense** caused by direct physical loss or damage by a **covered cause of loss** to property of the type insured under this Policy that attracts business to a **covered location**, provided that such property is within the distance from the **covered location** as shown in Item **7.C.** of the Declarations under Attraction Property (hereinafter, the **attraction property**).

    Coverage begins on the date and time that the **attraction property** sustains such direct physical loss or damage and ends on the date and time that the **attraction property** could be reopened for business, but in no event for more than the number of days shown in Item **7.C.** of the Declarations under Attraction Property.

2.  **CONTINGENT TIME ELEMENT**

    a.  If direct physical loss or damage by a **covered cause of loss** to property of the type insured under this Policy is sustained by your direct supplier or your direct customer, anywhere in the world and such loss or damage:

        (1) Wholly or partially prevents your direct supplier from supplying their goods and/or services to you; or

        (2) Wholly or partially prevents your direct customer from accepting your goods and/or services;

        then we will pay the actual **business income** loss and **extra expense** sustained by you during the **period of indemnity** with respect to such property of the type insured under this Policy.  This coverage does not apply to new buildings or additions in the course of construction of any direct supplier or direct customer.

    b.  Subject to the Contingent Time Element sublimit(s) of liability shown in Item **7.C.** of the Declarations, we will pay the actual **business income** loss and **extra expense** sustained by you in accordance with Subsection **a.** above:

        (1) If ingress to or egress from your direct supplier's or your direct customer's location is partially or totally prevented in accordance with the same exclusions, limitations and time period that apply to the INGRESS & EGRESS Additional Time Element Coverage;

        (2) If an order of civil or military authority limits, restricts or prohibits access to property not insured under this Policy, provided that the effect of such order partially or totally prohibits access to your direct supplier's or your direct customer's location in accordance with the same exclusions, limitations and time period that apply to the INTERRUPTION BY CIVIL OR MILITARY AUTHORITY Additional Time Element Coverage; or

        (3) If an order of civil or military authority limits, restricts or prohibits partial or total access to your direct supplier's or your direct customer's location and such order is a direct result of: (i) a violent crime, suicide, attempted suicide, or armed robbery at such location, or (ii) a death or bodily injury (not including, disease or sickness) at such location, subject to the same exclusions, limitations and time period that apply to CRISIS MANAGEMENT Additional Time Element Coverage.

        No Extended Period of Indemnity shall apply to Subsection **b.(1)**, **b.(2)**, or **b.(3)**.

©**American International Group, Inc.**
**All Rights Reserved.**

**c.** For the avoidance of doubt, the sublimit(s) of liability for Contingent Time Element shown in Item **7.C.** of the Declarations is/are subject to any applicable sublimit of liability for **earth movement**, **flood** or **named storm**.

**d.** Notwithstanding the foregoing, this CONTINGENT TIME ELEMENT Additional Time Element Coverage does not apply to:

**(1)** Any supplier of electricity, gas, fuel, steam, water, refrigeration, sewerage service, cloud computing service or data, voice or video service, or

**(2)** Your customers, if you are a supplier of electricity, gas, fuel, steam, water, refrigeration, sewerage service, cloud computing service or data, voice or video service.

## 3.  CONTRACTUAL PENALTIES

We will pay for contractual penalties you are legally liable to pay under the written provisions of a contract executed prior to the loss or damage due to direct physical loss or damage by a **covered cause of loss** to **covered property**.

## 4.  CRISIS MANAGEMENT

We will pay the actual **business income** loss sustained by you and **extra expense** due to an order of civil or military authority that limits, restricts or prohibits partial or total access to a **covered location**, provided that such order is a direct result of:

**a.** A violent crime, suicide, attempted suicide, or armed robbery at such **covered location**; or

**b.** A death or bodily injury (not including, disease or sickness) at such **covered location**.

Coverage begins on the date and time that the order of civil or military authority limits, restricts or prohibits partial or total access to the **covered location** and ends on the date and time that the **covered location** could be reopened for business, but in no event for more than the number of days shown in Item **7.C.** of the Declarations under Crisis Management.

## 5.  EXTENDED PERIOD OF INDEMNITY

With respect to: (i) **Business Income Option #2 (Gross Earnings)**, (ii) the RENTAL VALUE Additional Time Element Coverage and/or (iii) the CONTINGENT TIME ELEMENT Additional Time Element Coverage **(Business Income Option #2 – Gross Earnings only)**, we will pay **business income** loss or **rental value** loss, whichever is applicable, for the additional length of time required to restore your business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

**a.** The date on which our liability for loss or damage would otherwise terminate; or

**b.** The earlier date on which either:

**(1)** Normal operations resume; or

**(2)** Repairing, replacing, or rebuilding of the **covered property** that has been damaged is actually completed,

but in no event for a period of time exceeding the number of days shown in Item **7.C.** of the Declarations for the Extended Period of Indemnity.

 ©American International Group, Inc.
All Rights Reserved.

The maximum amount payable for all covered loss under:

**a.** This EXTENDED PERIOD OF INDEMNITY Additional Time Element Coverage and the RENTAL VALUE Additional Time Element Coverage combined shall be the Rental Value sublimit of liability, and

**b.** This EXTENDED PERIOD OF INDEMNITY Additional Time Element Coverage and the CONTINGENT TIME ELEMENT Additional Time Element Coverage combined shall be the applicable Contingent Time Element sublimit of liability.

This EXTENDED PERIOD OF INDEMNITY Additional Time Element Coverage does not apply to any Additional Coverages or Additional Time Element Coverages other than the RENTAL VALUE Additional Time Element Coverage and the CONTINGENT TIME ELEMENT Additional Time Element Coverage.

**6. EXTRA EXPENSE**

We will pay loss sustained by you for **extra expense** during the **period of indemnity** resulting from direct physical loss or damage by a **covered cause of loss**.  **Extra expense** means reasonable and necessary:

**a.** Extra expense incurred to temporarily continue as nearly normal as practicable the conduct of your business;

**b.** Extra costs of temporarily using your property or your facilities or the property or facilities of others; and

**c.** Costs to purchase **finished goods** from third parties to fulfill orders when such orders cannot be met, less the payment received for the sale of such **finished goods;**

all less any value remaining at the end of the **period of indemnity** for property obtained in connection with the above.

The maximum amount that we will pay for all **extra expense** under this Policy is the Extra Expense sublimit of liability as shown in Item **7.C.** of the Declarations regardless of any other applicable coverages, Additional Coverages or Additional Time Element Coverages.

**7. INGRESS & EGRESS**

We will pay the actual **business income** loss sustained by you and **extra expense** caused by direct physical loss or damage by a **covered cause of loss** to property not insured under this Policy, provided that:

**a.** Such direct physical loss or damage to such property partially or totally prevents physical ingress to or egress from a **covered location**; and

**b.** Such property not insured under this Policy is within the distance from the **covered location** as shown in Item **7.C.** of the Declarations under Ingress & Egress.

Coverage begins on the date and time that ingress to or egress from the **covered location** is partially or totally prevented and ends on the date and time that the **covered location** could be reopened for business, but in no event for more than the number of days shown in Item **7.C.** of the Declarations under Ingress & Egress.

This INGRESS & EGRESS Additional Time Element Coverage does not apply to any loss resulting from disruption of incoming or outgoing electricity, gas, fuel, water, steam, sewerage, refrigeration, cloud computing service, or any data, voice or video service.

**8.   INTERRUPTION BY CIVIL OR MILITARY AUTHORITY**

We will pay the actual **business income** loss sustained by you and **extra expense** if an order of civil or military authority limits, restricts or prohibits access to property not insured under this Policy provided that:

**a.**   Such property sustains direct physical loss or damage by a **covered cause of loss**;

**b.**   Such property is within the distance from the **covered location** as shown in Item **7.C.** of the Declarations under Interruption by Civil or Military Authority; and

**c.**   The effect of such order is to partially or totally prohibit access to a **covered location**.

Coverage begins on the effective date and time of such order and ends on the date and time that the **covered location** could be reopened for business, but in no event for more than the number of days shown in Item **7.C.** of the Declarations under Interruption by Civil or Military Authority.

**9.   LOGISTICS EXTRA COST**

We will pay the reasonable and necessary extra cost incurred by you to temporarily continue, as nearly normal as practicable, the movement of goods or materials:

**a.**   Directly between **covered locations**; or

**b.**   Directly between a **covered location** and a location of your direct customer, your direct supplier, your contract manufacturer or your contract service provider;

provided that the normal movement of such goods or materials is disrupted as a result of direct physical loss or damage by a **covered cause of loss** to property of the type insured under this Policy located anywhere in the world.

Coverage begins 48 hours after such disruption and ends when, with due diligence and dispatch, the normal movement of goods or materials could be resumed.

For the purpose of this Additional Time Element Coverage only, property of the type insured includes bridges, roadways, tunnels, docks, piers and wharves.

The following additional exclusions apply to this Additional Time Element Coverage.   We will not pay for:

**a.**   Any loss resulting from disruption of incoming or outgoing electricity, gas, fuel, water, steam, sewerage, refrigeration, cloud computing service, or any data, voice or video service;

**b.**   Any loss of any income, including **business income** loss;

**c.**   Any expenses or costs that usually would have been incurred in conducting the business during the same period had there been no disruption of normal movement of goods or materials;

©American International Group, Inc.
All Rights Reserved.

**d.** Any expenses or costs of permanent repair or replacement of property that has been damaged or destroyed; or

**e.** Any expenses or costs recoverable elsewhere under this Policy.

**10. RENTAL VALUE**

We will pay the actual **rental value** loss sustained by you due to direct physical loss or damage by a **covered cause of loss** to **covered property** held for rental to others at a **covered location**.  The **rental value** loss shall not exceed the reduction in **rental value** less charges and expenses which do not necessarily continue.

**Rental value** means the sum of:

**a.** The total anticipated gross rental income from tenant occupancy of the **covered location** as furnished and equipped by you including taxes, rent based on percentage of sales, and other charges paid by tenants with respect to the leased premises;

**b.** The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be your obligations; and

**c.** The fair rental value of any portion of such **covered location** which you occupy.

The conditions set forth in the ADDITIONAL TIME ELEMENT CONDITIONS Subsection of the TIME ELEMENT COVERAGES Section shall apply to the calculation of **rental value** loss. For the purpose of this RENTAL VALUE Additional Time Element Coverage, any reference to **business income** or **period of indemnity** contained in such Subsection shall be deemed to mean **rental value** or **rental value period**, respectively.

Coverage is only provided for the lesser of:

**a.** The **rental value period** plus the Extended Period of Indemnity; or

**b.** The number of months shown in Item **7.C.** of the Declarations under Rental Value after the date and time of the loss or damage to the **covered property** held for rental to others at a **covered location.**

**11. RESEARCH AND DEVELOPMENT EXPENSE**

We will pay **ordinary payroll**, but only to the extent shown in Item **8.A.** of the Declarations, and continuing fixed charges and expenses as a result of direct physical loss or damage by a **covered cause of loss** to materials used or developed as part of your research and development activities.  The **ordinary payroll** and continuing fixed charges and expenses must be directly attributable to research and development activities, provided that such activities would not have produced income during the **period of indemnity**.

We shall only pay:

**a.** Covered **ordinary payroll** until research and development activities have been restarted at the same or another location with due diligence and dispatch; and

**b.** Continuing fixed charges and expenses until that part of the **covered location** where such research and development activities were performed is repaired, rebuilt or replaced with due diligence and dispatch.

©**American International Group, Inc.**
**All Rights Reserved.**

**12. ROYALTIES**

We will pay loss of income sustained by you during the **period of indemnity** under a royalty, licensing fee, or commission agreement between you and another party arising out of direct physical loss or damage by a **covered cause of loss** to such other party's property, provided that such property is of the type insured under this Policy.

**13. SERVICE INTERRUPTION**

We will pay for the actual **business income** loss sustained by you and **extra expense** arising from an interruption in: (1) incoming electricity, gas, fuel, steam, water, or refrigeration, (2) your **cloud computing service** or your **data, voice or video service,** or (3) outgoing sewerage, caused by direct physical loss or damage by a **covered cause of loss** to a service provider's property of the type insured under this Policy or to a transmission, distribution or communication line, or a satellite, situated outside of the **covered location**.

If such service provider's property of the type insured and/or transmission, distribution or communication lines that sustain loss or damage by a **covered cause of loss** are located at the **covered location**, then, notwithstanding Subsection **1.e.** as set forth in the PERILS EXCLUDED Section, we will pay the actual **business income** loss sustained by you and **extra expense** and such amounts are not subject to the Service Interruption sublimit of liability shown in Item **7.C.** of the Declarations.

There shall be no loss payable under this SERVICE INTERRUPTION Additional Time Element Coverage until the interruption exceeds the Qualifying Period shown in Item **7.C.** of the Declarations and then the **business income** loss shall be measured from the date and time of the loss.  However, such Qualifying Period does not apply if there is physical loss or damage to **covered property** caused by the interruption.  Such Additional Time Element Coverage ends on the date and time when: (1) incoming electricity, gas, fuel, steam, water, or refrigeration, (2) **cloud computing service** or **data, voice or video service,** or (3) outgoing sewerage, is restored, plus the lesser of the following:

**a.** The actual length of time required to restore your business to the condition that would have existed had no loss occurred; or

**b.** The length of time set forth as the Extended Period of Indemnity shown in Item **7.C.** of the Declarations under Service Interruption;

subject to the Service Interruption sublimit of liability shown in Item **7.C.** of the Declarations.

This period of time shall not be cut short by the end of the policy period.

We shall not pay any loss under this SERVICE INTERRUPTION Additional Time Element Coverage for any interruption intentionally caused by you or any service provider.

**14. SOFT COSTS**

For **covered property** consisting of new buildings, additions or alterations in the course of construction only, we will pay for reasonable and necessary **soft costs** incurred by you during the period of delay in completion if such property sustains direct physical loss or damage by a **covered cause of loss**.

©American International Group, Inc.
All Rights Reserved.

**Soft costs** means:

**a.** The amount of actual interim or construction financing interest, including loan fees and other one-time charges incurred to negotiate a new construction loan and/or extend the existing one;

**b.** Real estate taxes and ground rent, if any;

**c.** Advertising and promotional expenses;

**d.** Cost of additional commissions;

**e.** Architects, surveyors, legal, consulting engineers or other fees, not otherwise covered under this Policy;

**f.** Project administration expenses, but not including development fees;

**g.** Insurance premiums; and

**h.** Finder's fee refunds.

With respect to the CRISIS MANAGEMENT Additional Time Element Coverage, the INGRESS & EGRESS Additional Time Element Coverage and the INTERRUPTION BY CIVIL OR MILITARY AUTHORITY Additional Time Element Coverage, if a **covered cause of loss** results in coverage under two or more of these Additional Time Element Coverages, we will only pay for loss under one of these Additional Time Element Coverages, whichever you select.

## E.   ADDITIONAL TIME ELEMENT EXCLUSIONS

For time element loss covered under this Policy, we will not pay for:

**1. Idle Periods**

Any loss during any period in which business would not or could not have been conducted for any reason other than a loss for which coverage would have been provided under this Policy.

**2. Remote Loss**

**a.** Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order;

**b.** Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature; or

**c.** Any other consequential or remote loss;

unless coverage is provided under any Additional Time Element Coverage and then only to the extent provided therein.

©American International Group, Inc.
All Rights Reserved.

**3. Transit**

Any loss resulting from loss or damage to property in transit, except to the extent provided under the TRANSIT Additional Coverage.

**4. Interference by Strikers**

Any increase in loss due to interference at the **covered location** or the supplier's or customer's location by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of such location.

**5. Finished Goods**

Any loss resulting from loss or damage to **finished goods** nor for the time required for their reproduction.

### SECTION VII – CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT

**A. ABANDONMENT**

There can be no abandonment of any property to us.

**B. ADJUSTMENT OF LOSSES**

Loss or damage will be adjusted with the **First Named Insured** and shall be payable as directed in writing by the **First Named Insured** subject to: mortgagee; lender; or similar interests; as their interests may appear as shown on the Certificates of Insurance or any endorsement attached to and forming a part of the Policy.  The effective date of any interests will be the issue date of the Certificate of Insurance unless a later date is specified on the Certificate of Insurance.

**C. APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In such event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the replacement cost and actual cash value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, it is without prejudice to our rights under the terms and conditions of this Policy and our right to deny the claim in whole or in part.

**D. CONTROL OF DAMAGED MERCHANDISE**

This Policy gives you control of physically damaged **finished goods** that have been manufactured by or for you, provided that such goods have been physically damaged as a result of direct physical loss or damage by a **covered cause of loss**.

Under such circumstances, you shall have full rights to the possession and control of all such physically damaged **finished goods,** provided that you perform or have proper testing performed to demonstrate what property is physically damaged.

You, exercising reasonable judgment, will decide if the physically damaged **finished goods** can be reprocessed or sold.   Physically damaged **finished goods** judged by you to be fit for reprocessing or for selling will be sold or otherwise disposed of and the salvage proceeds shall be handled in accordance with the SALVAGE AND RECOVERIES Subsection of the GENERAL CONDITIONS Section.

These rights and obligations also are extended to merchandise that you are contractually obligated by the manufacturer or designer to exercise Control of Damaged Merchandise, as long as the obligation is in writing prior to the loss or damage.

**E.  PARTIAL PAYMENT OF LOSS**

In the event the amount of loss or damage for which we are liable is determined by us to be in excess of the applicable deductible, we may advance partial payment(s) with respect to any claim, subject to all other terms and conditions of this Policy.

**F.  REQUIREMENTS IN CASE OF LOSS OR DAMAGE**

In case of loss or damage, you shall:

1.  Give written notice of any loss or damage to us as soon as practicable after the date of such loss or damage;

2.  Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority;

3.  Protect the property from further loss or damage;

4.  Separate the damaged and undamaged personal property;

5.  Maintain such property in the best possible order;

6.  Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed;

7.  Allow us to examine and audit your books and records at any reasonable time for the purpose of investigating or verifying any claim;

8.  Furnish all other documents or insurance policies that we may reasonably require;

9.  Allow us to access and inspect any damaged or undamaged property;

10. Submit to examination under oath at such times as we reasonably may require concerning any matter relating to this insurance or any claim;

11. Cooperate with us in all aspects of any claim and provide us with any additional information that we require; and

**12.** Provide us with a proof of loss, signed and sworn to by you as soon as practicable, but in no event more than 90 days after a loss, stating your knowledge and belief as to the following:

    **a.** The time and origin of the loss;

    **b.** Your interest and the interest of all others in the property;

    **c.** The value of each item thereof determined in accordance with the VALUATION Section and the amount of loss thereto and all encumbrances thereon;

    **d.** All other contracts of insurance, whether collectible or not, covering any of the **covered property**; and

    **e.** Any changes in the title, use, occupancy, location, possession or exposures of the **covered property** subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss, whether or not it then stood on leased ground.

## G. SETTLEMENT OF CLAIMS

The amount of loss for which we may be liable shall be payable within 30 days after proof of loss, as herein required, is received and agreed to by us or the amount of loss is determined by appraisal in accordance with the APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section.

We shall have the option to take all or any part of the property at the agreed or appraised value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, upon providing you with notice of our intention to do so within 60 days after our receipt of the proof of loss herein required.

## H. SUBROGATION

We may require from you an assignment of all rights of recovery against any party for loss to the extent that payment is made by us.  However, you have the right to waive subrogation, provided such waiver is entered into by you in writing prior to the loss.

Any recovery by us as a result of subrogation proceedings arising out of an **occurrence**, after expenses, including our legal fees, incurred in such subrogation proceedings are deducted, shall accrue to you in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

You will cooperate with us and, upon our request and expense will:

**1.** Attend hearings and trials;

**2.** Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

## I. SUIT AGAINST COMPANY

No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the same be commenced within 24 months immediately after the date of the loss, provided however, that if under the laws of the applicable jurisdiction such time limitation is unenforceable, then the period within which such action or proceeding

 ©American International Group, Inc.
All Rights Reserved.

must be commenced shall be the shortest period of time permitted by the laws of such jurisdiction.

## SECTION VIII – GENERAL CONDITIONS

**A. ASSIGNMENT**

You may not assign this Policy without our prior written consent.

**B. CANCELLATION**

This Policy may be cancelled by the **First Named Insured** at any time by surrendering this Policy to us or by mailing or delivering to us written notice stating when thereafter such cancellation shall take effect.  We may cancel this Policy by giving the **First Named Insured** written notice stating when, not less than 90 days thereafter, or 10 days thereafter for nonpayment of premium, such cancellation shall be effective.

We shall pay return premium to the **First Named Insured** on a pro-rata basis if we cancel and on a short rate basis (meaning 90% of the unearned premium) if the **First Named Insured** cancels.

Payment or tender of any unearned premium by us shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If any specific state amendatory endorsement provides less than 90 days notice of cancellation for reasons other than nonpayment of premium, where permitted by law, we shall provide the 90 days notice set forth herein.

**C. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Policy is voidable by us if you, whether before or after a loss, have willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or have committed any act of fraud, attempted fraud or false swearing concerning any matter relating to this insurance or the subject thereof.

**D. CONFORMANCE TO STATUTE**

Any provisions of this Policy which are in conflict with statutes applicable to this Policy are understood, declared and acknowledged by us to be amended to conform to such statutes.

**E. DIVISIBLE CONTRACT**

Subject to the CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section, if any **covered location** includes two or more buildings or the contents of two or more buildings, the breach of any condition of this Policy with respect to any one of the insured buildings or contents contained within any one insured building, shall not prejudice your right to recover for direct physical loss or damage by a **covered cause of loss** occurring in any other insured building or contents contained within any other insured building if, at the time of such loss or damage, a breach of condition does not exist with respect to such other building or contents.

**F. ECONOMIC AND TRADE SANCTIONS**

We shall not be deemed to provide cover and we shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose us, our parent company or our ultimate controlling

entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or the United States of America.

**G. FIRST NAMED INSURED**

If this Policy insures more than one person or organization, the **First Named Insured** is authorized to act on behalf of all other insureds with respect to such insureds' rights, obligations, and duties under this Policy including, but not limited to, the giving and receiving of notices under this Policy. Payment of loss or return premium under this Policy to the **First Named Insured** shall satisfy our obligations with respect to all insureds under this Policy.

**H. GOVERNING LAW**

Any interpretation of this Policy or issue relating to its construction, validity or operation shall be determined by the laws of the United States or of any applicable state in the United States. The parties will submit to the exclusive jurisdiction of the applicable court within the United States.

**I. INCREASE IN HAZARD**

This Policy will not apply to any loss at a **covered location** to the extent that such loss is a result of or in connection with a material increase in hazard over which you have control or knowledge. Any material increase in hazard at one or more **covered locations** will not affect coverage at other **covered locations** where, at the time of loss or damage, the increase in hazard does not exist.

**J. INSPECTION**

We shall be permitted, but not obligated, to inspect **covered property** at all reasonable times during the policy period. Neither our right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by us, on behalf of or for the benefit of you or others, to determine or warrant that such **covered property** is safe or healthful or that such **covered property** complies with any law, rule, regulation, code, engineering or industry standard.

**K. LIBERALIZATION**

If we adopt a standard revision to our Property Performance Policy that would broaden the coverage under this Policy within 45 days prior to the inception date of this Policy or during the policy period of this Policy and if no additional premium is required for such revision, then the broadened coverage will immediately apply to this Policy.

**L. MORTGAGEHOLDERS**

1. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown on the Declarations in their order of precedence, as their interests may appear.

2. Any such mortgageholder has the right to receive loss payment even if the mortgageholder has commenced foreclosure or similar action on the building or structure.

3. If we deny your claim because of your acts or because you have failed to comply with the terms of this Policy, any such mortgageholder will nevertheless have the right to receive loss payment if such mortgageholder:

©American International Group, Inc.
All Rights Reserved.

    **a.** Pays the premium due under this Policy at our request if you have failed to do so;

    **b.** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    **c.** Has notified us of any change in ownership, occupancy, or substantial change in risk known to the mortgageholder.

All of the terms of this Policy will then apply directly to the mortgageholder.

**4.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Policy:

    **a.** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    **b.** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest.  In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**5.** If we cancel this Policy, we will give written notice to the mortgageholder at least:

    **a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium or

    **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**M. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of **covered property** will benefit from this insurance.

**N. OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE**

In the event there is other insurance covering loss or damage insured under this Policy, then this Policy shall apply only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all such other insurance has been exhausted, whether or not such insurance is collectible.  You may purchase excess insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

**O. PRESERVATION OF PROPERTY**

In case of imminent loss or damage, you must make reasonable efforts to protect property from such loss or damage.

**P. REINSTATEMENT OF LIMITS**

Except for any **covered cause of loss** which is subject to an Annual Aggregate limit of liability or Annual Aggregate sublimit of liability, payment of a claim will not reduce the amount payable under this Policy for any subsequent covered loss.

**Q. RECOVERY FROM OTHER PARTIES**

No loss or damage in whole or in part shall be paid hereunder to the extent you have collected such loss or damage from others.

**R. SALVAGE AND RECOVERIES**

All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this Policy, shall reduce the loss accordingly.

**S. SUSPENSION**

Upon the discovery of a dangerous condition with respect to **covered equipment**, our representative may immediately suspend the insurance against loss from an **accident** to such **covered equipment** or any part thereof by notifying your representative at the **covered location** of such dangerous condition.  Upon such notification, coverage shall cease with respect to such **covered equipment**.  Written notice of the suspension will also be mailed or delivered to you at the address of the **First Named Insured**.  The insurance so suspended may be reinstated by us, but only by an endorsement to this Policy.  You shall be entitled to a pro-rata return of the unearned portion of the premium paid for such suspended insurance.

**T. TITLES**

The titles in this Policy are solely for reference and shall not in any way affect the provisions to which they relate.

**SECTION IX – DEFINITIONS**

1. **Accident** means a fortuitous event that causes direct physical loss or damage to **covered equipment**.  The event must be one of the following:

   **a.** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   **b.** Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

   **c.** Explosion of steam boilers, steam pipes, steam engines or steam turbines, except explosion of accumulated gases or unconsumed fuel;

   **d.** Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   **e.** Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. **Aircraft or vehicle impact** means physical contact by:

   **a.** An aircraft including a drone, spacecraft, satellite, self-propelled missile, or objects falling therefrom; or

   **b.** A vehicle or an object thrown up, by, or from a vehicle.

3. **Cloud computing service** means a service: (i) in the business of storing, managing and processing **electronic data** for which your company has a written contract and (ii) that provides

access to and use of: software and/or a network of remote servers hosted away from your **covered location** to store, manage or process such data.  **Cloud computing service** does not include a **data, voice or video service**.

4. **Collapse** means an abrupt falling down or caving in of a building or structure or any part of a building or structure.

5. **Corruption, erasure or alteration** means **electronic data** that has been corrupted, destroyed or deleted such that the **electronic data** can no longer be accessed or used for its intended purpose.

6. **Covered cause(s) of loss** means a peril or other type of loss, not otherwise excluded under this Policy.

7. **Covered equipment** means the following:

   **a.** Equipment that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

   **b.** Equipment which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

   The following is not **covered equipment**:

   **a.** Structure, foundation, cabinet, compartment or air supported structure or building;

   **b.** Insulating or refractory material;

   **c.** Sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;

   **d.** Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

   **e.** Vehicle or any equipment mounted on a vehicle;

   **f.** Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

   **g.** Dragline, excavation or construction equipment;

   **h.** Equipment manufactured by you for sale.

8. **Covered location** means:

   **a.** The location(s) as specified in the most recent Statement of Locations and Values on file with us;

   **b.** A **miscellaneous unnamed location**; or

   **c.** A location which is covered in accordance with the ERRORS OR OMISSIONS Additional Coverage or the NEWLY ACQUIRED PROPERTY Additional Coverage,

   in the **coverage territory**.

9. **Coverage territory** means the coverage territory as shown in Item **4.** of the Declarations.

10. **Covered property** means property as described in the COVERED PROPERTY Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section, which is not otherwise excluded under the PROPERTY NOT COVERED Section.

11. **Cyber peril(s)** means **unauthorized access**, **unauthorized use**, **malicious code** and **magnetic damage to electronic data**.

12. **Cyber period of indemnity** means the period of time:

    **a.** With respect to the Electronic Data - Standard Perils Additional Coverage, beginning with the **material interruption** and ending when your **electronic data** could be restored in accordance with the VALUATION Section with exercise of due diligence and dispatch;

    **b.** With respect to the Electronic Data - Cyber Perils Additional Coverage, beginning the number of hours shown as the Cyber Waiting Period in Item **7.B.4.a.** of the Declarations after the **material interruption** and ending when your **electronic data** could be restored in accordance with the VALUATION Section with exercise of due diligence and dispatch;

    **c.** With respect to the Electronic Equipment Additional Coverage, beginning when your electronic equipment, including electronic devices, electronic components or electronic storage media is rendered useless for its intended purpose and ending when such equipment could be repaired or replaced in accordance with the VALUATION Section with exercise of due diligence and dispatch;

    **d.** With respect to the Denial of Service Attack Additional Coverage, beginning the number of hours shown as the Cyber Waiting Period in Item **7.B.4.c.** of the Declarations after the **material interruption** and ending when you could restore access to **your computer system** to the same or similar conditions that existed prior to the time of the loss with exercise of due and diligence dispatch;

but in no event for longer than the number of days shown as the Maximum Cyber Period of Indemnity in Item **7.B.** of the Declarations after: **(i)** the **material interruption** with respect to Subsection **a.** above, **(ii)** the Cyber Waiting Period is exhausted in accordance with Subsections **b.** and **d.** above, or **(iii)** such electronic equipment is rendered useless with respect to Subsection **c.** above.

This period of time shall not be cut short by the end of the policy period.

13. **Data, voice or video service** means a service that allows you to transmit and receive data, voice or video, whether directly or indirectly through a third party service provider, such as an internet service provider or telecommunications provider.  **Data, voice or video service** does not include a **cloud computing service**.

14. **Defined peril** means fire; lightning; explosion; **windstorm or hail**; **smoke**; **aircraft or vehicle impact**; **riot, strike or civil commotion**; **vandalism and malicious mischief**; **collapse**; or leakage from fire protection equipment.  **Defined peril** also includes **equipment breakdown**, provided that **equipment breakdown** is covered under this Policy.

15. **Denial of service attack** means an attack that sends an excessive volume of **electronic data** to computer hardware, software or any components thereof which prevents those who are authorized to do so from gaining access to or using such computer hardware, software or any components thereof.

16. **Electronic data** means data, messages, information, coding, programs, instructions or software in a form suitable for communications, storage, or processing by electronic, electromechanical,

electromagnetic data processing or electronically controlled production equipment. **Electronic data** does not include electronic storage media.

17. **Fine arts** means paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, watercraft, aircraft and **money**.

   **Fine arts** does not include any item which would qualify as **valuable papers and records**.

18. **Finished goods** means stock manufactured or processed by you which is in final packaging and ready for shipment or sale.

19. **First Named Insured** means the Named Insured first shown in Item **1.** of the Declarations.

20. **Fungus, mold or spore** means:

   a. **Fungus** including, but not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including **mold**, yeast, rusts, mildews, smuts and mushrooms;

   b. **Mold** including, but not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and **fungi** that produce **mold**; and/or

   c. **Spore** including, but not limited to, any dormant or reproductive body produced by or arising or emanating out of any **fungus**, **mold**, mildew, plants, organisms or microorganisms.

21. **Magnetic damage to electronic data** means the **corruption, erasure or alteration** of **electronic data** through magnetism. However, no coverage is provided for loss or damage to **electronic data** arising out of directed-energy weapons or electromagnetic weapons or through deterioration of the storage media or data for any reason.

22. **Malicious code** means any unauthorized code designed to cause **corruption, erasure or alteration** of **electronic data.**

23. **Material interruption** means the date and time of the actual and measurable interruption or suspension of your business operations, services or production directly caused by: (i) **corruption, erasure or alteration** of your **electronic data** or (ii) **denial of service attack** that prevents access to or use of **your computer system**, whichever is applicable. Such **material interruption** must first occur during the policy period.

24. **Miscellaneous unnamed location(s)** means a location, building or part of a building owned, rented or leased by you that is not reported on the Statement of Locations and Values on file with us.

25. **Money** means:

   a. Currency, coins, bank notes, bullion, traveler checks, registered checks, money orders, and

   b. Negotiable and non negotiable instruments or contracts representing money including: tokens, tickets, revenue stamps and other stamps (whether represented by actual stamps or unused value in a meter), and evidence of debt issued in connection with credit card or charge cards that are issued to you.

26. **Named supplier/customer** means those named suppliers and/or named customers shown on the Schedule of Named Suppliers/Customers on file with us.

27. **New Madrid Earthquake Zone** means the following counties (unless otherwise stated) within the following states of the United States of America:

   a. Arkansas: Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Randolph, Sharp, Mississippi, Poinsett;

   b. Illinois: Alexander, Massac, Pulaski, Union, Williamson, Johnson, Pope, Saline, Jackson, Franklin, Perry, Hardin, Randolph, Monroe, St. Clair, Washington, Clinton, Bond, Madison, Jefferson;

   c. Indiana: Posey, Vanderburgh, Gibson, Warrick, Pike;

   d. Kentucky: Ballard, Carlisle, Fulton, Graves, Hickman, Livingston, McCracken, Marshall, Calloway;

   e. Mississippi: Desoto, Tunica, Marshall, Tate, Coahoma, Bolivar;

   f. Missouri: Bollinger, Butler, Cape Girardeau, Dunklin, Mississippi, New Madrid, Pemiscot, Scott, Stoddard, St. Louis, St. Francois, St. Charles, Jefferson, Franklin, Warren, Washington, Iron, Wayne, Reynolds, Madison, St. Genevieve, Perry and the City of St. Louis;

   g. Tennessee: Crockett, Dyer, Haywood, Lake, Lauderdale, Obion, Shelby, Tipton, Gibson, Madison, Fayette, Hardeman.

28. **Occurrence** means any one **accident**, loss, disaster, casualty, incident or series of **accidents**, losses, disasters, casualties or incidents, including all resultant or concomitant insured losses, not otherwise excluded by this Policy and with respect to:

   a. **Terrorism** (to the extent **terrorism** is covered), arises out of the same or related purpose or cause; or

   b. Covered perils other than **terrorism**, arises out of a single event or originating cause.

   The **occurrence** must occur during the policy period.

   When the term applies to loss or losses from the perils of **windstorm or hail**, **named storm**, **riot**, **strike or civil commotion**, **vandalism and malicious mischief**, **earth movement**, **flood** or **terrorism**, to the extent any such peril(s) are covered, all losses arising from such peril(s) occurring during a continuous period of 72 hours shall be deemed to be a single **occurrence**. You may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the **covered property**, but no two such 72 hour periods shall overlap.

   If the **occurrence** commences during this policy period, then we shall treat the entire **occurrence** as occurring during this policy period.

29. **Ordinary payroll** means payroll expenses for your employees other than officers, executives, department managers and employees under contract (other than under collective bargaining agreements).

   **Ordinary payroll** includes employee benefits, FICA, Medicare payments, union dues, and workers' compensation premiums.

 ©American International Group, Inc.
All Rights Reserved.

**30. Outdoor property** means outdoor: (i) lawns (including fairways, greens and tees), trees, shrubs, plants, and (ii) walkways, roadways, patios or other paved surfaces, including the fill beneath such paved surfaces.

**31. Pacific Northwest Earthquake Zone** means:

    **a.** The following counties within Washington state: Clallam, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston and Whatcom; and

    **b.** The geographic area of British Columbia, Canada (including Vancouver Island and other Canadian islands) that is south of 50° north latitude and west of 120° west longitude.

**32. Period of indemnity** means:

    **a. Business Income Option #1 (Gross Profits):**

        **i.** With respect to business operations, services and production (except as set forth in Subsection **a.ii.** below), the period of time that:

            **(a) (i)** Begins on the date and time of the loss or damage to the **covered property** or property of the type insured as described in the INSURING AGREEMENT Subsection of the TIME ELEMENT COVERAGES Section;

            **(ii)** With respect to the CONTINGENT TIME ELEMENT Additional Time Element Coverage, begins on the date and time of the loss or damage to the property of the applicable supplier or applicable customer; or

            **(iii)** With respect to the ROYALTIES Additional Time Element Coverage, begins on the date and time of the loss or damage to the property of the party with whom you have a royalty, licensing fee, or commission agreement; and

            **(b)** Ends no later than the number of months shown as the Maximum Operations Period of Indemnity in Item **8.B.** of the Declarations during which sales are directly affected by covered loss or damage.

        **ii.** With respect to new buildings, additions or alterations in the course of construction, the period of time that:

            **(a)** Begins on the anticipated date of substantial completion had there been no such loss or damage to **covered property**; and

            **(b)** Ends no later than the number of months shown as the Maximum Construction Period of Indemnity in Item **8.C.** of the Declarations during which sales are directly affected by covered loss or damage.

    This period of time shall not be cut short by the end of the policy period.

    **b. Business Income Option #2 (Gross Earnings):**

        **i.** With respect to business operations, services and production (except as set forth in Subsection **b.ii.** below), the period of time that:

            **(a) (i)** Begins on the date and time of the loss or damage to **covered property** or property of the type insured as described in the INSURING AGREEMENT Subsection of the TIME ELEMENT COVERAGES Section;

©American International Group, Inc.
All Rights Reserved.

    **(ii)** With respect to the CONTINGENT TIME ELEMENT Additional Time Element Coverage, begins on the date and time of the loss or damage to the property of the applicable supplier or applicable customer; or

    **(iii)** With respect to the ROYALTIES Additional Time Element Coverage, begins on the date and time of the loss or damage to the property of the party with whom you have a royalty, licensing fee, or commission agreement; and

**(b)** Ends on the earlier of:

    **(i)** The date when such property could be repaired, rebuilt or replaced with materials of like kind, size, capacity and quality to the same or equivalent physical operating conditions with the exercise of due diligence and dispatch, including any additional time to meet the applicable and covered **law or ordinance** requirements, if any; or

    **(ii)** The date when the business is resumed at a new permanent location.

**ii.** With respect to new buildings, additions or alterations in the course of construction, the period of time that:

**(a)** Begins on the anticipated date of substantial completion had there been no such loss or damage to **covered property**; and

**(b)** Ends on the earlier of:

    **(i)** The date of substantial completion with the exercise of due diligence and dispatch to repair or rebuild the **covered property** with materials of like kind, size, capacity and quality; or

    **(ii)** The date when the business is resumed at a new permanent location.

**iii.** The **period of indemnity** does not include any additional time:

**(a)** Required for staffing or training employees, except the reasonable and necessary additional time needed to train employees, not to exceed 30 consecutive days;

**(b)** Resulting from your inability to procure, due to the same **covered cause of loss**, suitable **raw materials** and/or supplies to replace those physically lost or damaged; or

**(c)** Due to your inability to resume production or business operations or services regardless of the reason.

This period of time shall not be cut short by the end of the policy period.

**33. Perishable goods** means personal property:

    **a.** Maintained under controlled conditions for their preservation, and

    **b.** Susceptible to loss or damage if the controlled conditions are not maintained.

**34. Policy Limit** means the limit of liability shown in Item **6.** of the Declarations.

**35. Pollutants or contaminants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release

can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances. Waste includes materials to be recycled, reconditioned or reclaimed. **Pollutants or contaminants** do not include **fungus, mold or spore**.

36. **Processing water** means water used directly in your business process that is contained within any enclosed tank, piping system or any other processing equipment.

37. **Railroad rolling stock** means railcars, excluding locomotives.

38. **Raw materials** means materials and supplies in the state in which you receive them for conversion by you into **finished goods**.

39. **Rental value period** means the period of time that:

    **a.** Begins on the date and time of the loss or damage to **covered property** held for rental to others at a **covered location**; and

    **b.** Ends on the earlier of:

        **i.** The date when such property could be repaired, rebuilt or replaced with materials of like kind, size, capacity and quality to the same or equivalent physical operating conditions with the exercise of due diligence and dispatch, including any additional time to meet the applicable and covered **law or ordinance** requirements, if any; or

        **ii.** The date when the business is resumed at a new permanent location.

This period of time shall not be cut short by the end of the policy period.

40. **Riot, strike or civil commotion** means riot or civil commotion including, but not limited to:

    **a.** Acts of striking employees while occupying a **covered location**; and

    **b.** Pilferage or looting occurring at the time and place of a riot or civil commotion.

41. **Selling price** means the price, less discounts and charges, at which goods and merchandise would have been sold to your regular customers had no loss occurred.

42. **Smoke** means sudden and accidental release of smoke. **Smoke** does not include loss or damage caused by smoke from agricultural smudging or industrial operations.

43. **Tier 1 High Hazard Wind Zone (Consisting of Texas to North Carolina, Hawaii, Puerto Rico and U.S. Virgin Islands)** means the following wind zone:

| | |
|---|---|
| Alabama | Counties of Baldwin and Mobile; |
| Georgia | Counties of Bryan, Camden, Chatham, Glynn, Liberty and McIntosh; |
| Hawaii | Entire State; |
| Louisiana | Parishes of Assumption, Calcasieu, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin (South), St. Mary, St. Tammany, Tangipahoa, Terrebonne and Vermilion; |

 ©American International Group, Inc.
All Rights Reserved.

| | |
|---|---|
| Mississippi | Counties of Hancock, Harrison and Jackson; |
| North Carolina | Counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell and Washington; |
| Puerto Rico | Entire Territory; |
| South Carolina | Counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Hampton, Horry and Jasper; |
| Texas | Counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Newton, Nueces, Orange, Refugio, San Patricio, Victoria and Willacy; and |
| U.S. Virgin Islands | Entire territory, including St. Croix, St. John and St. Thomas. |

**44. Tier 1 High Hazard Wind Zone (Consisting of Virginia to Maine)** means the following wind zone:

| | |
|---|---|
| Connecticut | Counties of Fairfield, Middlesex, New Haven and New London; |
| Delaware | County of Sussex; |
| Maine | Counties of Androscoggin, Cumberland, Hancock, Knox, Lincoln, Sagadahoc, Waldo, Washington and York; |
| Maryland | Counties of Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico and Worcester; |
| Massachusetts | Counties of Barnstable, Bristol, Dukes, Essex, Nantucket, Norfolk, Plymouth and Suffolk; |
| New Hampshire | Counties of Rockingham and Strafford; |
| New Jersey | Counties of Atlantic, Bergen, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean and Union; |
| New York | Counties of Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk and Westchester; |
| Rhode Island | Counties of Bristol, Kent, Newport, Providence and Washington; and |
| Virginia | Counties of Accomack, Charles City, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, New Kent, Northampton, Northumberland, Prince George, Surry, Sussex, York and Westmoreland; and |
| | Independent Cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach and Williamsburg. |

**45. Tier 1 High Hazard Wind Zone (Florida)** means the entire state of Florida.

**46. Tier 2 High Hazard Wind Zone** means the following wind zone:

| | |
|---|---|
| Georgia | Counties of Brantley, Charlton, Effingham, Long and Wayne; |

©American International Group, Inc.
All Rights Reserved.

| Louisiana | Parishes of Acadia, Ascension, East Baton Rouge, Iberville, Jefferson Davis, Lafayette, St. Martin (North), Washington and West Baton Rouge; |
| Mississippi | Counties of George, Pearl River and Stone; |
| North Carolina | Counties of Bladen, Duplin, Gates, Hertford, Lenoir, Martin and Pitt; |
| South Carolina | Counties of Florence, Marion and Williamsburg; and |
| Texas | Counties of Bee, Brooks, Fort Bend, Goliad, Hardin, Hidalgo, Jasper, Jim Wells and Wharton. |

47. **Unauthorized access** means the gaining of access to computer hardware, software or any components thereof by an unauthorized person.

48. **Unauthorized use** means the use of computer hardware, software or any components thereof by any person in an unauthorized manner.

49. **Unnamed supplier/customer** means suppliers and/or customers, other than any **named supplier/customer**.

50. **Your computer system** means your computer hardware, device, software or any components thereof that are used to store, process or access your **electronic data**, while your **electronic data** is located at a **covered location**, on your mobile electronic device or your electronic storage media anywhere in the world.

51. **Your service provider's computer system** means your service provider's computer hardware, device, software or any components thereof that are used to store, process or access your service provider's **electronic data**, while your service provider's **electronic data** is located at your service provider's location (not including a satellite) anywhere in the world.

52. **Valuable papers and records** means:

   **a.** Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;

   **b.** Legal and financial agreements such as deeds and mortgages;

   **c.** Addressograph plates;

   **d.** Any data stored on printouts or punched cards;

   **e.** Any paper, record or recording, in any form, that is irreplaceable due to the nature of the recording; and

   **f.** Accounts receivable records.

   **Valuable papers and records** does not include **fine arts**, **money** or **electronic data**.

53. **Vandalism and malicious mischief** means willful or malicious damage to, or destruction of **covered property** or with respect to the Electronic Data – Standard Perils Additional Coverage, such willful or malicious damage to, or destruction of **covered property** resulting in **corruption, erasure or alteration** of **electronic data**.

©American International Group, Inc.
All Rights Reserved.

**54. Windstorm or hail** means the direct action of wind or the direct action of hail, whether accompanied by wind or not.  However, **windstorm or hail** does not mean:

    **a.**  Loss or damage caused by or resulting from frost or cold weather, ice (other than hail), snow or sleet, whether driven by wind or not;

    **b.**  Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters; or

    **c.**  Loss or damage caused when weight of snow, rainwater, ice or sleet is a contributing factor to the fall or **collapse** of a building or structure or any part thereof.

©**American International Group, Inc.**
**All Rights Reserved.**

**ENDORSEMENT #1**

This endorsement, effective  01 February 2020                                            forms a part of

Policy Number:061818876                                          Issued to:UNIVERSITY OF
SAINT THOMAS

By:American Home Assurance Company

**TEXAS AMENDATORY ENDORSEMENT**
**CANCELLATION AND NONRENEWAL**

Wherever used in this endorsement: 1)"Insurer" means the insurance company which issued this
policy; and 2) "Insured" means the Named Corporation, Named Organization, Named Sponsor, or
Named Insured stated in the declarations page; and 3) "Liability insurance" means the following
types of insurance: general liability, professional liability other than medical professional liability,
commercial multi-peril coverage, and any other types of lines of liability insurance designated by the
State Board of Insurance.

It is hereby agreed that the cancellation provision of this policy is deleted in its entirety and
replaced by the following:

**CANCELLATION AND NONRENEWAL**

A.      Cancellation

1.      This policy may be canceled by the Insured by surrender thereof to the Insurer or
any of its authorized agents or by mailing to the Insurer written notice stating
when thereafter the cancellation shall be effective.

2.      Except as provided by subsection A.3. below, the Insurer may not cancel this
policy if it is:

a)      a policy of liability insurance that is a renewal or continuation policy; or

b)      a policy of liability insurance that is in its initial policy period after the
60th day following the date on which the policy was issued.

3.      The Insurer may cancel this policy at any time during the term of the policy for
the following reasons:

a)  fraud in obtaining coverage;

b)  failure to pay premiums when due;

c)  an increase in hazard within the control of the Insured or  Other Insured(s)
which would produce an increase in rate;

d)  loss of the Insurer's reinsurance covering all or part of the risk covered by the
policy; or

74802 (7/11)              Page 1 of 3

     e)   the Insurer being placed in supervision, conservatorship, or receivership, if the cancellation or nonrenewal is approved or directed by the supervisor, conservator, or receiver.

4.     The Insurer shall deliver or mail to the Insured first named in the Declarations written notice of cancellation at the address shown on the policy not less than the 10th day before the date on which the cancellation takes effect.  Such written notice shall state the reasons(s) for cancellation.

5.     The Insurer may not cancel this policy based solely on the fact that the Insured is an elected official.

6.     If this policy provides property coverage or general liability coverage under a commercial property, commercial general liability, commercial multi-peril or business owner policy, and covers a condominium association, and the condominium Property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured thirty (30) days before the effective date of cancellation.  The Insurer will also provide thirty (30) days written notice to each unit-owner to whom the Insurer issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to the Insurer.

B. Nonrenewal

1.     The Insurer may refuse to renew this policy by delivering or mailing to the Insured first named in the Declarations written notice of nonrenewal at the address shown on the policy.  Such written notice shall state the reason(s) for nonrenewal.  The notice must be delivered or mailed not later than the 60th day before the date on which the policy expires.  If the notice is delivered or mailed later than the 60th day before the date on which the policy expires, the coverage shall remain in effect until the 61 day after the date on which the notice is delivered or mailed.  If notice is delivered or mailed, proof of delivery or mailing will be sufficient proof of notice. Earned premium for any period of coverage that extends beyond the expiration date of the policy shall be computed pro rata based on the previous year's rates.

2.     The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

3.     The Insurer may not refuse to renew this policy based solely on the fact that the Insured is an elected official.

4.     If this policy provides property coverage or general liability coverage under a commercial property, commercial general liability, commercial multi-peril or business owner policy, and covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the Insurer will mail or deliver written notice of nonrenewal, at least thirty (30) days before the expiration or anniversary date of the policy, to:

     a.     The first Named Insured; and

b.    Each unit-owner to whom the Insurer issued a certificate or memorandum of insurance.

The Insurer will mail or deliver such notice to each last mailing address known to the Insurer.

All other terms, conditions and exclusions of the policy shall remain unchanged.



 AUTHORIZED REPRESENTATIVE

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).  The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

91222 (9/16)

## ALABAMA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Alabama.

**A.** The following exclusion and related provisions are added to the Policy:

    **1.** We will not pay for loss or damage arising out of any act committed:

        **a.** By or at the direction of any insured; and

        **b.** With the intent to cause a loss.

    **2.** However, this exclusion will not apply to deny coverage to an innocent co-insured when the loss or damage is otherwise covered under this Policy and is proximately related to and in furtherance of an abusive act by an insured who is a family or household member. Such coverage will be provided only if the innocent co-insured:

        **a.** Provides evidence of the abuse to us, to demonstrate that the loss is abuse-related; and

        **b.** For the act causing the loss, either:

            **(1)** Files a complaint under the Protection From Abuse Act against the abuser, and does not voluntarily dismiss the complaint; or

            **(2)** Seeks a warrant for the abuser's arrest and cooperates in the prosecution of the abuser.

    **3.** If we pay a claim pursuant to Subsection **A.2.** above, our payment to the innocent co-insured is limited to that insured's legal interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the **Policy Limit.**

**B.** The following is added to the SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

If we pay an innocent co-insured for loss arising out of an act of abuse by another insured, the rights of the innocent co-insured to recover damages from the abuser are transferred to us to the extent of our payment. Following the loss, the innocent co-insured may not waive such rights to recover against the abuser.

**C.** The following is added to any provision which uses the term "actual cash value":

"Actual cash value" is calculated as the amount it would cost to repair or replace **covered property**, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. "Actual cash value" applies to valuation of **covered property** regardless of whether that property has sustained partial or total loss or damage.

The "actual cash value" of the lost or damaged property may be significantly less than its replacement cost.

All other terms and conditions of the Policy remain the same.

## ALASKA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Alaska.

**A.** Under any Condition in this Policy which requires an insured to submit to examination under oath, the insured is entitled to have counsel present during any examination taken under oath.

**B.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case involving misrepresentations, omissions, concealment of facts, or incorrect statements:

**1.** That are fraudulent;

**2.** That are material either to the acceptance of the risk, or to the hazard assumed by us; or

**3.** If we, in good faith, would not have:

    **a.** Issued the Policy;

    **b.** Issued a Policy in as large an amount, or at the same premium or rate; or

    **c.** Provided coverage with respect to the hazard resulting in the loss;

    if the true facts had been made known to us as required either by the application for the Policy or otherwise.

**C.** The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No one may bring a legal action against us under this Policy unless all of the following apply:

**1.** There has been full compliance with all of the terms of this Policy; and

**2.** The legal action is brought within 3 years from the date you learned that the claim was denied.

**D.** Any OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE provision in this Policy is deleted and replaced by the following:

**OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE**

**1.** You may have other insurance. If you do, we will pay our share of the covered loss or damage. Subject to exceptions as set forth in **2.** below, our share is the proportion that the applicable limit of insurance under this Policy bears to the limits of insurance of all insurance covering the loss or damage.

**2.** If there is other insurance as described below, we will pay under this Policy only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not:

    **a.** The property covered under this Policy is also covered under another policy, in which it is more specifically described; or

    **b.** The other insurance covers your interest or the interest of others in property which you do not own.

**E.** The following is added to the Policy and supersedes any provision to the contrary:

A loss may be caused by a chain of causes. If a **covered cause of loss** is the dominant cause of such a loss, we will not deny coverage on the basis that a secondary cause in that chain is not a **covered cause of loss**.

**F.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  Within 10 days of the written demand, we and you must notify the other of the competent appraiser each has selected.  The two appraisers will promptly choose a competent and impartial umpire.  Not later than 15 days after the umpire has been chosen, unless the time period is extended by the umpire, each appraiser will separately state in writing the amount of the loss. If the appraisers submit a written report of agreement on the amount of the loss, the agreed amount will be binding upon you and us.  If the appraisers fail to agree, the appraisers will promptly submit their differences to the umpire.  A decision agreed to by one of the appraisers and the umpire will be binding upon you and us.  All expenses and fees, not including counsel or adjuster fees, incurred because of the appraisal shall be paid as determined by the umpire.

If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction.

Except as specifically provided, nothing in this provision is intended to or shall in any manner limit or restrict the rights of you or us.

**G.** The ECONOMIC AND TRADE SANCTIONS Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**ECONOMIC AND TRADE SANCTIONS**

We shall not be deemed to provide cover and we shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose us, our parent company or our ultimate controlling entity to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

**H.** The definition of **fungus, mold or spore** in the DEFINITIONS Section is deleted in its entirety and replaced with the following:

**Mold** means any type of fungus, including mildew, rusts, mushrooms, yeasts, and mycotoxins, spores, or scents, produced or released by the **mold**.  This does not include fungi intended by you for consumption.

Wherever in this Policy, the term, **fungus, mold or spore** is used, it is deemed deleted and replaced with the term, **mold**, as defined herein.

**I.** The definition of **pollutants or contaminants** in the DEFINITIONS Section is deleted in its entirety and replaced with the following:

**Pollutants or contaminants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, hazardous substances.  Waste includes materials to be recycled, reconditioned or reclaimed. **Pollutants or contaminants** do not include **mold.**

All other terms and conditions of the Policy remain the same.

# ARIZONA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Arizona.

**A.** The following exclusion and related provisions are added to the Policy:

**1.** We will not pay for loss or damage arising out of any act committed:

    **a.** By or at the direction of any insured; and

    **b.** With the intent to cause a loss.

**2.** However, this exclusion will not apply to deny an insured's claim for an otherwise **covered property** loss under this Policy if such loss is caused by an act of domestic violence by another insured under this Policy and the insured making this claim:

    **a.** Did not cooperate in or contribute to the creation of the loss; and

    **b.** Cooperates in any investigation relating to the loss.

    We may apply reasonable standards of proof for such claims.

**3.** If we pay a claim pursuant to Subsection **A.2.** of this endorsement, our payment to the insured is limited to that insured's insurable interest in the property as reduced by any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the **Policy Limit**.

**B.** The following is added to the SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

If we pay an insured for a loss described in Subsection **A.2.** above, the rights of the insured to recover damages from the perpetrator of domestic violence are transferred to us to the extent of our payment. Following the loss, the insured may not waive such rights to recover against the perpetrator of the domestic violence.

**C.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case involving misrepresentations, omissions, concealment of facts or incorrect statements:

**1.** That are fraudulent;

**2.** That are material either to the acceptance of the risk, or to the hazard assumed by us; and

**3.** Where, if the true facts had been known to us as required either by the application for the Policy or otherwise, we in good faith would either:

    **a.** Not have issued the Policy;

    **b.** Not have issued the Policy in as large an amount; or

    **c.** Not have provided coverage with respect to the hazard resulting in the loss.

All other terms and conditions of the Policy remain the same.

# ARKANSAS STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Arkansas.

**A.** The following Condition is added to the Policy:

**MULTI-YEAR POLICIES**

We may issue this Policy for a term in excess of 12 months with the premium adjusted on an annual basis in accordance with our rates and rules.

**B.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, either party may make a written request for an appraisal of the loss. However, an appraisal will be made only if both we and you agree, voluntarily, to have the loss appraised. If so agreed, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either party may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire.

**1.** An appraisal decision will not be binding on either party.

**2.** If there is an appraisal, we will still retain our right to deny the claim.

**3.** Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

**C.** The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless you shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within the time allowed by law after the date of the loss.

**D.** The SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUBROGATION**

We may require from you an assignment of all rights of recovery against any party for loss to the extent that payment is made by us. However, you have the right to waive subrogation, provided such waiver is entered into by you in writing prior to the loss.

Any recovery by us as a result of subrogation proceedings arising out of an **occurrence**, after expenses, including our legal fees, incurred in such subrogation proceedings are deducted, shall first accrue to you for the deductible amount and/or any provable uninsured loss amount and then accrue to us for any additional amount paid by us.

You will cooperate with us and, upon our request and expense will:

**113113 (1/17)**     Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.     **Page 1 of 2**

1. Attend hearings and trials;

2. Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

**E.** Should any complaints arise regarding this insurance, you may contact the following:

AIG
Consumer Complaints Division
80 Pine Street, 13th Floor
New York, NY 10005
Phone: 1-877-541-9748
Fax: 844-637-6862
consumer@aig.com


Arkansas Insurance Department
1200 West Third Street
Little Rock, AR 72201

t: (800) 282-9137 or 501-371-2600 (toll free)
f: (501) 371-2618


All other terms and conditions of the Policy remain the same.

# CALIFORNIA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of California.

**A.** If the Real Estate Segment Endorsement is *not attached* to this Policy, then Subsection **A.** of the VALUATION Section is deleted in its entirety and replaced with the following:

   **A.**Buildings:

      **1.**We shall pay the lesser of:

         **a.**The cost to repair or replace (whichever is less) the building at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence, or

         **b.**The actual cost incurred to repair or replace the building.

      **2.**In accordance with all other terms and conditions of this Policy, we may make partial payments toward the actual cash value until the building is repaired or replaced.  If the building is not repaired or replaced:

         **a.**Within 24 months after the date of the first payment toward the actual cash value, or

         **b.**Within 36 months after the date of the first payment toward the actual cash value in the event of loss relating to a "state of emergency" as defined by the California Government Code,

      then we shall only pay the actual cash value of such building at the time and place of the loss. However, we shall provide one or more additional extensions of 6 months to repair or replace the building for good cause.  Good cause means if you, while acting in good faith and with reasonable diligence, encounter a delay or delays in approval for or reconstruction of a building that are beyond your control.

      **3.**You may elect to rebuild at another site.

         **a.**In the event of a partial loss to the building, our liability shall not be more than what we would have paid to repair or replace at the original site.

         **b.**In the event of a total loss to the building, our liability shall be the amount set forth in Subsection **A.1.** above at the original site.

**B.** If the Real Estate Segment Endorsement *is attached* to this Policy, then Subsections **A.4.** and **A.5.** of Section **VII.** of the Real Estate Segment Endorsement are deleted and replaced with the following:

      **4.**In accordance with all other terms and conditions of this Policy, we may make partial payments toward the actual cash value until the building is repaired or replaced.  If the building is not repaired or replaced:

      Includes copyrighted material of Insurance Services Office,       **Page 1 of 3**

Inc., with its permission.  All rights reserved.

    **a.** Within 24 months after the date of the first payment toward the actual cash value, or

    **b.** Within 36 months after the date of the first payment toward the actual cash value in the event of loss relating to a "state of emergency" as defined by the California Government Code,

then we shall only pay the actual cash value of such building at the time and place of the loss. However, we shall provide one or more additional extensions of 6 months to repair or replace the building for good cause.  Good cause means if you, while acting in good faith and with reasonable diligence, encounter a delay or delays in approval for or reconstruction of a building that are beyond your control.

  **5.** You may elect to rebuild at another site.

    **a.** In the event of a partial loss to the building, then our liability shall not be more than what we would have paid to repair or replace at the original site.

    **b.** In the event of a total loss to the building, then our liability shall be the amount set forth in Subsection **A.1.**, **A.2.**, and/or **A.3.**, whichever is/are applicable, at the original site.

**C.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following with respect to loss or damage caused by fire:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We do not provide coverage to an insured who, whether before or after a loss, has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Policy;

**2.** The **covered property**;

**3.** That insured's interest in the **covered property**; or

**4.** A claim under this Policy.

**D.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following with respect to loss or damage caused by a **covered cause of loss** other than fire:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Policy is void if any insured, whether before or after a loss, has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Policy;

**2.** The **covered property**;

**3.** An insured's interest in the **covered property**; or

**4.** A claim under this Policy.

**E.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, either may make a written request for an appraisal of the loss.  If the request is accepted, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. The two appraisers will select an umpire. If they cannot agree within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

All other terms and conditions of the Policy remain the same.

## COLORADO STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Colorado.

The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

**1.** Concealment or misrepresentation of a material fact; or

**2.** Fraud;

committed by you or any other insured at any time and relating to coverage under this Policy.

All other terms and conditions of the Policy remain the same.

## CONNECTICUT STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Connecticut.

**A.** The following Condition is added to the Policy:

If any conditions of The Standard Fire Insurance Policy of the State of Connecticut, as set forth in the General Statutes of Connecticut, are construed to be more liberal than any other Policy condition, the conditions of The Standard Fire Insurance Policy will apply.

**B.** The following is added to any provision which uses the term "actual cash value" as it pertains to direct loss or damage to a covered building caused by a **covered cause of loss**:

The "actual cash value" immediately prior to the time of such loss or damage shall be the amount which it would cost to repair or replace such building with material of like kind and quality, minus reasonable depreciation. Depreciation, as used herein, means a decrease in value over a period of time due to wear and tear.

**C.** If any VALUATION Section (in any endorsement or the policy form) contains a 2 year limitation, this limitation is deleted and the provision shall be read without such 2 year limitation.

**D.** The paragraph beginning with the words, "If **earth movement**, **flood** or **named storm** is not covered . . ." and the ending with the words, ". . . whichever is applicable[.]" of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted in its entirety and replaced with the following new paragraph:

If **earth movement**, **flood** or **named storm** is not covered, then any cause or event occurring concurrently or in any sequence with such peril(s) is also not covered, except for direct physical loss or damage to **covered property** caused by fire, lightning, sprinkler leakage or explosion following **earth movement**, **flood** or **named storm**, whichever is applicable.

All other terms and conditions of the Policy remain the same.

**113116 (1/17)**          Includes copyrighted material of Insurance Services          **Page 1 of 1**
Office, Inc., with its permission.  All rights reserved.

## FLORIDA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Florida.

**A.** The following Notice is added to the Policy:

If you have questions about your insurance policy, or questions about claims relating to your insurance policy, please contact your insurer at the following:

**AIG**
**175 Water Street**
**New York, NY 10038**
**(212) 458-5000**

**B.** The SETTLEMENT OF CLAIMS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SETTLEMENT OF CLAIMS**

The amount of loss for which we may be liable shall be payable:

**1.** Within 20 days after proof of loss, as herein required, is received and agreed to by us; or

**2.** Within 30 days after we receive the proof of loss and:

    **a.** There is an entry of a final judgment; or

    **b.** The amount of loss is determined by appraisal in accordance with the APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section.

**3.** Within 60 days of receiving notice of claim, unless we deny the claim during that time or factors beyond our control reasonably prevent such payment. If a portion of the claim is denied, then the 60-day time period for payment of claim relates to the portion of the claim that is not denied.

Subsection **3.** applies only to the following:

    **a.** A claim under a Policy covering residential property;

    **b.** A claim for building or contents coverage if the insured structure is 10,000 square feet or less and the Policy covers only locations in Florida; or

    **c.** A claim for contents coverage under a tenant's policy if the rented premises are 10,000 square feet or less and the Policy covers only locations in Florida.

We shall have the option to take all, or any part of the property at the agreed or appraised value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, upon providing you with notice of our intention to do so within 60 days after our receipt of the proof of loss herein required.

**C.** The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No one may bring a legal action against us under this Policy unless:

**1.** There has been full compliance with all of the terms of this Policy; and

**2.** Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

**D.** Subsection **e.** of Subsection **1.** Earth Movement of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted in its entirety and replaced with the following:

**e.** Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, and subsidence.

**E.** Subsection **1.** Earth Movement of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is amended to include:

**Earth movement** does not include **sinkhole loss** or **catastrophic ground cover collapse.**

**F. SINKHOLE LOSS AND CATASTROPHIC GROUND COVER COLLAPSE**

The following provisions are added to the Policy as SPECIFIED COVERED CAUSES OF LOSS:

**1.** **Sinkhole loss,** meaning loss or damage to a covered building when **structural damage** to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

**a.** Coverage for **sinkhole loss** includes stabilization of the building (including land stabilization) and repair to the foundation, provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to the **First Named Insured**. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**(1)** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**(2)** Our payment for **sinkhole loss** to the covered building will be limited to the actual cash value of the loss to such property.

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify the **First Named Insured** that there is coverage for your **sinkhole loss**. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable **Policy Limit**, we must either complete the recommended repairs or pay that **Policy Limit** upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable **Policy Limit** upon such determination. The most we will pay for the total of all **sinkhole loss**, including building and land stabilization and foundation repair, is the applicable **Policy Limit** on the affected building.

The stabilization and all other repairs to the covered building must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

**(1)** There is a mutual agreement between you and us;

**(2)** The claim is involved with the neutral evaluation process;

**(3)** The claim is in litigation; or

**(4)** The claim is under appraisal or mediation.

b.  **Sinkhole loss** does not include:

**(1)** Sinking or collapse of land into man-made underground cavities; or

**(2)** **Earth movement**.

c.  With respect to a claim for alleged **sinkhole loss**, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify the **First Named Insured** of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the "Department"). For alleged **sinkhole loss** to commercial residential or farm residential properties, this program applies instead of any mediation procedure set forth elsewhere in this Policy, but does not invalidate the APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section in this Policy, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five (5) years, whichever is later.

d.  Coverage for **sinkhole loss** under this endorsement does not increase the **Policy Limit**. Even if the loss or damage qualifies under, or includes, **catastrophic ground cover collapse** (addressed elsewhere in this endorsement) and **sinkhole loss**, only one **Policy Limit** will apply to such loss or damage.

e.   The following provision is added to the REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

A claim for **sinkhole loss**, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this Policy within two (2) years after you knew or reasonably should have known about the **sinkhole loss**.

f.   If we deny your claim for **sinkhole loss** without performing testing under section 627.7072, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is **sinkhole loss**, we will reimburse you for the testing costs.

g.   You may not accept a rebate from any person performing repairs for **sinkhole loss** covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

h.   If we deny your claim for **sinkhole loss** upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no **sinkhole loss** or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed the **First Named Insured** in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

i.   As a precondition to accepting payment for **sinkhole loss**, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

**2.   Catastrophic Ground Cover Collapse**

We will pay for direct physical loss or damage to a covered building caused by or resulting from **catastrophic ground cover collapse**, meaning geological activity that results in all of the following:

a.   The abrupt collapse of the ground cover;

b.    A depression in the ground cover clearly visible to the naked eye;

c.   **Structural damage** to the building, including the foundation; and

d.   The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a **catastrophic ground cover collapse**.

Coverage for **catastrophic ground cover collapse** does not increase the **Policy Limit**. Regardless of whether loss or damage attributable to **catastrophic ground cover collapse** also qualifies as **sinkhole loss** or **earth movement** (if either or both of those causes of loss are covered under this Policy), only one **Policy Limit** will apply to such loss or damage.

**3.**  For the purposes of **Sinkhole Loss** and **Catastrophic Ground Cover Collapse** coverages only, the following definitions are added to the Policy:

**a. Structural damage** means a covered building, regardless of the date of its construction, has experienced the following:

**(1)** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

**(2)** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the **primary structural members** or **primary structural systems** and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those **primary structural members** or **primary structural systems** exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

**(3)** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical **primary structural members** to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**(4)** Damage that results in the building, or any portion of the building containing **primary structural members** or **primary structural systems**, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**(5)** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

**b. Primary structural member** means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**c. Primary structural system** means an assemblage of **primary structural members**.

All other terms and conditions of the Policy remain the same.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.

## GEORGIA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Georgia.

**A.** The following exclusion and related provisions are added to the Policy:

    **1.** We will not pay for loss or damage arising out of any act committed:

        **a.** By or at the direction of any insured; and

        **b.** With the intent to cause a loss.

    **2.** However, this exclusion will not apply to deny coverage to an innocent co-insured, provided the loss:

        **a.** Is an otherwise covered property loss; and

        **b.** Arose out of an act of family violence by an insured against whom a family violence complaint is brought for such act.

    **3.** If we pay a claim pursuant to Subsection **2.** above**,** our payment to the insured is limited to that insured's legal interest in the property less any payments we first made to a mortgageholder or other party with a legal secured interest in the property. In no event will we pay more than the **Policy Limit**.

**B.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In such event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the replacement cost and actual cash value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  An appraisal decision will not be binding on either party.  Each party will:

    **1.** Pay its chosen appraiser; and

    **2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, it is without prejudice to our rights under the terms and conditions of this Policy and our right to deny the claim in whole or in part.

**C.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

    **1.** Concealment or misrepresentation of a material fact; or

    **2.** Fraud;

committed by you or any other insured at any time and relating to coverage under this Policy.

**D.** The following provision applies when this endorsement is attached to the Commercial Property Policy:

Subsection **5.** Terrorism of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted in its entirety and replaced with the following:

**5. Terrorism**, which means the use or threatened use of force or violence against a person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

**a.** A government;

**b.** The civilian population of a country, state or community; or

**c.** Disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto (the "Act") is in effect, **terrorism** includes a certified act of terrorism defined by Section 102. Definitions of the Act.

If **terrorism** is covered under this Policy, then a corresponding premium will be shown in Item **5.B.** of the Declarations.

If **terrorism** is not covered then any cause or event occurring concurrently or in any sequence with such **terrorism** is also not covered, except for direct physical loss or damage to **covered property** caused by fire following **terrorism**. With respect to this exception for fire following **terrorism**, no coverage is provided for: (1) any Additional Coverage, except debris removal under the DEBRIS REMOVAL Additional Coverage, or (2) any time element loss (including any time element loss related to debris removal). Notwithstanding any other valuation provision of this Policy to the contrary, we shall only pay the actual cash value of the insured building or other **covered property** at the time and place of the loss caused directly by the ensuing fire.

**E.** The following provision applies when this endorsement is attached to the U.S. Global Commercial Property Policy:

Subsections **5.b.** Domestic Terrorism and **5.c.** International Terrorism of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section are deleted in their entirety and replaced with the following:

**b. Domestic Terrorism**

**Domestic terrorism** means: (i) **terrorism** occurring in the United States, its territories, possessions and Puerto Rico, and (ii) a certified act of terrorism defined by Section 102. Definitions of the Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto (the "Act"), provided that such Act is in effect.

If **domestic terrorism** is covered under this Policy, then a corresponding Domestic Terrorism Premium will be shown in Item **5.** of the Declarations.

If **domestic terrorism** is not covered then any cause or event occurring concurrently or in any sequence with such **domestic terrorism** is also not covered, except for direct physical loss or damage to **covered property** caused by fire following **domestic terrorism**. With respect to this

Includes copyrighted material of Insurance Services Office, Inc., with its permission. All rights reserved.

exception for fire following **domestic terrorism**, no coverage is provided for: (1) any Additional Coverage, except debris removal under the DEBRIS REMOVAL Additional Coverage, or (2) any time element loss (including time element loss related to debris removal).  Notwithstanding any other valuation provision of this Policy to the contrary, we shall only pay the actual cash value of the insured building or other **covered property** at the time and place of the loss caused directly by the ensuing fire.

    **c.   International Terrorism**

        **International terrorism** means **terrorism** occurring outside of the United States, its territories, possessions and Puerto Rico and does not include a certified act of terrorism as defined by the Act.

        If **international terrorism** is covered under this Policy, then a corresponding International Terrorism Premium will be shown in Item **5.** of the Declarations.

        Whether or not **international terrorism** is covered under this Policy, we do not cover loss or damage due to **international terrorism** caused directly or indirectly by **biological and/or chemical terrorism** or **nuclear terrorism** (including fire following **biological and/or chemical terrorism** or **nuclear terrorism** regardless of any exception to any exclusion in the Policy to the contrary) all whether controlled or uncontrolled, proximate or remote, sudden or over any length of time, or which is contributed to or aggravated by any other cause or event.  Such **biological and/or chemical terrorism** or **nuclear terrorism** is excluded regardless of any other cause or event occurring concurrently or in any sequence with such **biological and/or chemical terrorism** or **nuclear terrorism**.

        In addition, we do not cover loss or damage caused directly or indirectly by **international terrorism** or occurring concurrently or in any sequence with **international terrorism** (including fire following **international terrorism** regardless of any exception to any exclusion in the Policy to the contrary) in any excluded country, region, area, location, or jurisdiction shown in Item **7.A.5.b.** of the Declarations or if **international terrorism** is not covered.

**F.**   Any OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE provision in this Policy is deleted and replaced by the following:

    **OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE**

    **1.**   You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable limit or sublimit of liability under this Policy bears to the limit and/or sublimit of liability of all other insurance covering on the same basis.

    **2.**   If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable limit or sublimit of liability under this Policy.

**G.**   If the Property Performance Condominium Segment Endorsement, Form Number 124434 (1-17) is attached to and made a part of this Policy, then Subsection **7.** of such endorsement is deleted and replaced with the following:

    **7.**   The following is added to the GENERAL CONDITIONS Section:

    **ACT OR OMISSION BY UNIT-OWNER**

    No act or omission by a **unit-owner** will result in loss or damage not being paid under this Policy unless the **unit-owner's** actions were within the scope of his or her authority on behalf of the condominium association.

**H.** The first paragraph of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted in its entirety and replaced with the following:

Subject to the terms and conditions of this Policy, covered causes of loss include the following specified covered causes of loss.  With respect to earth movement, flood and named storm, coverage may be limited to specific areas, regions or zones.  Please see Item **7.A.** of the Declarations to determine if coverage is provided and the applicable sublimit of liability.

**I.** The following provision applies when this endorsement is attached to the U.S. Global Commercial Property Policy: Subsection **1.m.ii.** of the PERILS EXCLUDED Section is deleted in its entirety and replaced with the following:

**ii.**Notwithstanding the foregoing, with respect to the application of this exclusion, no coverage is provided for international terrorism, except to the extent of any exception set forth in Item 7.A.5.b.i. of the Declarations.

All other terms and conditions of the Policy remain the same.

# HAWAII STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Hawaii.

**A.** The following exclusion and related provisions are added to the Policy:

    **1.** We will not pay for loss or damage arising out of any act committed:

        **a.** By or at the direction of any insured; and

        **b.** With the intent to cause a loss.

    **2.** However, this exclusion will not apply to deny an insured's claim for an otherwise covered property loss if such loss is caused by an act of **domestic abuse** by another insured under the Policy, and the insured making the claim:

        **a.** Files a police report and cooperates with any law enforcement investigation relating to the act of **domestic abuse**; and

        **b.** Did not cooperate in or contribute to the creation of the loss.

    **3.** If we pay a claim pursuant to Subsection **A.2.** of this Endorsement, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the **Policy Limit**.

**B.** The following is added to the SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

If we pay an insured, who is a victim of **domestic abuse**, for a loss caused by an act of **domestic abuse**, the rights of that insured to recover damages from the perpetrator of the abuse are transferred to us to the extent of our payment. That insured may not waive such rights to recover against the perpetrator of the **domestic abuse**.

**C.** As used in this Endorsement, **domestic abuse** means:

    **1.** Physical harm, bodily injury, assault or the infliction of fear of imminent physical harm, bodily injury or assault between family or household members;

    **2.** Sexual assault of one family or household member by another;

    **3.** Stalking of one family or household member by another family or household member; or

    **4.** Intentionally, knowingly or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

All other terms and conditions of the Policy remain the same.

## IDAHO STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Idaho.

Should the need arise you may contact the Idaho Department of Insurance at the following:

Idaho Department of Insurance
Consumer Affairs
700 W State Street, 3rd Floor
P.O. Box 83720
Boise, ID 83720-0043

Telephone No.: 1-800-721-3272
Web Address: www.DOI.Idaho.gov

All other terms and conditions of the Policy remain the same.

# ILLINOIS STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Illinois.

**A.** The following is added to the SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

The 24 month period in which to bring suit against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

**B.** Any OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE provision in this Policy is deleted and replaced by the following:

**OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE**

**1.** You may have other insurance. If you do, we will pay our share of the covered loss or damage. Subject to exceptions as set forth in **2.** below, our share is the proportion that the applicable limit of insurance under this Policy bears to the limits of insurance of all insurance covering the loss or damage.

**2.** If there is other insurance as described below, we will pay under this Policy only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not:

    **a.** The property covered under this Policy is also covered under another policy, in which it is more specifically described; or

    **b.** The other insurance covers your interest or the interest of others in property which you do not own.

**C.** If this Policy covers household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes, then Subsections **1.** and **2.** below apply:

**1.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In such event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

**1.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **2.** below.

**2.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

    **a.** You demanded the appraisal; and

    **b.** The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

If there is an appraisal, we will still retain our right to deny the claim.

**2.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

**a.** This Policy is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the Policy or endorsement or in the written application for this Policy and:

**(1)** Was made with actual intent to deceive; or

**(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Policy after the Policy has been in effect for one year or one Policy Period, whichever is less.

**b.** This Policy is void if you or any other insured, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

**(1)** This Policy;

**(2)** The **covered property**;

**(3)** Your interest in the **covered property**; or

**(4)** A claim under the Policy.

**c.** Notwithstanding the limitations stated in **2.a.** above, we may cancel the Policy in accordance with the terms of the CANCELLATION Subsection of the GENERAL CONDITIONS Section.

**D.** The following exclusion and related provisions are added to the Policy:

**1.** We will not pay for loss or damage arising out of any act an insured commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

**2.** However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

**a.** The loss arose out of a pattern of criminal domestic violence; and

**b.** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

**3.** If we pay a claim pursuant to Subsection **D.2.**, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the **Policy Limit**.

**E.**  Should you have any complaints arise regarding this insurance, you may contact the following:

AIG
Consumer Complaints Division
80 Pine Street, 13th Floor
New York, NY 10005
Phone: 1-877-541-9748
Fax: 844-637-6862

consumer@aig.com

Illinois Department of Insurance (2 Locations)
Consumer Division
320 W. Washington Street
Springfield, IL 62767

Consumer Division
122 S. Michigan Ave., 19th Floor
Chicago, IL 60603

(866) 445-5364 (toll free)
(217) 558-2083 (fax) (Springfield)
(217) 782-4515 (Tel.) (Springfield)
(312) 814-2420 (Tel.) (Chicago)
http:// insurance.illinois.gov/
consumer_complaints@ins.state.il.us

**F.**   The INCREASE IN HAZARD Subsection of the GENERAL CONDITIONS Section is deleted in its entirety and replaced with the following:

**INCREASE IN HAZARD**

We reserve the right to increase the premium in the event there is covered loss or damage to **covered property** to the extent that such loss or damage is a result of or in connection with a material increase in hazard over which you have control or knowledge.

**G.**   If the Manufacturing Segment Endorsement, Manufacturing Segment Endorsement (Global Version), Real Estate Segment Endorsement, Retail Segment Endorsement, Retail Segment Endorsement (Global Version) is attached to this Policy, then the third to the last paragraph beginning with the words, "Any amounts payable under . . ." and ending with the words, ". . . as shown in the above Schedule[.]" of the WAREHOUSEMAN LEGAL LIABILITY Additional Coverage in such endorsement is deleted in its entirety and replaced by the following:

Amounts set forth in Subsections **a.** through **f.**, inclusive, above are payable in addition to the Warehouseman Legal Liability sublimit of liability as shown in the above Schedule.  However, all other amounts payable under this Additional Coverage are included within such Warehouseman Legal Liability sublimit of liability.

All other terms and conditions of the Policy remain the same.

## INDIANA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Indiana.

**A.** The SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUBROGATION**

If any person or organization to or for whom we make payment under this Policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. Our right to recover damages from another may be enforced even if the person or organization to or for whom we make payment has not been fully compensated for damages.

The person or organization to or for whom we make payment must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your **covered property**.

**2.** After a loss to your **covered property** only if, at time of loss, that party is one of the following:

   **a.** Someone insured by this insurance;

   **b.** A business firm:

       **(1)** Owned or controlled by you; or

       **(2)** That owns or controls you; or

   **c.** Your tenant.

   This will not restrict your insurance.

**3.** Any recovery by us as a result of subrogation proceedings arising out of an **occurrence**, after expenses, including our legal fees, incurred in such subrogation proceedings are deducted, shall accrue to you in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

**4.** You will cooperate with us and, upon our request and expense will:

   **a.** Attend hearings and trials;

   **b.** Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

**B.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

   **1.** Concealment or misrepresentation of a material fact; or

**2.** Fraud

committed by an insured at any time and relating to a claim under this Policy.

**C.  Pollutants or Contaminants**

In this Policy, any exclusion, limitation or other provision relating to **pollutants or contaminants**, or any amendment to or replacement of such exclusions, limitations or other provisions, applies whether or not the irritant, pollutant or contaminant has any function in or on your business, operations, premises, site or location.

**D.  Amendment of Definition of Pollutants or Contaminants**

<strong>Schedule</strong>

| **Specifically identified substances or materials** | |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

In this Policy, the definition of **pollutants or contaminants** is deleted and replaced by the following:

**Pollutants or contaminants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, and any substances or materials identified in the Schedule, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances. Waste includes materials to be recycled, reconditioned or reclaimed.  **Pollutants or contaminants** do not include **fungus, mold or spore.**

The definition of **pollutants or contaminants** applies whether or not such irritant, pollutant, or contaminant has any function in or on your business, operations, premises, site or location.

All other terms and conditions of the Policy remain the same.

# KANSAS STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Kansas.

**A.** The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No one may bring a legal action against us under this Policy unless:

**1.** There has been full compliance with all of the terms of this Policy; and

**2.** The action is brought within five years after the date on which the direct physical loss or damage occurred.

**B.** The following is added to the Policy:

When used in this Policy the term "actual cash value" shall mean the amount it would cost to repair or replace **covered property** with material of like kind and quality, less allowance for deterioration and depreciation, including obsolescence.

**C.** The following applies when coverage is provided for townhouse buildings and structures:

**1.** The following is added:

An association of townhouse owners includes every person or organization who is an owner of a fee simple title to a townhouse unit, for which insurance is provided by this Policy.

**2.** The INCREASE IN HAZARD Subsection of the GENERAL CONDITIONS Section is superseded and replaced by the following:

This Policy will not apply to any loss at a **covered location** to the extent that such loss is a result of or in connection with a material increase in hazard over which you have control or knowledge.  The following will not affect this insurance if beyond your control or knowledge:

**a.** Any act or neglect by any occupants or owners of the buildings; or

**b.** Your failure to comply with any warranty or condition with regard to any portion of your premises.

Any material increase in hazard at one or more **covered locations** will not affect coverage at other **covered locations** where, at the time of loss or damage, the increase in hazard does not exist.

**3.** The following is added to the PROPERTY NOT COVERED Section:

Household and personal property, unless owned by the association of townhouse owners.

**4.** Subsection **1.** in the MORTGAGEHOLDERS Subsection of the GENERAL CONDITIONS Section is replaced by the following:

**1.** We will pay for covered loss of or damage to buildings or structures to:

**(1)** The insurance trustee for the benefit of each townhouse owner;

---

**113126 (1/17)** Includes copyrighted material of Insurance Services Office,
Inc., with its permission.  All rights reserved. **Page 1 of 2**

**(2)** The holder of each first mortgage; and

**(3)** The association;

as interests may appear and as shown in the townhouse declaration.

**D.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If, after a claim has been made, a dispute arises because you and we disagree on the value of the property or the amount of loss, either may make a written request for an appraisal of the loss. **However, an appraisal will be made only if both you and we agree, voluntarily, to have the loss appraised.** If so agreed, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. **A decision agreed to by any two will be binding.** Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**E.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage under this Policy if a **fraudulent insurance act** has occurred.

As used herein, **fraudulent insurance act** means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto.

**F.** The ECONOMIC AND TRADE SANCTIONS Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**ECONOMIC AND TRADE SANCTIONS**

We shall not be deemed to provide cover and we shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose us, our parent company or our ultimate controlling entity to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

All other terms and conditions of the Policy remain the same.

## COMMONWEALTH OF KENTUCKY AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the Commonwealth of Kentucky.

**A.** The following exclusion and related provisions are added to the Policy:

    **1.** We will not pay for loss or damage arising out of any act committed:

        **a.** By or at the direction of any insured; and

        **b.** With the intent to cause a loss.

    **2.** However, this exclusion will not apply to deny coverage to an innocent co-insured who did not cooperate in or contribute to the creation of the loss, provided the loss is an otherwise covered property loss and:

        **a.** The loss arose out of a pattern of domestic violence and abuse; and

        **b.** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

    **3.** If we pay a claim pursuant to Subsection **A.2.,** our payment to the insured is limited to that insured's ownership interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the **Policy Limit**.

**B.** The SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is amended by adding the following:

If we pay an innocent co-insured for loss described in Subsection **A.2.,** the rights of the innocent co-insured to recover damages from the perpetrator are transferred to us to the extent of our payment. Following the loss, the innocent co-insured may not waive such rights to recover against the perpetrator of the domestic violence.

All other terms and conditions of the Policy remain the same.

## LOUISIANA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Louisiana.

**A.** The SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

   **1.** We may require from you an assignment of all rights of recovery against any party for loss to the extent that payment is made by us.  However, you have the right to waive subrogation, provided such waiver is entered into by you in writing (1) prior to the loss or (2)  after a covered loss, only if, at time of loss, that party is one of the following:

   **a.** Someone insured by this insurance;

   **b.** A business firm:

   **(1)** Owned or controlled by you; or

   **(2)** That owns or controls you;

   **c.** Your employee or employer;

   **d.** The owner, lessor or tenant of the:

   **(1) Covered location**; or

   **(2)** A location where loss or damage occurred;

   including their employees, partners and stockholders; or

   **e.** Your relative by blood or marriage.

   If you waive your rights against another party in writing after a loss, we can recover from you any amount you received for that waiver. But we cannot recover more than the amount we paid you for that loss.

   **2.** Any recovery by us as a result of subrogation proceedings arising out of an **occurrence**, after expenses, including our legal fees, incurred in such subrogation proceedings are deducted, shall accrue to you in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

   **3.** You will cooperate with us and, upon our request and expense will:

   **a.** Attend hearings and trials;

   **b.** Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

**B.** The following provision is added to the REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section and to any similar condition, and supersedes any provision to the contrary in this Policy or in an endorsement attached to this Policy with respect to the time period for submission of proof of loss:

If the loss or damage arises due to a catastrophic event for which a state of disaster or emergency is declared pursuant to law by civil officials, and the **covered property** is located in an area within the declaration, you must submit the proof of loss to us within 180 days; but this 180-day period does not commence as long as the declaration of disaster or emergency is in existence and civil authorities are denying you access to your property.

**C.** The following exclusion and related provisions are added to the Policy:

    **1.** We will not pay for loss or damage arising out of any act committed:

        **a.** By or at the direction of any insured; and

        **b.** With the intent to cause a loss.

    **2.** With respect to loss or damage to **covered property** caused by fire, this exclusion does not apply to an insured(s) who did not set the fire or otherwise participate in the cause of the loss, provided the loss is otherwise covered under this Policy.

    **3.** If we pay a claim pursuant to Subsection **C.2.,** our payment to any insured is limited to that insured's proportionate share of the Policy proceeds, but not more than that insured's legal interest in the **covered property** that sustained the fire loss. Proportionate share will be determined based on the interests of all parties eligible to receive payment, including a mortgageholder or other party with a secured legal interest. The Policy proceeds will not include any amount attributable to the interest of the insured(s) who set the fire or otherwise participated in the cause of the loss. In no event will we pay more in total than the **Policy Limit** on the **covered property** that sustained the fire loss.

    **4.** We may apply reasonable standards of proof to claims for such loss.

**D.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced with the following:

    **APPRAISAL**

    If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party. Each party will:

        **a.** Pay its chosen appraiser; and

        **b.** Bear the other expenses of the appraisal and umpire equally.

    If there is an appraisal, we will still retain our right to deny the claim.

**E.** The SETTLEMENT OF CLAIMS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

    **SETTLEMENT OF CLAIMS**

    The undisputed portion of the loss shall be payable within 30 days after receipt of a satisfactory proof of loss, as herein required.  However, we have no duty to provide coverage under this Policy if the failure to comply with the terms of this Policy is prejudicial to us.

    We shall have the option to take all, or any part of the property at the agreed or appraised value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality,

within a reasonable time, upon providing you with notice of our intention to do so within 60 days after our receipt of the satisfactory proof of loss herein required.

**F.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

**1.** With respect to loss or damage caused by fire, we do not provide coverage to the insured who, whether before or after the loss, has intentionally concealed or misrepresented any material fact or circumstance, with the intent to deceive, concerning:

   **a.** This Policy;

   **b.** The **covered property**;

   **c.** Your interest in the **covered property**; or

   **d.** A claim under this Policy.

**2.** With respect to loss or damage caused by a peril other than fire and with respect to all insureds covered under this Policy, we provide no coverage for loss or damage if, whether before or after a loss, one or more insureds have intentionally concealed or misrepresented any material fact or circumstance, with the intent to deceive, concerning:

   **a.** This Policy;

   **b.** The **covered property**;

   **c.** Your interest in the **covered property**; or

   **d.** A claim under this Policy.

**G.** Wherever in this Policy the term **"pollutants or contaminants"** is shown, such term shall be deleted in its entirety and replaced with **"pollutants** or **contaminants"** as separate terms.

Notwithstanding the definition in this Policy for **pollutants or contaminants**, the following definitions apply:

**1.** **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. **Pollutants** do not include **fungus, mold or spore**.

**2.** **Contaminants** means bacteria or viruses, or other hazardous substances. **Contaminants** do not include **fungus, mold or spore**.

**H.** The following provision applies when this endorsement is attached to the Commercial Property Policy:

Subsection **5.** Terrorism of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted in its entirety and replaced with the following:

**5. Terrorism**

   **a.** If you elect to purchase **terrorism** coverage, then both **certified terrorism** and **non-certified terrorism** coverage are provided and a corresponding premium will be shown in Item **5.B.** of the Declarations.

**b.** If you do not elect to purchase **terrorism** coverage, then **certified terrorism** is not covered, but **non-certified terrorism** is covered unless such **non-certified terrorism**:

    **i.** Results in industry-wide insured losses that exceed $25,000,000 for related incidents that occur within a 72-hour period, or

    **ii.** Involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination, or

    **iii.** Is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials, or

    **iv.** Involves the release of pathogenic or poisonous biological or chemical materials and it appears that one purpose of the **non-certified terrorism** was to release such materials;

in such case, **non-certified terrorism** is not covered.

**c.** Whether or not **terrorism** is covered under this Policy, we do not cover loss or damage caused directly or indirectly by **biological and/or chemical terrorism** or **nuclear terrorism** whether controlled or uncontrolled, proximate or remote, sudden or over any length of time, or which is contributed to or aggravated by any other cause or event.  Such **biological and/or chemical terrorism** or **nuclear terrorism** is excluded regardless of any other cause or event occurring concurrently or in any sequence with such **biological and/or chemical terrorism** or **nuclear terrorism**.  **Biological and/or chemical terrorism** means the dispersal, discharge, or release of pathogenic, toxic, poisonous, or damaging biological or chemical agents or substances in an act(s) of **terrorism**.  **Nuclear terrorism** means an act(s) of **terrorism** involving or resulting in nuclear reaction or nuclear radiation or radioactive contamination.

**d.** If **terrorism** is not covered then any cause or event occurring concurrently or in any sequence with such **terrorism** is also not covered, including, any action taken to prevent, defend against, respond to or retaliate against **terrorism** or suspected **terrorism**, except for direct physical loss or damage to **covered property** caused by fire following **terrorism**.  With respect to this exception for fire following **terrorism**, no coverage is provided for: (1) fire following **biological or chemical terrorism** or **nuclear terrorism**, (2) any Additional Coverage, except debris removal under the DEBRIS REMOVAL Additional Coverage, or (3) any time element loss (including any time element loss related to debris removal).  Notwithstanding any other valuation provision of this Policy to the contrary, we shall only pay the actual cash value of the insured building or other **covered property** at the time and place of the loss caused directly by the ensuing fire.

**e.** **Terrorism** means:

    **i.** **Certified terrorism** meaning any act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

        **(1)** to be an act of terrorism;

        **(2)** to be a violent act or an act that is dangerous to:

            **(a)** human life;

            **(b)** property; or

            **(c)** infrastructure;

**(3)** to have resulted in damage within the United States, or outside of the United States in the case of:

    **(a)** an air carrier or vessel described in Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto; or

    **(b)** the premises of a United States mission; and

**(4)** to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

**ii.** **Non-certified terrorism**, which means the use or threatened use of force or violence against a person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

**(1)** A government;

**(2)** The civilian population of a country, state or community; or

**(3)** Disrupt the economy of a country, state or community.

Notwithstanding the foregoing, **non-certified terrorism** does not include **certified terrorism**.

**I.** The following provision applies when this endorsement is attached to the U.S. Global Commercial Property Policy:

Subsection **5.b.** Domestic Terrorism of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted in its entirety and replaced with the following:

**b. Domestic Terrorism**

**i.** If you elect to purchase **domestic terrorism** coverage, then both **certified domestic terrorism** and **non-certified domestic terrorism** coverage are provided and a corresponding Domestic Terrorism Premium will be shown in Item **5.** of the Declarations.

**ii.** If you do not elect to purchase **terrorism** coverage, then **certified domestic terrorism** is not covered, but **non-certified domestic terrorism** is covered unless such **non-certified domestic terrorism**:

**(1)** Results in industry-wide insured losses that exceed $25,000,000 for related incidents that occur within a 72-hour period, or

**(2)** Involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination, or

**(3)** Is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials, or

**(4)** Involves the release of pathogenic or poisonous biological or chemical materials and it appears that one purpose of the **non-certified domestic terrorism** was to release such materials;

in such case, **non-certified domestic terrorism** is not covered.

iii.   Whether or not **domestic terrorism** is covered under this Policy, we do not cover loss or damage caused directly or indirectly by **biological and/or chemical terrorism** or **nuclear terrorism** whether controlled or uncontrolled, proximate or remote, sudden or over any length of time, or which is contributed to or aggravated by any other cause or event.   Such **biological and/or chemical terrorism** or **nuclear terrorism** is excluded regardless of any other cause or event occurring concurrently or in any sequence with such **biological and/or chemical terrorism** or **nuclear terrorism**.   **Biological and/or chemical terrorism** means the dispersal, discharge, or release of pathogenic, toxic, poisonous, or damaging biological or chemical agents or substances in an act(s) of **terrorism**.   **Nuclear terrorism** means an act(s) of **terrorism** involving or resulting in nuclear reaction or nuclear radiation or radioactive contamination.

iv.   If **domestic terrorism** is not covered then any cause or event occurring concurrently or in any sequence with such **domestic terrorism** is also not covered, including, any action taken to prevent, defend against, respond to or retaliate against **domestic terrorism** or suspected **domestic terrorism**, except for direct physical loss or damage to **covered property** caused by fire following **domestic terrorism**.   With respect to this exception for fire following **domestic terrorism**, no coverage is provided for: (1) fire following **biological or chemical terrorism** or **nuclear terrorism**, (2) any Additional Coverage, except debris removal under the DEBRIS REMOVAL Additional Coverage, or (3) any time element loss (including any time element loss related to debris removal).   Notwithstanding any other valuation provision of this Policy to the contrary, we shall only pay the actual cash value of the insured building or other **covered property** at the time and place of the loss caused directly by the ensuing fire.

v.   **Domestic terrorism** means:

(1)   **Certified domestic terrorism** meaning any act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

   a.   to be an act of terrorism;

   b.   to be a violent act or an act that is dangerous to:

      (a)   human life;

      (b)   property; or

      (c)   infrastructure;

   c.   to have resulted in damage within the United States, or outside of the United States in the case of:

      (a)   an air carrier or vessel described in Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto; or

      (b)   the premises of a United States mission; and

   d.   to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

(2)   **Non-certified domestic terrorism**, which means the use or threatened use of force or violence against a person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.

of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

**a.**  A government;

**b.**  The civilian population of a country, state or community; or

**c.**  Disrupt the economy of a country, state or community; and

occurring in the United States, its territories, possessions and Puerto Rico.

Notwithstanding the foregoing, **non-certified domestic terrorism** does not include **certified domestic terrorism**.

**J.**

## THIS IS A NOTICE ONLY AND DOES NOT CHANGE YOUR COVERAGE

## Important Information Required by the Louisiana Department of Insurance

### COMMERCIAL INSURANCE POLICY COVERAGE DISCLOSURE SUMMARY

### This form is promulgated pursuant to LSA-R.S. 22:1319

**THIS IS ONLY A SUMMARY OF YOUR COVERAGE AND DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGES OR ANY OTHER PROVISIONS CONTAINED IN YOUR POLICY. INSURANCE IS A CONTRACT. THE LANGUAGE IN YOUR POLICY CONTROLS YOUR LEGAL RIGHTS AND OBLIGATIONS.**

**\*\*READ YOUR INSURANCE POLICY FOR COMPLETE POLICY TERMS AND CONDITIONS\*\***

**COVERAGE(S) FOR WHICH PREMIUM WAS PAID:** Provided in accordance with your policy form, applicable endorsements, and Declarations.

### Deductibles

**This policy sets forth certain deductibles that will be applied to claims for damages. When applicable, a deductible will be subtracted from your total claim and you will be paid the balance subject to applicable coverage limits.**

- **You may be able to reduce your premium by increasing your deductible. Contact your producer (agent) or insurer for details.**

**NOTICE: This policy does set forth a separate deductible for covered losses caused by named storm as defined in the policy.**

<u>**Separate Deductible**</u>

<u>**Example – Named Storm Damage**</u>

**If applicable, the following illustrates how a separate deductible applying to named storm damage is applied under your policy.**

**The following assumes no co-insurance penalty and a 5% named storm deductible applying to Total Insurable Values. The amounts of loss to the damaged property are $75,000 (building) and $125,000 (personal property).  The amount of time element loss is $500,000.**

| | |
|---|---|
| **Limit of insurance (combined property damage and time element)** | **$50,000,000** |
| **Total Insurable Values at the damaged covered location** | |
| **Building** | **$2,000,000** |
| **Personal Property** | **$1,000,000** |
| **Time Element** | **$1,000,000** |
| **Total Insurable Values** | **$4,000,000** |
| **5% of the Total Insurable Values of $4,000,000 (Deductible)** | **$200,000** |
| **Total Loss and/or Damage** | |
| **Building Damage** | **$75,000** |
| **Personal Property Damage** | **$125,000** |

| Time Element Loss | $500,000 |
|---|---|
| Total Loss and/or Damage | $700,000 |
| Less the Deductible as Calculated Above (Please note a minimum deductible may apply which could be greater.) | < $200,000 > |
| Total net payment to insured for all property damage and time element loss | $500,000 |

**TO SEE EXACTLY HOW YOUR SEPARATE NAMED STORM DEDUCTIBLE WILL APPLY, PLEASE REFER TO YOUR POLICY.**

<u>**Limitations or Exclusion under this Policy**</u>

**FLOOD** – **Flood damage is/is not covered (as indicated on the attached declarations), regardless of how caused, when flood is the peril that causes the loss. Flood water includes, but is not limited to, storm surge, waves, tidal water, overflow of a body of water, whether driven by wind or not.**

<u>**Flood insurance**</u> **may be available through the National Flood Insurance Program (NFIP). NFIP flood insurance may provide coverage for damage to your dwelling or building and/or contents, subject to the coverage limits and terms of the policy.**

<u>**Excess Flood Insurance**</u> **may be available under a separate policy, from this or another insurer, if the amount of the primary flood insurance is not enough to cover the value of your property.**

- **You may contact your producer (agent) or insurer for more information on the NFIP and excess flood insurance.**

**MOLD** – **Damage caused solely by mold is not covered under this policy.**

## **FOR ALL OTHER LIMITATIONS OR EXCLUSIONS REFER TO YOUR POLICY FOR COMPLETE DETAILS ON TERMS AND PROVISIONS**

**K.** If the Manufacturing Segment Endorsement, Manufacturing Segment Endorsement (Global Version), Real Estate Segment Endorsement, Retail Segment Endorsement, or Retail Segment Endorsement (Global Version) is attached to this Policy, then Subsection **a.** of the WAREHOUSEMAN LEGAL LIABILITY Additional Coverage in such endorsement is deleted and replaced by the following:

    **a.** Defending you against any suit alleging such direct physical loss or damage to **bailed property**; but we shall have the right, at our sole discretion, to select defense counsel to defend you and to settle any claim or suit as we deem expedient;

All other terms and conditions of the Policy remain the same.

# MAINE STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Maine.

**A.** The following is added to the Policy:

When used in this Policy the term "actual cash value" shall mean the replacement cost of **covered property** at the time of loss, less the value of physical depreciation as to the damaged property. The term physical depreciation means a value as determined according to standard business practices.

**B.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We do not provide coverage to one or more insureds who, at any time:

**1.** Intentionally concealed or misrepresented a material fact;

**2.** Engaged in fraudulent conduct; or

**3.** Made a false statement;

relating to this insurance.

**C.** The following provision is added and supersedes any provision to the contrary with respect to the payment of post-judgment interest:

**Post-judgment Interest**

We will pay interest accruing after a judgment is entered in accordance with Maine law. Our duty to pay interest ends when we pay, offer to pay or deposit in court that part of the judgment which does not exceed our **Policy Limit** for which coverage is provided under this Policy.  This payment will not reduce the **Policy Limit** for which coverage is provided under this Policy.

**D. MAINE INSURANCE INSPECTION SERVICES - EXEMPTION FROM LIABILITY**

**The Following Limits Our Liability**

We, our agents, employees, or service contractors, are not liable for damages from injury, death or loss occurring as a result of any act or omission in the furnishing of or the failure to furnish insurance inspection services related to, in connection with or incidental to the issuance or renewal of a policy of property or casualty insurance.

This exemption from liability does not apply:

**1.** If the injury, loss or death occurred during the actual performance of inspection services and was proximately caused by our negligence, or by the negligence of our agents, employees or service contractors;

**2.** To any inspection services required to be performed under the provisions of a written service contract or defined loss prevention program;

**3.** In any action against us, our agents, employees, or service contractors for damages proximately caused by our acts or omissions which are determined to constitute a crime, actual malice or gross negligence; or

**4.** If we fail to provide this written notice to the insured whenever the Policy is issued or when new Policy forms are issued upon renewal.

**E.** The following is added to the Policy:

When used in this Policy the term "dangerous condition" shall mean a condition that exposes property or individuals to harm or risk.

**F.  STANDARD FIRE POLICY PROVISIONS**

The provisions of the Standard Fire Policy are stated below. <u>State law requires that they be attached to all policies.</u> If any conditions of this form are construed to be more liberal than any other policy conditions relating to the perils of fire, lightning or removal, the conditions of this form will apply.

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO, AND OF THE PREMIUM SPECIFIED in the Declarations or in endorsements made a part hereof, this Company, for the term of *years specified in the Declarations* from *inception date shown in the Declarations* at 12:01 a.m. (Standard Time) to *expiration date shown in the Declarations* at 12:01 a.m. (Standard Time) at location of property involved, to an amount not exceeding the limit of liability specified in the Declarations, does insure the *Insured named in the Declarations* and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the Declarations while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

| | | |
|---|---|---|
| 1 | **Concealment,** | This entire policy shall be void if, whether |
| 2 | **fraud.** | before or after a loss, the insured has wil- |
| 3 | | fully concealed or misrepresented any ma- |
| 4 | | terial fact or circumstance concerning this insurance or the |
| 5 | | subject thereof, or the interest of the insured therein, or in case |
| 6 | | of any fraud or false swearing by the insured relating thereto. |
| 7 | **Uninsurable** | This policy shall not cover accounts, bills, |
| 8 | **and** | currency, deeds, evidences of debt, money or |
| 9 | **excepted property.** | securities; nor, unless specifically named |
| 10 | | hereon in writing, bullion or manuscripts. |
| 11 | **Perils not** | This Company shall not be liable for loss by |
| 12 | **included.** | fire or other perils insured against in this |
| 13 | | policy caused, directly or indirectly, by: (a) |
| 14 | | enemy attack by armed forces, including action taken by mili- |
| 15 | | tary, naval or air forces in resisting an actual or an immediately |
| 16 | | impending enemy attack; (b) invasion; (c) insurrection; (d) |
| 17 | | rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) |
| 18 | | order of any civil authority except acts of destruction at the time |
| 19 | | of and for the purpose of preventing the spread of fire, provided |
| 20 | | that such fire did not originate from any of the perils excluded |
| 21 | | by this policy; (i) neglect of the insured to use all reasonable |
| 22 | | means to save and preserve the property at and after a loss, or |
| 23 | | when the property is endangered by fire in neighboring prem- |
| 24 | | ises; (j) nor shall this Company be liable for loss by theft. |
| 25 | **Other Insurance.** | Other insurance may be prohibited or the |

26               amount of insurance may be limited by en-
27 dorsement attached hereto.
28 **Conditions suspending or restricting insurance. Unless other-**
29 **wise provided in writing added hereto this Company shall not**
30 **be liable for loss occurring**
31 (a) while the hazard is increased by any means within the con-
32 trol or knowledge of the insured; or
33 (b) while a described building, whether intended for occupancy
34 by owner or tenant, is vacant or unoccupied beyond a period of
35 sixty consecutive days; or
36 (c) as a result of explosion or riot, unless fire ensue, and in
37 that event for loss by fire only.
38 **Other perils**          Any other peril to be insured against or sub-
39 **or subjects.**         ject of insurance to be covered in this policy
40                  shall be by endorsement in writing hereon or
41 added hereto.
42 **Added provisions**     The extent of the application of insurance
43                  under this policy and of the contribution to
44 be made by this Company in case of loss, and any other pro-
45 vision or agreement not inconsistent with the provisions of this
46 policy, may be provided for in writing added hereto, but no pro-
47 vision may be waived except such as by the terms of this policy
48 is subject to change.
49 **Waiver**             No permission affecting this insurance shall
50 **provisions.**         exist, or waiver of any provision be valid,
51                  unless granted herein or expressed in writing
52 added hereto. No provision, stipulation or forfeiture shall be
53 held to be waived by any requirement or proceeding on the part
54 of this Company relating to appraisal or to any examination
55 provided for herein.
56 **Cancellation**       This policy shall be cancelled at any time
57 **of policy.**         at the request of the insured, in which case
58                  this Company shall, upon demand and sur-
59 render of this policy, refund the excess of paid premium above
60 the customary short rates for the expired time. This pol-
61 icy may be cancelled at any time by this Company by giving
62 to the insured a ten days' written notice of cancellation with
63 or without tender of the excess of paid premium above the pro
64 rata premium for the expired time, which excess, if not ten-
65 dered, shall be refunded on demand. Notice of cancellation shall
66 state that said excess premium (if not tendered) will be re-
67 funded on demand.
68 **Mortgagee**        If loss hereunder is made payable, in whole
69 **interests and**     or in part, to a designated mortgagee not
70 **obligations.**      named herein as the insured, such interest in
71                  this policy may be cancelled by giving to such
72                  mortgagee a ten days' written notice of can-
73 cellation.
74 If the insured fails to render proof of loss such mortgagee, upon
75 notice, shall render proof of loss in the form herein specified
76 within sixty (60) days thereafter and shall be subject to the pro-
77 visions hereof relating to appraisal and time of payment and of
78 bringing suit. If this Company shall claim that no liability ex-
79 isted as to the mortgagor or owner, it shall, to the extent of pay-
80 ment of loss to the mortgagee, be subrogated to all the mort-
81 gagee's rights of recovery, but without impairing mortgagee's
82 right to sue; or it may pay off the mortgage debt and require
83 an assignment thereof and of the mortgage. Other provisions
84 relating to the interests and obligations of such mortgagee may
85 be added hereto by agreement in writing.

**113129 (1/17)**      Includes copyrighted material of Insurance Services Office, Inc.,      **Page 3 of 5**
with its permission.  All rights reserved.

| | | |
|---|---|---|
| 86 | **Pro rata liability.** | This Company shall not be liable for a greater |
| 87 | | proportion of any loss than the amount |

88  hereby insured shall bear to the whole insurance covering the
89  property against the peril involved, whether collectible or not.

| | | |
|---|---|---|
| 90 | **Requirements in** | The insured shall give immediate written |
| 91 | **case loss occurs.** | notice to this Company of any loss, protect |
| 92 | | the property from further damage, forthwith |

93  separate the damaged and undamaged personal property, put
94  it in the best possible order, furnish a complete inventory of
95  the destroyed, damaged and undamaged property, showing in
96  detail quantities, costs, actual cash value and amount of loss
97  claimed; **and within sixty days after the loss, unless such time**
98  **is extended in writing by this Company, the insured shall render**
99  **to this Company a proof of loss,** signed and sworn to by the
100  insured, stating the knowledge and belief of the insured as to
101  the following: the time and origin of the loss, the interest of the
102  insured and of all others in the property, the actual cash value of
103  each item thereof and the amount of loss thereto, all encum-
104  brances thereon, all other contracts of insurance, whether valid
105  or not, covering any of said property, any changes in the title,
106  use, occupation, location, possession or exposures of said prop-
107  erty since the issuing of this policy, by whom and for what
108  purpose any building herein described and the several parts
109  thereof were occupied at the time of loss and whether or not it
110  then stood on leased ground, and shall furnish a copy of all the
111  descriptions and schedules in all policies and, if required, verified
112  plans and specifications of any building, fixtures or machinery
113  destroyed or damaged. The insured, as often as may be reason-
114  ably required, shall exhibit to any person designated by the
115  Company all that remains of any property herein described, and
116  submit to examinations under oath by any person named by this
117  Company, and subscribe the same; and, as often as may be
118  reasonably required, shall produce for examination all books of
119  accounts, bills, invoices and other vouchers, or certified copies
120  thereof if originals be lost, at such reasonable time and place as
121  may be designated by this Company or its representative, and
122  shall permit extracts and copies thereof to be made.

| | | |
|---|---|---|
| 123 | **Appraisal.** | In case the insured and this Company shall |
| 124 | | fail to agree as to the actual cash value or |

125  the amount of loss, then, on the written demand of either, each
126  shall select a competent and disinterested appraiser and notify
127  the other of the appraiser selected within twenty days of such
128  demand. The appraisers shall first select a competent and dis-
129  interested umpire; and failing for fifteen days to agree upon
130  such umpire, then, on request of the insured or this Company,
131  such umpire shall be selected by a judge of a court of record in
132  the state in which the property covered is located. The ap-
133  praisers shall then appraise the loss, stating separately actual
134  cash value and loss to each item; and, failing to agree, shall
135  submit their differences, only, to the umpire. An award in writ-
136  ing, so itemized, of any two when filed with this Company shall
137  determine the amount of actual cash value and loss. Each
138  appraiser shall be paid by the party selecting that appraiser and the ex-
139  penses of appraisal and umpire shall be paid by the parties
140  equally.

| | | |
|---|---|---|
| 141 | **Company's** | It shall be optional with this Company to |
| 142 | **options.** | take all, or any part, of the property at the |
| 143 | | agreed or appraised value, and also to re- |

144  pair, rebuild or replace the property destroyed or damaged with
145  other of like kind and quality within a reasonable time, on giv-

146 ing notice of its intention so to do within thirty days after the
147 receipt of the proof of loss herein required.
148 **Abandonment.** There can be no abandonment to this Com-
149 pany of any property.
150 **When loss** The amount of a loss for which this Company
151 **payable.** may be liable shall be payable sixty days
152 after proof of loss, as herein provided, is
153 received by this Company and ascertainment of the loss is made
154 either by agreement between the insured and this Company ex-
155 pressed in writing or by the filing with this Company of an
156 award as herein provided.
157 **Suit.** No suit or action on this policy for the recov-
158 ery of any claim shall be sustainable in any
159 court of law or equity unless all the requirements of this policy
160 shall have been complied with, and unless commenced within
161 two years next after inception of the loss.
162 **Subrogation.** This Company may require from the insured
163 an assignment of all right of recovery against
164 any party for loss to the extent that payment therefor is made
165 by this Company.

All other terms and conditions of the Policy remain the same.

# MARYLAND STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Maryland.

**A.** The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No suit, action or proceeding (hereinafter, the **action**) for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless you shall have fully complied with all the requirements of this Policy, nor unless the **action** is brought within three (3) years from the date on which the direct physical loss or damage occurred.

**B**. The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We do not provide coverage in any case of fraud by you, at any time, as it relates to this insurance. We also do not provide coverage if you or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**1.** This Policy;

**2.** The **covered property**;

**3.** Your interest in the **covered property**; or

**4.** A claim under this insurance.

**C.** The ECONOMIC AND TRADE SANCTIONS Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

We shall not be deemed to provide cover and we shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose us, our parent company or our ultimate controlling entity to any sanction, prohibition or restriction under the trade or economic sanctions, laws or regulations of the United States of America.

**D.** The following provision applies when this endorsement is attached to the Commercial Property Policy. Item **4.**, Coverage Territory of the Commercial Property Policy, Declarations is deleted in its entirety and replaced with the following:

**Item 4.   Coverage Territory:**

United States, its territories and possessions and Puerto Rico, including their respective coastal waters.  If any coverage is provided on a worldwide basis, such worldwide coverage shall not include any jurisdiction prohibited or restricted under the trade or economic sanctions, laws or regulations of the United States of America.  Losses are only covered within the **coverage territory**.

**E.**   The following provision applies when this endorsement is attached to the U.S. Global Commercial Property Policy.   Item **4.**, Coverage Territory of the U.S. Global Commercial Property Policy, Declarations is deleted in its entirety and replaced with the following:

   **Item 4.   Coverage Territory:**

   Worldwide, except for any jurisdiction prohibited or restricted under the trade or economic sanctions, laws or regulations of the United States of America.   Losses are only covered within the **coverage territory**.

All other terms and conditions of the Policy remain the same.

## COMMONWEATLH OF MASSACHUSETTS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the Commonwealth of Massachusetts.

**A.** The following provisions are added to the Policy:

    **1.** In spite of any provision of any general or special law:

        **a.** We will not pay for loss or damage to real property caused by any **covered cause of loss** if the amount of loss is $5,000 or more unless you first submit to us a certificate of municipal liens from the collector of taxes of the city or town where the property is located.

        **b.** We will pay to the city or town any amount outstanding on the certificate of municipal liens arising from the provisions of Massachusetts General Law Chapters 40, 59, 60, 80, 83 and 164, Sections 58B through 58F.

        The payment will not exceed the amount of loss payable under this Policy.

        We will send you and the mortgageholder proof of our payment to the city or town.

        **c.** The claim of the city or town will have priority over the claim of any mortgageholder, assignee, you or any other interested party, except where otherwise provided by the laws of the United States.

        **d.** We will not be liable to any city, town, mortgageholder, assignee, you or any other interested party for:

            **(1)** Amounts paid to a city or town; or

            **(2)** Amounts not paid to a city or town based upon a certificate showing that no municipal liens exist.

        **e.** Subsections **1.a., 1.b., 1.c.,** and **1.d.** above will not apply to any owner-occupied one- to four-family dwelling if the owner of the dwelling lived there when the claim for loss or damage arose.

    **2.** We will not pay any claim for:

        **a.** Loss, damage or destruction of $1,000 or more to a building or structure; or

        **b.** Loss, damage or destruction, of any amount, that causes a building or structure to become:

            **(1)** Dangerous to life or limb; or

            **(2)** Unused, uninhabited or abandoned and open to the weather;

        as provided under Massachusetts General Law, Section 6 of Chapter 143;

    without giving at least 10 days' written notice before such payment to:

        **c.** The Building Commissioner or the appointed Inspector of Buildings; and

        **d.** The Board of Health or the Board of Selectmen the city or town where the property is located.

    **3.** If at any time before our payment, the city or town notifies us by certified mail of its intent to begin proceedings designed to perfect a lien under Massachusetts General Law:

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. All rights reserved.

    **a.** Chapter 143, Section 3A or 9; or

    **b.** Chapter 111, Section 127B;

we will not pay while the proceedings are pending. The proceedings must be started within 30 days after we receive the notice.

Any lien perfected under the Massachusetts General Laws referred to in **3.a.** and **3.b.** above will extend to the city or town and may be enforced by it against the proceeds of this Policy.

**4.** We will not be liable to any city, town, mortgageholder, assignee, you or any other interested party for:

    **a.** Amounts paid to a city or town; or

    **b.** Amounts not paid to a city or town;

under Subsections **2.** and **3.** above.

**B.** The following is added to the Policy:

### STANDARD FIRE POLICY PROVISIONS

The provisions of the Standard Fire Policy are stated below. <u>State law requires that they be attached to all policies.</u>

Your policy contains Legal Action Against Us, Appraisal and Cancellation Provisions. Massachusetts law requires that the Suit, Appraisal and Cancellation Provisions of the Massachusetts Standard Fire Policy supersede any similar provisions contained in your policy. Therefore, all Legal Action Against Us, Appraisal and Cancellation Provisions contained in your policy are void. The Suit, Appraisal and Cancellation Provisions of the Massachusetts Standard Fire Policy shall apply instead.

In consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations, this company, for the term of years specified in the Declarations from inception date (At 12:01 A.M. Standard Time) to expiration date (At 12:01 A.M. Standard Time) at location of property involved, to an amount not exceeding the amount(s) specified in the Declarations, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss, but in no event for more than the interest of the insured, against all Loss By Fire, Lightning And By Removal From Premises Endangered By The Perils Insured Against In This Policy, Except As Hereinafter Provided, to the property described in the Declarations while located or contained as described in this policy or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

| | |
|---|---|
| **Concealment Fraud** | This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto. |
| **Uninsurable And Excepted Property** | This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named hereon in writing, bullion or manuscripts. |
| **Perils Not Included** | This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by **(a)** enemy attack by armed |

forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; **(b)** invasion; **(c)** insurrection; **(d)** rebellion; **(e)** revolution; **(f)** civil war; **(g)** usurped power; **(h)** order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy; **(i)** neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in the neighboring premises; **(j)** nor shall this company be liable for loss by theft.

| | |
|---|---|
| **Other Insurance** | Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto. |

**Conditions Suspending Or Restricting Insurance**    Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring **(a)** while the hazard is increased by any means within the control or knowledge of the insured; or **(b)** while the described premises, whether intended for occupancy by owner or tenant, are vacant or unoccupied beyond a period of sixty consecutive days, for residential premises of three units or less and thirty (30) consecutive days for all other premises, or **(c)** as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only.

**Other Perils Or Subjects**    Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

**Added Provisions**    The extent of the application of insurance under this policy and of the contribution to be made by this company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change.

**Waiver Provisions**    No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein.

**Cancellation Of Policy**    This policy shall be cancelled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this company by giving to the insured a five days written notice of cancellation, and to the mortgagee to whom this policy is payable twenty days written notice of cancellation except where the stated reason for cancellation is non-payment of premium where, in such instance, this policy may be cancelled at any time by this company by giving to the insured a ten days written notice of cancellation, and the mortgagee a twenty days written notice of cancellation, with or without tender of the excess paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand and shall state or be accompanied by a statement of the specific reason or reasons for such cancellation. After this policy has been in effect for sixty days, or after sixty days from any anniversary date, no notice of cancellation shall be effective unless it is based on the occurrence, after the effective date of the policy, of one or more of the following: **(1)** nonpayment of premium; **(2)** conviction of a crime arising out of acts increasing the hazard insured against; **(3)** discovery of fraud or material

Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.

misrepresentation by the insured in obtaining the policy; **(4)** discovery of willful or reckless acts or omissions by the insured increasing the hazard insured against; **(5)** physical changes in the property insured which result in the property becoming uninsurable; or **(6)** a determination by the commissioner that continuation of the policy would violate or place the insurer in violation of the law. Where the stated reason is nonpayment of premium, the insured may continue the coverage and avoid the effect of the cancellation by payment at any time prior to the effective date of cancellation.

**Mortgagee Interests And Obligations**   Notwithstanding any other provisions of this policy, if this policy shall be made payable to a mortgagee of the covered real estate, no act or default of any person other than such mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this policy, shall render this policy void as to such mortgagee nor affect such mortgagee's right to recover in case of loss on such real estate; provided, that the mortgagee shall on demand pay according to the established scale of rate for any increase of risk not paid for by the insured; and whenever this company shall be liable to a mortgagee for any sum for loss under this policy for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself, or with others, to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the company interested, upon such payment, the said mortgage together with the note and debt thereby secured.

**Pro Rata Liability**   This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved.

**Requirements In Case Loss Occurs**   The insured shall give immediate written notice to this company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed and damaged property, showing in detail the quantity, description, actual cash value and amount of loss claimed; and the insured shall forthwith render to this company a signed, sworn statement in proof of loss which sets forth to the best knowledge and belief of the insured the following: the time and cause of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupancy, location, possession or exposures of said property, since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and detailed estimates for repair of the damage. The insured, as often as may be reasonably required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

**When Loss Payable**   In case of any loss or damage, the company within thirty days after the insured shall have submitted a statement, as provided in the preceding clause, shall

either pay the amount for which it shall be liable, which amount if not agreed upon shall be ascertained by award of referees as hereinafter provided, or replace the property with other of the same kind and goodness, or it may, within fifteen days after such statement is submitted, notify the insured of its intention to rebuild or repair the premises, or any portion thereof separately covered by this policy, and shall thereupon enter upon said premises and proceed to rebuild or repair the same with reasonable expedition. It is moreover understood that there can be no abandonment of the property described to the company, and that the company shall not in any case be liable for more than the sum insured, with interest thereon from the time when the loss shall become payable, as provided above. The company shall be liable for the payment of interest to the insured at a rate of one percent over the prime interest rate on the agreed figure commencing thirty days after the date an executed proof of loss for such figure is received by the company, said interest to continue so long as the claim remains unpaid.

**Appraisal**      In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen, and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss; but no person shall be chosen or act as a referee, against the objection of either party, who has acted in a like capacity within four months.

**Suit**      No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties. If suit or action upon this policy is enjoined or abated, suit or action may be commenced at any time within one year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.

**Subrogation**      This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company.

All other terms and conditions of the Policy remain the same.

# MICHIGAN STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Michigan.

**A.** The following Disclaimer is added to the Policy:

**This policy is exempt from the filing requirements of section 2236 of the insurance code of 1956, 1956 PA 218, MCL 500.2236.**

**B.** The following is added to the:

**1.** SETTLEMENT OF CLAIMS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section; and

**2.** MORTGAGEHOLDERS Subsection of the GENERAL CONDITIONS Section:

If a municipality has elected to apply the provisions of 1998 Michigan Public Act 217, a part of our payment for fire, explosion, **vandalism and malicious mischief**, **windstorm or hail**, or **riot, strike or civil commotion** loss or damage to your covered real property in that municipality will be withheld if the loss or damage is subject to the provisions of the Act. The withheld amount will be paid either to:

**(a)** The municipality;

**(b)** You and the mortgageholder, if any; or

**(c)** With your consent, the licensed contractor hired by you to perform repair, replacement, or removal services on the lost or damaged real property;

According to the provisions of Public Act 217.  We will notify you, any mortgageholder and the municipality of any loss subject to the provisions of Public Act 217.

**C.** The following is added to the REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

**1.** Notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.

**2.** Failure to:

**(a)** Give us prompt notice of an accident, claim or suit; or

**(b)** Immediately send us copies of demands, notices, summonses or legal papers received in connection with a claim or suit;

Shall not invalidate a claim made by you if it shall be shown that it was not reasonably possible to give us prompt notice or to immediately send us copies, and that you gave us notice and sent us copies as soon as was reasonably possible.

**D.** The following is added to the SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

The time for commencing an action against us is tolled from the time you notify us of the loss or damage until we formally deny liability for the claim.

**113132 (1/17)**   Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.   **Page 1 of 2**

**E.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and independent appraiser. The two appraisers will select a competent and impartial umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

All other terms and conditions of the Policy remain the same.

# MINNESOTA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Minnesota.

**A.** The following is added to the SETTLEMENT OF CLAIMS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section and supersedes any provision to the contrary:

Provided you have complied with all the terms of this Policy, we will pay for covered loss or damage within 5 business days after we have received the proof of loss and:

**1.** We have reached agreement with you or, in the event we use an independent claims adjuster, we have received the agreement and you have satisfied the conditions of the agreement, if any; or

**2.** An appraisal award has been made.

**B.** The following is added to: (1) Subsection **A.1.** of the VALUATION Section; and (2) Subsections **A.1** and **A.2.** of the VALUATION Section of the Real Estate Segment Endorsement if attached to this Policy:

Notwithstanding the foregoing, we agree that in the event of a total loss, the amount listed on the most recent Statement of Locations and Values for a building which is **covered property** represents its value and we shall pay such amount.

**C.** The REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is amended by replacing subsection **7.** with the following:

Allow us to examine and audit your books and records as they relate to this Policy at any time during the policy period and up to one year afterward.

**D.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following with respect to loss or damage caused by fire:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We do not provide coverage to the insured who has:

**1.** Before a loss, willfully; or

**2.** After a loss, willfully and with intent to defraud;

Concealed or misrepresented any material fact or circumstances concerning:

**(a)** This Policy;

**(b)** The **covered property**;

**(c)** That insured's interest in the **covered property**; or

**(d)** A claim under this Policy.

**E.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following with respect to loss or damage caused by a **covered cause of loss** other than fire:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage if any insured has:

**1.** Before a loss, willfully; or

**2.** After a loss, willfully and with intent to defraud;

Concealed or misrepresented any material fact or circumstances concerning:

**(a)** This Policy;

**(b)** The **covered property**;

**(c)** That insured's interest in the **covered property**; or

**(d)** A claim under this Policy.

**F.** The following is added to the Policy:

With respect to the perils of fire and lightning, references in the Policy to direct physical loss or damage are construed to mean all loss or damage caused by fire and any damage caused by lightning.

**G.** In the REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section, the requirement to notify us can be satisfied by notifying our agent, subject to all other terms of such requirement. Further, if a claim is made or suit is brought against you, the requirement to provide us with prompt notice of the claim or suit can be satisfied by written or oral notification.

**H.** Subsection **10.** of the REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**10.** After we inform an insured:

**a.** Of the right to counsel; and

**b.** That an insured's answers may be used against the insured in later civil or criminal proceedings;

we may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim. In the event of an examination, an insured's answers must be signed;

**I.** The following is added to the MORTGAGEHOLDERS Subsection of the GENERAL CONDITIONS Section:

We will notify the mortgageholder of changes to this Policy that result in a substantial reduction of coverage to the mortgaged property.

**J.** Subsection **3.** of the MORTGAGEHOLDERS Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**3.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Policy, any such mortgageholder will nevertheless have the right to receive loss payment if the mortgageholder:

**a.** Pays any premium due under this Policy at our request if you have failed to do so;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.

**b.** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so.

All of the terms of this Policy will then apply directly to the mortgageholder.

**K.** The following applies with respect to any deductible in this Policy, including a deductible provided by endorsement for a particular cause of loss or coverage:

The deductible will not apply to the total loss of a building.

**L.** The SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUBROGATION**

**1.** If any person or organization to or for whom we make payment under this Policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. However, our rights do not apply against:

    **a.** An insured; or

    **b.** Any person or organization insured under another policy which was issued by us and responds to the same loss;

Provided the loss was not intentionally caused by such insureds.

**2.** You may waive your rights against another party in writing:

    **a.** Prior to a covered loss.

    **b.** After a covered loss, only if, at the time of loss, that party is one of the following:

        **(1)** Someone insured by this insurance, unless the loss was caused intentionally by such insured;

        **(2)** A business firm:

            **(a)** Owned or controlled by you; or

            **(b)** That owns or controls you; or

        **(3)** Your tenant.

This will not restrict your insurance.

**3.** Any recovery by us as a result of subrogation proceedings arising out of an **occurrence**, after expenses, including our legal fees, incurred in such subrogation proceedings are deducted, shall accrue to you in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

**4.** You will cooperate with us and, upon our request and expense will:

    **a.** Attend hearings and trials;

    **b.** Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.

**M.** In the APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section, reference to a court having jurisdiction means a court of record in the state where the **covered location** at which the loss occurred is located.

**N.** The following Notice is added to the Policy:

**NOTICE CONCERNING POLICYHOLDER RIGHTS IN AN INSOLVENCY UNDER THE MINNESOTA INSURANCE GUARANTY ASSOCIATION LAW**

The financial strength of your insurer is one of the most important things for you to consider when determining from whom to purchase a property or liability insurance policy.  It is your best assurance that you will receive the protection for which you purchased the policy.  If your insurer becomes insolvent, you may have protection from the Minnesota Insurance Guaranty Association as described below but to the extent that your policy is not protected by the Minnesota Insurance Guaranty Association or if it exceeds the guaranty association's limits, you will only have the assets, if any, of the insolvent insurer to satisfy your claim.

Residents of Minnesota who purchase property and casualty or liability insurance from insurance companies licensed to do business in Minnesota are protected, SUBJECT TO LIMITS AND EXCLUSIONS, in the event the insurer becomes insolvent.  This protection is provided by the Minnesota Insurance Guaranty Association.

Minnesota Insurance Guaranty Association
7600 Parklawn Avenue Suite 460
Edina, Minnesota 55435
Phone: (952) 831-1908
Fax: (952) 831-1973

The maximum account that the Minnesota Insurance Guaranty Association will pay in regard to a claim under all policies issued by the same insurer is limited to $300,000.  This limit does not apply to workers' compensation insurance.  Protection by the guaranty association is subject to other substantial limitations and exclusions.  If your claim exceeds the guaranty association's limits, you may still recover a part or all of that amount from the proceeds from the liquidation of the insolvent insurer, if any exist.  Funds to pay claims may not be immediately available.  The guaranty association assesses insurers licensed to sell property and casualty or liability insurance in Minnesota after the insolvency occurs.  Claims are paid from the assessment.

THE PROTECTION PROVIDED BY THE GUARANTY ASSOCIATION IS NOT A SUBSTITUTE FOR USING CARE IN SELECTING INSURANCE COMPANIES THAT ARE WELL MANAGED AND FINANCIALLY STABLE.  IN SELECTING AN INSURANCE COMPANY OR POLICY, YOU SHOULD NOT RELY ON PROTECTION BY THE GUARANTY ASSOCIATION.

THIS NOTICE IS REQUIRED BY MINNESOTA STATE LAW TO ADVISE POLICYHOLDERS OF PROPERTY AND CASUALTY INSURANCE POLICIES OF THEIR RIGHTS IN THE EVENT THEIR INSURANCE CARRIER BECOMES INSOLVENT.  THIS NOTICE IN NO WAY IMPLIES THAT THE COMPANY CURRENTLY HAS ANY TYPE OF FINANCIAL PROBLEMS.  ALL PROPERTY AND CASUALTY INSURANCE POLICIES ARE REQUIRED TO PROVIDE THIS NOTICE.

All other terms and conditions of the Policy remain the same.

## MISSISSIPPI STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Mississippi.

The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No one may bring a legal action against us under this Policy unless:

**1.** There has been full compliance with all of the terms of this Policy; and

**2.** The action is brought within 3 years after the date on which the direct physical loss or damage occurred.

All other terms and conditions of the Policy remain the same.

## MISSOURI STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Missouri.

**A.** If partial loss or damage to **covered property** is caused by or results from fire, the following is added to the PARTIAL PAYMENT OF LOSS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

In the event of partial loss or damage caused by or resulting from fire, and covered by this Policy, at your option, we will either:

**1.** Pay you an amount of money equal to the damage done; or

**2.** Repair the damage, so that the property is in as good a condition as before the fire.

But we will not pay more than the **Policy Limit**.

**B.** The SETTLEMENT OF CLAIMS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SETTLEMENT OF CLAIMS**

**1.** In the event of a covered loss, we will give you notice, within 15 working days after we receive a properly executed proof of loss, that we:

**a.** Accept your claim;

**b.** Deny your claim; or

**c.** Need more time to determine whether your claim should be accepted or denied.

If we deny your claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

If we need more time to determine whether your claim should be accepted or denied, the written notice will state the reason(s) why more time is needed.

If we have not completed our investigation, we will notify you again in writing, within 45 days after the date the initial notice is sent informing you that we need more time to determine whether your claim should be accepted or denied and thereafter every 45 days. The written notice shall state why more time is needed to investigate your claim.

**2.** The amount of loss for which we may be liable shall be payable within 30 days after proof of loss, as herein required, is received and agreed to by us or the amount of loss is determined by appraisal in accordance with the APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section.

We shall have the option to take all, or any part of the property at the agreed or appraised value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, upon providing you with notice of our intention to do so within 60 days after our receipt of the proof of loss herein required.

**C.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**113135 (1/17)**   Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.   **Page 1 of 5**

**APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of the written demand for appraisal. The two appraisers will select an umpire. If they cannot agree upon an umpire within 15 days, we or you may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. The umpire shall make an award within 30 days after the umpire receives the appraisers' submissions of their differences. A decision agreed to by any two will be binding.

Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

D. The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No one may bring a legal action against us under this Policy unless:

1. There has been full compliance with all of the terms of this Policy; and

2. The action is brought within 10 years after the date on which the direct physical loss or damage occurred.

E. **MISSOURI PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION COVERAGE LIMITATIONS**

1. Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (to be referred to as the Act), if we are a member of the Missouri Property and Casualty Insurance Guaranty Association (to be referred to as the Association), the Association will pay claims covered under the Act if we become insolvent.

2. The Act contains various exclusions, conditions and limitations that govern a claimant's eligibility to collect payment from the Association and affect the amount of any payment. The following limitations apply subject to all other provisions of the Act:

   a. Claims covered by the Association do not include a claim by or against an insured of an insolvent insurer, if the insured has a net worth of more than $25 million on the later of the end of the insured's most recent fiscal year or the December thirty-first of the year next preceding the date the insurer becomes insolvent; provided that an insured's net worth on such date shall be deemed to include the aggregate net worth of the insured and all of its affiliates as calculated on a consolidated basis.

   b. Payments made by the Association for covered claims will include only that amount of each claim which is less than $300,000.

   However, the Association will not:

   (1) Pay an amount in excess of the applicable limit of insurance of the policy from which a claim arises; or

**(2)** Return to an insured any unearned premium in excess of $25,000.

These limitations have no effect on the coverage we will provide under this policy.

**F.** The following exclusion and related provisions are added to the Policy:

**1.** We will not pay for loss or damage arising out of any act an insured commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

**2.** However, this exclusion will not apply to deny coverage to an innocent co-insured who did not cooperate in or contribute to the creation of the loss, provided the loss is otherwise covered under this Policy and the loss arose out of domestic violence. Such coverage will be provided only if the innocent co-insured files a police report and completes a sworn affidavit indicating both:

**a.** The cause of the loss; and

**b.** A pledge to cooperate in any criminal prosecution of the person committing the act causing the loss.

**3.** If we pay a claim pursuant to Subsection **F.2.,** our payment to the innocent co-insured will be limited to that insured's ownership interest in the property as reduced by any payment to a mortgagee or other secured interest; however, we shall not be required to make any subsequent payment for any loss for which the innocent co-insured has received payment. In no event will we pay more than the **Policy Limit**.

**G.** The following is added to the SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

If we pay an innocent co-insured for loss arising out of an act of domestic violence by another insured, the rights of the innocent co-insured to recover damages from the abuser are transferred to us to the extent of our payment. Following the loss, the innocent co-insured may not waive such rights to recover against the abuser.

**H.** The following is added to the ASSIGNMENT Subsection of the GENERAL CONDITIONS Section:

**1. Transfer By Beneficiary Deed**

If you convey real property insured under this policy to a person (known as a grantee beneficiary) designated under a beneficiary deed, which has been properly recorded prior to your death, that person will have your rights and duties with respect to the insured real property, but only for the period from the date of your death until the first of the following occurs:

**a.** A period of 30 days from the date of your death;

**b.** The date that alternative coverage is obtained on your property; or

**c.** The end of the Policy Period as shown in the Declarations.

**2. Transfer By Other Means Following Death**

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties, but only with respect to that property. Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

**I. MISSOURI – CALCULATION OF ADDITIONAL PREMIUM**

1. If changes are made to this Policy after the beginning of the current policy period, and such changes require an additional premium, the additional premium will be pro rated to recognize the actual period of coverage.

2. **Changes to a Covered Location**

   If changes are made to a location that was covered at the beginning of the current policy period, and those changes require additional premium (e.g., an increase in the **Policy Limit**), we will calculate the additional premium using the rates and rules which were in effect on the effective date of the current policy period.

3. **Additional Locations**

   a. If a location(s) is added to the Policy after the beginning of the current policy period, we will calculate the premium for that location(s), including all coverages, options and causes of loss at that location(s), using the rates and rules which are in effect when the location(s) is added.

   b. If changes are subsequently made to a location(s) described in **3.a.** above, and those changes require additional premium, we will calculate the additional premium using the rates and rules which were in effect when the location(s) was added.

4. Any additional premium calculated in accordance with this endorsement will be charged in full, whether or not we applied a policy writing minimum premium in developing the premium that was charged at the beginning of the current policy period.

**J.  Pollutants or Contaminants**

In this Policy, any exclusion, limitation or other provision relating to **pollutants or contaminants**, or any amendment to or replacement of such exclusions, limitations or other provisions, applies whether or not the **pollutant or contaminant** has any function in or on your business, operations, premises, site or location.

**K.  Amendment of Definition of Pollutants or Contaminants**

**Schedule**

| | |
|---|---|
| **Specifically identified substances or materials** | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

In this Policy, the definition of **pollutants or contaminants** is replaced by the following:

**Pollutants or contaminants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, and any substances or materials identified in the Schedule, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances. Waste includes materials to be recycled, reconditioned or reclaimed. **Pollutants or contaminants** do not include **fungus, mold or spore.**

The definition of **pollutants or contaminants** applies whether or not such **pollutant or contaminant** has any function in or on your business, operations, premises, site or location.

**L.  If you have questions about your policy, or questions about claims relating to your policy, please contact us at the following:**

**AIG**

**175 Water Street**

**New York, NY 10038**

**(212) 458-5000**

**M.** The LAND AND WATER CLEAN-UP Additional Coverage of the ADDITIONAL COVERAGES Section is deleted in its entirety and replaced with the following:

**LAND AND WATER CLEAN-UP**

We will pay reasonable and necessary expenses incurred by you to remove, dispose of, or clean-up the actual presence of **pollutants or contaminants** from land or water at a **covered location** when such land or water is contaminated or polluted due to a **covered cause of loss** at a **covered location**. This Additional Coverage does not apply unless such expenses are reported to us within 180 days after the date of such **covered cause of loss**.  However, no claim will be denied based upon your failure to provide notice within such specified time, unless failure to do so operates to prejudice our rights, as per Missouri Code of State Regulations.

**N.** The REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is amended by deleting Subsection **12.** and replacing it with the following:

**12.** Provide us with a proof of loss, signed and sworn to by you as soon as practicable, but in no event more than 90 days after a loss, stating your knowledge and belief as to the following:

    **a.**  The time and origin of the loss;

    **b.**  Your interest and the interest of all others in the property;

    **c.**  The value of each item thereof determined in accordance with the VALUATION Section and the amount of loss thereto and all encumbrances thereon;

    **d.**  All other contracts of insurance, whether collectible or not, covering any of the **covered property**; and

    **e.**  Any changes in the title, use, occupancy, location, possession or exposures of the **covered property** subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss, whether or not it then stood on leased ground.

No claim will be denied based upon your failure to provide a written proof of loss within such time following a loss, unless this failure operates to prejudice our rights.

All other terms and conditions of the Policy remain the same.

# MONTANA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Montana.

**A.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for loss or damage in a case of:

**1.** Concealment or misrepresentation of a material fact; or

**2.** Fraud;

Committed by you or any other insured, whether before or after the loss and relating to coverage of the loss under this Policy.

We will not pay for any loss or damage in any case if:

**1.** Concealment or misrepresentation of a material fact; or

**2.** Fraud;

Is committed by you or any other insured in the application for this Policy.

**B.** The following Condition is added:

**CONFORMITY WITH MONTANA STATUTES**

The provisions of this Policy conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which you reside on or after the effective date of this Policy.

Any provision of this Policy (including endorsements which modify the Policy) that does not conform to the minimum requirements of a Montana statute is amended to conform to such statute.

**C.** If the Education Segment Endorsement, Healthcare Segment Endorsement, or Real Estate Segment Endorsement is attached to this Policy, then the last paragraph of the DEMOLITION AND INCREASED COST OF CONSTRUCTION Additional Coverage in such endorsement is deleted in its entirety and replaced by the following:

You may elect not to apply the **latest code** to any or all property for which coverage is provided under this Additional Coverage.  In such case, we will adjust the claim in accordance with the other applicable provisions of this Policy.

   Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.

**D.**  If the Manufacturing Segment Endorsement, Manufacturing Segment Endorsement (Global Version), Real Estate Segment Endorsement, Retail Segment Endorsement or Retail Segment Endorsement (Global Version) is attached to this Policy, then Subsection **a.** of the WAREHOUSEMAN LEGAL LIABILITY Additional Coverage in such endorsement is deleted in its entirety and replaced by the following:

    **a.**  Defending you against that part of any suit alleging such direct physical loss or damage to **bailed property**; but we shall have the right to select defense counsel to defend you and to settle any claim or suit as we deem expedient;

All other terms and conditions of the Policy remain the same.

## NEBRASKA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Nebraska.

**A.** The following is added to: (1) Subsection **A.1.** of the VALUATION Section; and (2) Subsections **A.1.** and **A.2.** of the VALUATION Section of the Real Estate Segment Endorsement if attached to this Policy:

Notwithstanding the foregoing, if a building is wholly destroyed by fire, tornado, **windstorm or hail**, lightning or explosion, without criminal fault on the part of you or your assignee, then the amount attributable to such building as shown on the most recent Statement of Locations and Values shall be taken conclusively to be the true value of such building and we shall pay such amount.

**B.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**MISREPRESENTATION OR BREACH OF CONDITION OR WARRANTY**

 **1.** A misrepresentation or warranty made by you or on your behalf in the negotiation of or application for this Policy will void this Policy if:

 **a.** It is material;

 **b.** It is made with the intent to deceive;

 **c.** We rely on it; and

 **d.** We are deceived to our injury.

 **2.** A breach of warranty or condition will void the Policy if such breach exists at the time of loss and contributes to the loss.

**C.** The following exclusion is added to the Policy:

We will not pay for loss or damage arising out of any act committed:

 **1.** By or at the direction of any insured; and

 **2.** With the intent to cause a loss.

However, this exclusion does not apply to deny coverage to an innocent insured to the extent of that insured's legal interest (but not exceeding the applicable **Policy Limit**) in **covered property** that has sustained damage if the damage arises out of **abuse** of the innocent insured by a current or former family member or household member and is otherwise covered under this Policy. We may apply reasonable standards of proof to claims for such damage.

**D.** The following is added to the SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

If we pay an innocent coinsured subject of **abuse** for loss arising out of **abuse** by another insured who is a current or former family member or household member, the rights of the innocent coinsured to recover damages from the abuser are transferred to us to the extent of our payment. The innocent coinsured may not waive such rights to recover against the abuser.

**E.** In Subsections **C.** and **D.** above, **abuse** means attempting to cause or intentionally, knowingly, or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another person, including a minor child.

**F.** The following is added to the SETTLEMENT OF CLAIMS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section and supersedes any provision to the contrary:

We will give you notice, within 15 days after we receive settlement information or a properly executed proof of loss, that we:

**1.** Accept your claim;

**2.** Deny your claim; or

**3.** Need more time to investigate your claim.

If we deny your claim, the denial will be given to you in writing.

If we need more time to investigate your claim, we will provide an explanation for our need for more time. We will continue to notify you again in writing, at least every 30 days, of the status of the investigation and of the continued time needed for the investigation.

However, if the claim is in litigation, the requirements pertaining to notice of the status of our investigation do not apply.

**G.** The following is added to any provision which uses the term "actual cash value":

In our determination of the "actual cash value" of **covered property** at the time of loss or damage, we will take into account factors such as depreciation, deterioration and obsolescence.

**H.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, both parties may agree in writing to an appraisal of the loss and to be bound by the results of that appraisal. If both parties so agree, then each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

All other terms and conditions of the Policy remain the same.

# NEVADA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Nevada.

The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

**1.** Concealment or misrepresentation of a material fact; or

**2.** Fraud;

Committed by an insured at any time and relating to a claim under this Policy.


All other terms and conditions of the Policy remain the same.

**NEW HAMPSHIRE STATE AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of New Hampshire.

**A.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We do not provide coverage to one or more insureds who, at any time:

**1.** Intentionally concealed or misrepresented a material fact;

**2.** Engaged in fraudulent conduct; or

**3.** Made a false statement;

Relating to this Policy.

**B.** The INCREASE IN HAZARD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**INCREASE IN HAZARD**

You will notify us of any material increase in hazard at a **covered location** over which you have control or knowledge.  Any material increase in hazard at one or more **covered locations** will not affect coverage at other **covered locations** where, at the time of loss or damage, the increase in hazard does not exist.

**C.** The INSPECTION Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**INSPECTION**

**1.** We have the right to:
   **a.** Make inspections and surveys at any time;
   **b.** Give you reports on the conditions we find; and
   **c.** Recommend changes.

**2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public and we do not warrant that conditions:
   **a.** Are safe or healthful; or
   **b.** Comply with laws, regulations, codes or standards.

**3.** Subsections **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Subsection **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**D.** The **Named storm** definition in the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted and replaced with:

**Named storm**, which means a storm that, at any time, has been declared by the United States National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone or Tropical Storm, including any status or designation change with respect to such storm, except if such storm has been downgraded from a Tropical Storm to a lesser status or designation.

**E.** The provisions of the Standard Fire Policy are stated below. **State law requires that they be attached to all policies.** If any conditions of this form are construed to be more liberal than any other policy conditions relating to the perils of fire, lightning or removal, the conditions of this form will apply.

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO, AND OF THE PREMIUM SPECIFIED in the Declarations or in endorsements made a part hereof, this Company, for the term of *years specified in the Declarations* from *inception date shown in the Declarations* At 12:01 A.M. (Midnight, Standard Time) to *expiration date shown in the Declarations* At 12:01 A.M. (Midnight, Standard Time) at location of property involved, to an amount not exceeding the limit of liability specified in the Declarations, does insure *the Insured named in the Declarations* and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the Declarations while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

| | | |
|---|---|---|
| 1 | **Concealment,** | Coverage under this policy shall be void |
| 2 | **fraud.** | for the insured who, whether before or after |
| 3 | | a loss, has intentionally concealed or |
| 4 | misrepresented any material fact or circumstance; engaged in | |
| 5 | fraudulent conduct; or made false statements relating to this insurance. | |
| 6 | **Notice requirements.** | In the event this Company eliminates or |
| 7 | | reduces coverages, conditions or definitions |
| 8 | | in this policy, other than at the request of the |
| 9 | insured, this Company must attach to the policy a printed notice explaining | |
| 10 | clearly what coverages, conditions or definitions have been eliminated or | |
| 11 | reduced. If explanations of such reduced or eliminated coverages are not | |
| 12 | contained in the printed notice attached to its policies, then such coverages, | |
| 13 | conditions or definitions shall remain in full force and effect without such | |
| 14 | reductions or eliminations. These notice requirements apply only when this | |
| 15 | policy is renewed or endorsed with the same Company. | |
| 16 | **Uninsurable** | This policy shall not cover accounts, bills, |

| | |
|---|---|
| 17 **and** | currency, deeds, evidences of debt, money or |
| 18 **excepted property.** | securities; nor, unless specifically named |
| 19 | hereon in writing, bullion or manuscripts. |
| 20 **Perils not** | This Company shall not be liable for loss by |
| 21 **included.** | fire or other perils insured against in this |
| 22 | policy caused, directly or indirectly, by: (a) |

23 enemy attack by armed forces, including action taken by mili-
24 tary, naval or air forces in resisting an actual or an immediately
25 impending enemy attack; (b) invasion; (c) insurrection; (d)
26 rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) terrorism; (i)
27 order of any civil authority except acts of destruction at the time
28 of and for the purpose of preventing the spread of fire, provided
29 that such fire did not originate from any of the perils excluded
30 by this policy; (j) neglect of the insured to use all reasonable
31 means to save and preserve the property at and after a loss, or
32 when the property is endangered by fire in neighboring prem-
33 ises; (k) nor shall this Company be liable for loss by theft.

| | |
|---|---|
| 34 **Other Insurance.** | Other insurance may be prohibited or the |
| 35 | amount of insurance may be limited by en- |

36 dorsement attached hereto.
37 **Conditions suspending or restricting insurance. Unless other-**
38 **wise provided in writing added hereto this Company shall not**
39 **be liable for loss occurring**
40 (a) while the hazard is increased by any means within the con-
41 trol or knowledge of the insured; or
42 (b) while a described building, whether intended for occupancy
43 by owner or tenant, is vacant or unoccupied beyond a period of
44 sixty consecutive days; or
45 (c) as a result of explosion or riot, unless fire ensues, and in
46 that event for loss by fire only.

| | |
|---|---|
| 47 **Other perils** | Any other peril to be insured against or sub- |
| 48 **or subjects.** | ject of insurance to be covered in this policy |
| 49 | shall be by endorsement in writing hereon or |

50 added hereto.

| | |
|---|---|
| 51 **Added provisions.** | The extent of the application of insurance |
| 52 | under this policy and of the contribution to |

53 be made by this Company in case of loss, and any other pro-
54 vision or agreement not inconsistent with the provisions of this
55 policy, may be provided for in writing added hereto, but no pro-
56 vision may be waived except such as by the terms of this policy
57 is subject to change.

| | |
|---|---|
| 58 **Waiver** | No permission affecting this insurance shall |
| 59 **provisions.** | exist, or waiver of any provision be valid, |
| 60 | unless granted herein or expressed in writing |

61 added hereto. No provision, stipulation or forfeiture shall be
62 held to be waived by any requirement or proceeding on the part
63 of this Company relating to appraisal or to any examination
64 provided for herein.

| | |
|---|---|
| 65 **Cancellation** | This policy shall be cancelled at any time |
| 66 **of policy.** | at the request of the insured, in which case |
| 67 | this Company shall, upon demand and sur- |

68 render of this policy, refund the excess of paid premium above
69 the customary short rates for the expired time. This pol-
70 icy may be cancelled at any time by this Company by giving
71 to the insured a five days' written notice of cancellation with
72 or without tender of the excess of paid premium above the pro
73 rata premium for the expired time, which excess, if not ten-
74 dered, shall be refunded on demand. Notice of cancellation shall
75 state that excess premium (if not tendered) will be re-
76 funded on demand.

| | | |
|---|---|---|
| 77 | **Mortgagee** | If loss hereunder is made payable, in whole |
| 78 | **interests and** | or in part, to a designated mortgagee not |
| 79 | **obligations.** | named herein as the insured, such interest in |
| 80 | | this policy may be cancelled by giving to such |
| 81 | | mortgagee a ten days' written notice of can- |
| 82 | cellation. | |

83 If the insured fails to render proof of loss such mortgagee, upon
84 notice, shall render proof of loss in the form herein specified
85 within sixty (60) days thereafter and shall be subject to the pro-
86 visions hereof relating to appraisal and time of payment and of
87 bringing suit. If this Company shall claim that no liability ex-
88 isted as to the mortgagor or owner, it shall, to the extent of pay-
89 ment of loss to the mortgagee, be subrogated to all the mort-
90 gagee's rights of recovery, but without impairing mortgagee's
91 right to sue; or it may pay off the mortgage debt and require
92 an assignment thereof and of the mortgage. Other provisions
93 relating to the interests and obligations of such mortgagee may
94 be added hereto by agreement in writing.

| | | |
|---|---|---|
| 95 | **Pro rata liability.** | This Company shall not be liable for a greater |
| 96 | | proportion of any loss than the amount |
| 97 | hereby insured shall bear to the whole insurance covering the | |
| 98 | property against the peril involved, whether collectible or not. | |
| 99 | **Requirements in** | The insured shall give immediate written |
| 100 | **case loss occurs.** | notice to this Company of any loss, protect |
| 101 | | the property from further damage, forthwith |

102 separate the damaged and undamaged personal property, put
103 it in the best possible order, furnish a complete inventory of
104 the destroyed, damaged and undamaged property, showing in
105 detail quantities, costs, actual cash value and amount of loss
106 claimed; **and within sixty days after the loss, unless such time**
107 **is extended in writing by this Company, the insured shall render**
108 **to this Company a proof of loss,** signed and sworn to by the
109 insured, stating the knowledge and belief of the insured as to
110 the following: the time and origin of the loss, the interest of the
111 insured and of all others in the property, the actual cash value of
112 each item thereof and the amount of loss thereto, all encum-
113 brances thereon, all other contracts of insurance, whether valid
114 or not, covering any of said property, any changes in the title,
115 use, occupation, location, possession or exposures of said prop-
116 erty since the issuing of this policy, by whom and for what
117 purpose any building herein described and the several parts
118 thereof were occupied at the time of loss and whether or not it
119 then stood on leased ground, and shall furnish a copy of all the
120 descriptions and schedules in all policies and, if required, verified
121 plans and specifications of any building, fixtures or machinery
122 destroyed or damaged. The insured, as often as may be reason-
123 ably required, shall exhibit to any person designated by the
124 Company all that remains of any property herein described, and
125 submit to examinations under oath by any person named by this
126 Company, and subscribe the same; and, as often as may be
127 reasonably required, shall produce for examination all books of
128 accounts, bills, invoices and other vouchers, or certified copies
129 thereof if originals be lost, at such reasonable time and place as
130 may be designated by this Company or its representative, and
131 shall permit extracts and copies thereof to be made.

| | | |
|---|---|---|
| 132 | **Appraisal.** | In case the insured and this Company shall |
| 133 | | fail to agree as to the actual cash value or |
| 134 | the amount of loss, then, on the written demand of either, each | |
| 135 | shall select a competent and disinterested appraiser and notify | |
| 136 | the other of the appraiser selected within twenty days of such | |

137 demand. The appraisers shall first select a competent and dis-
138 interested umpire; and failing for fifteen days to agree upon
139 such umpire, then, on request of the insured or this Company,
140 such umpire shall be selected by a judge of a court of record in
141 the state in which the property covered is located. The ap-
142 praisers shall then appraise the loss, stating separately actual
143 cash value and loss to each item; and, failing to agree, shall
144 submit their differences, only, to the umpire. An award in writ-
145 ing, so itemized, of any two when filed with this Company shall
146 determine the amount of actual cash value and loss. Each
147 appraiser shall be paid by the party selecting him and the ex-
148 penses of appraisal and umpire shall be paid by the parties
149 equally.

150 **Company's**                It shall be optional with this Company to
151 **options.**                 take all, or any part, of the property at the
152                              agreed or appraised value, and also to re-
153 pair, rebuild or replace the property destroyed or damaged with
154 other of like kind and quality within a reasonable time, on giv-
155 ing notice of its intention so to do within thirty days after the
156 receipt of the proof of loss herein required.

157 **Abandonment.**            There can be no abandonment to this Com-
158                             pany of any property.

159 **When loss**               The amount of a loss for which this Company
160 **payable.**                may be liable shall be payable sixty days
161                             after proof of loss, as herein provided, is
162 received by this Company and ascertainment of the loss is made
163 either by agreement between the insured and this Company ex-
164 pressed in writing or by the filing with this Company of an
165 award as herein provided.

166 **Suit.**                   No suit or action on this policy for the recov-
167                             ery of any claim shall be sustainable in any
168 court of law or equity unless all the requirements of this policy
169 shall have been complied with, and unless commenced within
170 twelve months next after inception of the loss.

171 **Subrogation.**            This Company may require from the insured
172                             an assignment of all right of recovery against
173 any party for loss to the extent that payment therefor is made
174 by this Company.

All other terms and conditions of the Policy remain the same.

## NEW JERSEY STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of New Jersey.

**A.** The following exclusion and related provisions are added to the Policy:

    **1.** We will not pay for loss or damage arising out of any act committed:

        **a.** By or at the direction of any insured; and

        **b.** With the intent to cause a loss.

    **2.** However, this exclusion will not apply to deny payment to a co-insured who did not cooperate in or contribute to the creation of the loss if the loss arose out of domestic violence.

    **3.** If we pay a claim pursuant to Subsection **A.2.** above**,** our payment to the insured is limited to that insured's insurable interest in the property. In no event will we pay more than the **Policy Limit**.

To the extent that the CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section conflicts with the provisions of Subsection **A.2.** above, the provisions of **A.2.** above will apply.

**B.** The following is added to the SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

If we pay a co-insured for loss arising out of an act of domestic violence by another insured, the rights of the co-insured, who did not cooperate in or contribute to the creation of the loss, to recover damages from the perpetrator of domestic violence are transferred to us to the extent of our payment. Following the loss, the co-insured who did not cooperate in or contribute to the loss may not waive such rights to recover against the perpetrator of domestic violence.

All other terms and conditions of the Policy remain the same.

## NEW MEXICO STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of New Mexico.

**A.** The following exclusion and related provisions are added to the Policy:

**1.** We will not pay for loss or damage arising out of any act committed:

**a.** By or at the direction of any insured; and

**b.** With the intent to cause a loss.

**2.** However, this exclusion will not apply to deny coverage to an innocent coinsured victim of **domestic abuse** who did not cooperate in or contribute to the creation of the loss provided that the loss is an otherwise covered property loss and is proximately related to and in furtherance of **domestic abuse**.

**3.** If we pay a claim pursuant to Subsection **A.2.** of this endorsement, our payment to the insured is limited to the extent of that person's interest in the property. In no event will we pay more than the **Policy Limit**.

**B.** The following is added to the SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

If we pay an innocent coinsured victim of **domestic abuse** for loss arising out of an act of **domestic abuse** by another insured, the rights of the innocent coinsured to recover damages from the perpetrator of the **domestic abuse** are transferred to us to the extent of our payment. Following the loss, the innocent coinsured may not waive such rights to recover against the perpetrator of the **domestic abuse**.

**C.** In Subsections **A.** and **B.** of this endorsement, **domestic abuse** means attempting to cause or intentionally, knowingly or recklessly causing damage to property for the purpose of intimidating or attempting to control the behavior of another person, including a minor.

**D.** PROPERTY CLAIMS SETTLEMENT IN THE EVENT OF A CATASTROPHE

**1.** The provisions of this Subsection **D.** apply to a claim for direct physical loss or damage to **covered property**, provided that:

**a.** The claim is for loss or damage that results from a catastrophe declared by the Superintendent of Insurance; and

**b.** The catastrophic event is a **covered cause of loss**.

**2.** The following provisions, **2.a.** and **2.b.,** are added to the Policy and supersede any provisions to the contrary:

**a.** If you reported your claim to us:

**(1)** Before the catastrophe was declared, we will reach agreement with you on the amount of loss within 90 days after the date the catastrophe was declared;

**(2)** After the catastrophe was declared, we will reach agreement with you on the amount of loss within 90 days after the date on which you reported the claim.

**b.** However, the time periods specified in **2.a.** above will be extended by the period of time taken to resolve the following situations:

**(1)** We suspect the claim is fraudulent and commence an investigation to make such a determination;

**(2)** You do not provide the necessary information regarding the nature of the claim, following our request for such information; or

**(3)** You filed suit against us in connection with the claim before expiration of the applicable 90-day period.

**3.** All other provisions of this Policy continue to apply in the event of a catastrophe, including the SUIT AGAINST COMPANY and APPRAISAL Subsections of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section.

**4.** This endorsement does not invalidate our right to deny your claim, nor the right of either party to seek judgment in a court having jurisdiction.

All other terms and conditions of the Policy remain the same.

## NEW YORK STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of New York.

**A.** If this Policy covers the interest of the owner of any of the following types of buildings or structures:

   **1.** Commercial; or

   **2.** Industrial;

     the following provision is added:

      Before payment to you for loss or damage to the above buildings or structures caused by or resulting from fire, we will:

      **a.** Deduct from your payment the claim of any tax district that issues a certificate of lien in accordance with the Insurance Law; and

      **b.** Pay directly to the tax district the amount of the claim.

      When we pay that claim, we will have no obligation to pay the amount of that claim to you. Our payment of that claim within 30 days of our receipt of that certificate of lien will be a conclusive presumption that the claim was valid and properly paid.

**B.** The following is added with respect to any Condition of this Policy which requires you to notify us of loss or to notify us of an accident, claim or suit:

   **1.** Notice given by or on your behalf; or

   **2.** Written notice by or on behalf of any claimant;

   To any of our agents in New York State, which adequately identifies you, will be the same as notice to us.

**C.** The following is added to the REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section and supersedes any provision to the contrary:

   **1.** We will conduct an audit to determine the final premium due to be refunded, for coverage for which an advance or deposit premium was paid based on estimated exposure.  But the audit may be waived if:

     **a.** The total annual premium attributable to the auditable exposure base is not reasonably expected to exceed $1,500; or

     **b.** The Policy requires notification to us with specific identification of any additional exposure units (e.g. buildings) for which coverage is requested.

   If the audit is not waived, it must be completed within 180 days after:

     **a.** The expiration date of the Policy; or

     **b.** The anniversary date, if this is a continuous Policy or a Policy written for a term longer than one year.

**D.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

**1.** If we and you disagree on the value of the property, the extent of the loss or damage or the amount of the loss or damage, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand.

**2.** If we or you fail to proceed with the appraisal of the covered loss after a written demand is made by either party, then either party may apply to a court having jurisdiction for an order directing the party that failed to proceed with the appraisal to comply with the demand for the appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such order.

**3.** The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the actual cash value, the replacement cost, the extent of the loss or damage and the amount of the loss or damage. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

**4.** Each party will:

　　a) Pay its chosen appraiser; and

　　b) Bear the other expenses of the appraisal and umpire equally.

　　If there is an appraisal, we will still retain our right to deny the claim.

**E.** The following provision is added to the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

**ESTIMATION OF CLAIMS**

Upon request, we will furnish you or your representative with a written estimate of damages to real property specifying all deductions, provided such an estimate has been prepared by us or has been prepared on our behalf for our own purposes. This estimate will be provided within thirty days after your request or its preparation, whichever is later.

**F.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**FRAUD**

We do not provide coverage to any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss or damage for which coverage is sought under this Policy.

All other terms and conditions of the Policy remain the same.

## NORTH CAROLINA STATE AMENDATORY ENDORSEMENT

The following endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of North Carolina.

**A**. The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No one may bring legal action against us under this Policy unless you have fully complied with all the terms of this Policy, and unless the action is brought within three (3) years after the date on which the direct physical loss or damage occurred.

**B**. The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  You and we must notify the other of the appraiser selected within 20 days of the written demand for an appraisal.  The two appraisers will select an umpire.  If the appraisers do not agree on the selection of an umpire within 15 days, they must request selection of an umpire by a judge of a court having jurisdiction.  The appraiser will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be the appraised value of the property or amount of loss.  If you make a written demand for an appraisal of the loss each party will:

1.  Pay its chosen appraiser; and

2.  Bear the other expenses of the appraisal and umpire equally.

**C**.  The following is added the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

Whenever a state of disaster is proclaimed for the state of North Carolina or for an area within this state in accordance with state law, or whenever a major disaster is declared for North Carolina or an area within this state by the President of the United States under the Stafford Act or its successors, the following provisions apply:

1.  If the covered real property that has sustained loss or damage is located within the geographic area designated in the disaster declaration or proclamation, the time period for your submission of a proof of loss statement (as set forth in the REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section) shall be extended by 45 days or by the number of days the disaster declaration or proclamation remains in effect, whichever number is greater.

2.  Except as otherwise provided in Subsection **1**. above, the following applies if you or we reside in or are located in the geographic area designated in the disaster declaration or proclamation:

    If the Policy imposes a time limitation on you or us for performance of a duty or any act (including transmittal of information) and such performance would be required during the time period covered by the declaration or proclamation, your performance and our performance is subject to a deferral period of 30 days.  The Commissioner of Insurance may extend such deferral period.

All other terms and conditions of the Policy remain the same.

# NORTH DAKOTA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of North Dakota.

**A.** The following exclusion and related provisions are added to the Policy:

We will not pay for loss or damage arising out of any act committed by or at the direction of any insured and with the intent to cause a loss.

However, this exclusion will not apply to deny coverage to an innocent co-insured who did not cooperate in or contribute to the creation of the loss, provided the loss is otherwise covered under this Policy and the loss arose out of domestic violence and the perpetrator of the loss is criminally prosecuted for the act causing the loss.

If we pay a claim pursuant to the above paragraph, our payment to the insured is limited to that insured's ownership interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the **Policy Limit**.

**B.** The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No one may bring legal action against us under this Policy unless, you have fully complied with all the terms of this Policy, and unless the action is brought within three (3) years from the date on which the direct physical loss or damage occurred.

**C.** The following is added to the SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section and supersedes any provision to the contrary:

If we pay an innocent co-insured victim of domestic violence for loss arising out of an act of domestic violence by another insured, the rights of the innocent co-insured to recover damages from the perpetrator of the domestic violence are transferred to us to the extent of our payment. Following the loss, the innocent co-insured may not waive such rights to recover against the perpetrator of the domestic violence.

All other terms and conditions of the Policy remain the same.

# OHIO STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Ohio.

**A.** The following is added to the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section and supersedes any provision to the contrary:

We will give you notice, within 21 days after we receive a properly executed proof of loss, that we:

**1.** Accept your claim;

**2.** Deny your claim; or

**3.** Need more time to investigate your claim.

If we need more time to investigate your claim, we will provide an explanation for our need for more time. We will continue to notify you again in writing, at least every 45 days, of the status of the investigation and of the continued time needed for the investigation.

Provided you have complied with all the terms of this Policy, we will pay for covered loss or damage within:

**1.** 10 days after we accept your claim if such acceptance occurs within the first 21 days after we receive a properly executed proof of loss, unless the claim involves an action by a probate court or other extraordinary circumstances as documented in the claim file; or

**2.** 5 days after we accept your claim if such acceptance occurs more than 21 days after we receive a properly executed proof of loss, and

**a.** An appraisal award has been made; or

**b.** We have reached an agreement with you on the amount of loss that was in dispute.

**B.** The following exclusion is added to Subsection **1.** of the PERILS EXCLUDED Section:

Dispersal, discharge, or release of pathogenic, toxic, poisonous, or damaging biological or chemical agents or substances (hereinafter, **biological or chemical substances**).

**C.** The following provision applies when this endorsement is attached to the Commercial Property Policy:

Subsection **5.,** Terrorism of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted in its entirety and replaced with the following:

**5. Terrorism.**

**a.** If you elect to purchase **terrorism**, then both **certified terrorism** and **non-certified terrorism** coverage are provided and a corresponding premium will be shown in Item **5.B.** of the Declarations.

**b.** If you elect not to purchase **terrorism**, then **certified terrorism** is not covered, but **non-certified terrorism** is covered, unless such **non-certified terrorism**:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.

    **i.**   Results in industry-wide insured losses that exceed $25,000,000 for related incidents that occur within a 72-hour period, or

    **ii.**  Involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination, or

    **iii.**  Is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials, or

    **iv.**  Involves the release of pathogenic or poisonous biological or chemical materials and it appears that one purpose of the **non-certified terrorism** was to release such materials;

in such case, **non-certified terrorism** is not covered.

However, we will provide an extension for fire following **non-certified terrorism** and **certified terrorism**.  With respect to this extension for fire following **non-certified terrorism** and **certified terrorism**, no coverage is provided for: (1) fire following the dispersal, discharge, or release of **biological and/or chemical substances**, (2) fire following the dispersal, discharge, or release of nuclear radiation, radioactive contamination or nuclear reaction, (3) any Additional Coverage, except debris removal under the DEBRIS REMOVAL Additional Coverage, or (4) any time element loss (including any time element loss related to debris removal).  Notwithstanding any other valuation provision of this Policy to the contrary, we shall only pay the actual cash value of the insured building or other **covered property** at the time and place of the loss caused directly by the ensuing fire.  Other than ensuing fire, any cause or event occurring concurrently or in any sequence with **non-certified terrorism** or **certified terrorism** is not covered.  In addition, any action taken to prevent, defend against, respond to or retaliate against **non-certified terrorism** or **certified terrorism** is not covered.

**c.**   Whether or not you have elected **terrorism** coverage under this Policy, regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage, we do not cover loss or damage caused directly or indirectly by dispersal, discharge, or release of: (1) **biological and/or chemical substances** or (2) nuclear radiation, radioactive contamination or nuclear reaction.

Notwithstanding Subsection **c.**(2), if you elected to purchase **certified terrorism**, then with respect to **certified terrorism**:

    **i.**   If fire not otherwise excluded ensues, we shall be liable for direct physical loss or damage by such ensuing fire, but not including any loss or damage due to nuclear reaction, nuclear radiation, or radioactive contamination; and

    **ii.**  We do insure against loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted at the **covered location**, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel at the **covered location**.

**d.**   **Terrorism** means:

    **i.**   **Certified terrorism** meaning any act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

       **(1)** to be an act of terrorism;

       **(2)** to be a violent act or an act that is dangerous to:

**(a)** human life;

**(b)** property; or

**(c)** infrastructure;

**(3)** to have resulted in damage within the United States, or outside of the United States in the case of:

**(a)** an air carrier or vessel described in Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto; or

**(b)** the premises of a United States mission; and

**(4)** to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

**ii.** **Non-certified terrorism**, which means an act of terrorism that is not certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States and meets all of the criteria set forth in Subsections **5.d.i.(1)** through **5.d.i.(4)** above, inclusive.

**D.** The following provision applies when this endorsement is attached to the U.S. Global Commercial Property Policy:

Subsection **5.b.** Domestic Terrorism of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted in its entirety and replaced with the following:

**b.** **Domestic Terrorism**

**i.** If you elect to purchase **domestic terrorism**, then both **certified domestic terrorism** and **non-certified domestic terrorism** coverage are provided and a corresponding Domestic Terrorism Premium will be shown in Item **5.** of the Declarations.

**ii.** If you elect not to purchase **domestic terrorism**, then **certified domestic terrorism** is not covered, but **non-certified domestic terrorism** is covered, unless such **non-certified domestic terrorism**:

**(a)** Results in industry-wide insured losses that exceed $25,000,000 for related incidents that occur within a 72-hour period, or

**(b)** Involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination, or

**(c)** Is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials, or

**(d)** Involves the release of pathogenic or poisonous biological or chemical materials and it appears that one purpose of the **non-certified domestic terrorism** was to release such materials;

in such case, **non-certified domestic terrorism** is not covered.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.

However, we will provide an extension for fire following **non-certified domestic terrorism** and **certified domestic terrorism**.  With respect to this extension for fire following **non-certified domestic terrorism** and **certified domestic terrorism**, no coverage is provided for: (1) fire following the dispersal, discharge, or release of **biological and/or chemical substances**, (2) fire following the dispersal, discharge, or release of nuclear radiation, radioactive contamination or nuclear reaction, (3) any Additional Coverage, except debris removal under the DEBRIS REMOVAL Additional Coverage, or (4) any time element loss (including any time element loss related to debris removal).  Notwithstanding any other valuation provision of this Policy to the contrary, we shall only pay the actual cash value of the insured building or other **covered property** at the time and place of the loss caused directly by the ensuing fire.  Other than ensuing fire, any cause or event occurring concurrently or in any sequence with **non-certified domestic terrorism** or **certified domestic terrorism** is not covered.  In addition, any action taken to prevent, defend against, respond to or retaliate against **non-certified domestic terrorism** or **certified domestic terrorism** is not covered.

iii.   Whether or not you have elected **domestic terrorism** coverage under this Policy, regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage, we do not cover loss or damage caused directly or indirectly by dispersal, discharge, or release of: (1) **biological and/or chemical substances** or (2) nuclear radiation, radioactive contamination or nuclear reaction.

Notwithstanding Subsection **iii.**(2), if you elected to purchase **certified domestic terrorism**, then with respect to **certified domestic terrorism**:

**(a)** If fire not otherwise excluded ensues, we shall be liable for direct physical loss or damage by such ensuing fire, but not including any loss or damage due to nuclear reaction, nuclear radiation, or radioactive contamination; and

**(b)** We do insure against loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted at the **covered location**, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel at the **covered location**.

iv.   **Domestic terrorism** means:

**(a) Certified domestic terrorism** meaning any act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

**(1)** to be an act of terrorism;

**(2)** to be a violent act or an act that is dangerous to:

**(a)** human life;

**(b)** property; or

**(c)** infrastructure;

**(3)** to have resulted in damage within the United States, or outside of the United States in the case of:

**(a)** an air carrier or vessel described in Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto; or

**(b)** the premises of a United States mission; and

**(4)** to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

**(b)** **Non-certified domestic terrorism**, which means an act of terrorism that is not certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States, meets all of the criteria set forth in Subsections **iv.(a)(1)** through **iv.(a)(4)** above, inclusive, and occurs in the United States, its territories, possessions and Puerto Rico.

**E.** The Occurrence definition of the DEFINITIONS Section is deleted entirely and replaced with the following:

**Occurrence** means any one **accident**, loss, disaster, casualty, incident or series of **accidents**, losses, disasters, casualties or incidents, including all resultant or concomitant insured losses, not otherwise excluded by this Policy arising out of a single event or originating cause.

The **occurrence** must occur during the policy period.

When the term applies to loss or losses from the perils of **windstorm or hail**, **named storm**, **riot, strike or civil commotion**, **vandalism and malicious mischief**, **earth movement**, **flood** or **terrorism,** to the extent any such peril(s) are covered, all losses arising from such peril(s) occurring during a continuous period of 72 hours shall be deemed to be a single **occurrence**.  You may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the **covered property**, but no two such 72 hour periods shall overlap.

If the **occurrence** commences during this policy period, then we shall treat the entire **occurrence** as occurring during this policy period.

All other terms and conditions of the Policy remain the same.

Includes copyrighted material of Insurance Services Office,
Inc., with its permission.  All rights reserved.

## OKLAHOMA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Oklahoma.

The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If you and we fail to agree on the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty (20) days of such demand. The appraisers shall first select a competent and disinterested umpire, and, if failing for fifteen (15) days to agree upon such umpire, then, on the request of you or us, after notice of hearing to the nonrequesting party by certified mail, such umpire shall be selected by a judge of a district court in the county where the loss occurred. The appraisers shall then appraise the loss, stating separately the loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with us shall determine the amount of loss and shall be binding and final. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

**Warning:** *Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing false, incomplete or misleading information is guilty of a felony.*

All other terms and conditions of the Policy remain the same.

## OREGON STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Oregon.

**A.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property, or the amount of loss both parties may agree to an appraisal of the loss and to be bound by the results of that appraisal. If both parties so agree, then each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**B.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

**1.** Subject to Subsections **2.** and **3.** below, this entire Policy will be void if, whether before or after a loss, you have willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject of it, or your interest in it, or in case of any fraud or false swearing by you relating to it.

**2.** All statements made by you or on your behalf, in the absence of fraud, will be deemed representations and not warranties. No such statements that arise from an error in the application will be used in defense of a claim under this Policy unless:

**a.** The statements are contained in a written application; and

**b.** A copy of the application is endorsed upon or attached to this Policy when issued.

**3.** In order to use any representation made by you or on your behalf in defense of a claim under the Policy, we must show that the representations are material and that we relied on them.

**C.** The following is added to the MORTGAGEHOLDERS Subsection of the GENERAL CONDITIONS Section and supersedes any provision to the contrary:

**1.** Oregon law states as follows:

**a.** "If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the Insured, such interest in this policy maybe cancelled by giving to such mortgagee a 10 days' written notice of cancellation".

**b.** "If the Insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified with 60 days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgage may added hereto by agreement in writing".

**2.** The term mortgageholder includes trustee.

**3.** If we select not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**D.** The following is added to the REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section and supersedes any provision to the contrary:

The provision requiring a signed, sworn proof of loss is replaced by the following:

Provide us with a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 90 days after you receive the necessary forms from us.

All other terms and conditions of the Policy remain the same.

## COMMONWEALTH OF PENNSYLVANIA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the Commonwealth of Pennsylvania.

**A**. The following is added and supersedes any provision to the contrary:

**1.** We, our agents, employees or service contractors acting on our behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

**a.** Surveys;
**b.** Consultation or advice; or
**c.** Inspections.

**2.** The Insurance Consultation Services Exemption Act of Pennsylvania (the "Act") provides that we, our agents, employees or service contractors acting on our behalf, are not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

**a.** If the injury, death or loss occurred during the actual performance of the services and was caused by our negligence, or the negligence of our agents, employees or service contractors;
**b.** To consultation services required to be performed under a written service contract not related to a policy of insurance; or
**c.** If any of our acts or omissions, or those of our agents, employees or service contractors are judicially determined to constitute a crime, actual malice or gross negligence.

**B**. The following is added to the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section and supersedes any provision to the contrary:

**NOTICE OF ACCEPTANCE OR DENIAL OF CLAIM**

**1.** Except as provided in **3**. below, we will give you notice, within 15 working days after we receive a properly executed proof of loss, that we:

**a.** Accept your claim;
**b.** Deny your claim; or
**c.** Need more time to determine whether your claim should be accepted or denied.

If we deny your claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

If we need more time to determine whether your claim should be accepted or denied, the written notice will state the reason why more time is required.

**2.** If we have not completed our investigation, we will notify you again in writing, within 30 days after the date of the initial notice as provided in **1.c**. above, and thereafter every 45 days. The written

notice will state why more time is needed to investigate your claim and when you may expect us to reach a decision on your claim.

**3.** The notice procedures in **1.** and **2.** above do not apply if we have a reasonable basis, supported by specific information, to suspect that an insured has fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, we will notify you of the disposition of your claim within a period of time reasonable to allow full investigation of the claim, after we receive a properly executed proof of loss.

**C.** When used in this Policy "actual cash value" shall mean**:**

The calculated amount it would cost to repair or replace **covered property**, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of **covered property** regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

**D.** If the Manufacturing Segment Endorsement, Manufacturing Segment Endorsement (Global Version), Real Estate Segment Endorsement, Retail Segment Endorsement, or Retail Segment Endorsement (Global Version) is attached to this Policy, then Subsections **e.** and **f.**, including the paragraph immediately following Subsection **f.**, only, of the WAREHOUSEMAN LEGAL LIABILITY Additional Coverage in such endorsement are deleted and replaced by the following:

**e.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable sublimit of liability; and

**f.** Prejudgment interest awarded against you on that part of the judgment we pay.  If we make an offer to pay the applicable sublimit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

Any amounts payable under this Additional Coverage, except for amounts payable under Subsection **f.** above, are included within the Warehouseman Legal Liability sublimit of liability as shown in the above Schedule.

All other terms and conditions of the Policy remain the same.

**113148 (1/17)**          Includes copyrighted material of Insurance Services Office,          **Page 2 of 2**
Inc., with its permission.  All rights reserved.

# RHODE ISLAND STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Rhode Island.

**A.** The following is added to the APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section and supersedes any provision to the contrary:

   **1.** You and we must notify the other of the appraiser selection within 20 days of the written demand for appraisal.
   **2.** If the appraisers do not agree on the selection of an umpire within 15 days, they must request selection of an umpire by a judge of a court having jurisdiction.

**B.** The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced with the following:

   **SUIT AGAINST COMPANY**

   No one may bring a legal action against us under this Policy unless there has been full compliance with all the terms of this policy. Any action under this Policy for the recovery of any claim for direct loss or damage by fire and lightning must be brought within 2 years after the date on which such direct loss or damage occurred.

**C.** The following is added to the MORTGAGEHOLDERS Subsection of the GENERAL CONDITIONS Section and supersedes any provision to the contrary:

   The mortgageholder shall not be entitled to payment of a claim under this Policy for loss or damage to a covered building when such loss or damage is less than $3,500, and for which said mortgageholder is otherwise entitled to payment, unless no liability exists as to the mortgagor.

**D.** The following is added to the GENERAL CONDITIONS Section:

   No provision, stipulation or forfeiture will be held to be waived by any requirement or proceeding on our part relating to appraisal or to any examination provided for in this Policy.

**E.** The following is added to the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section when this Policy applies to loss or damage to a building or structure by fire or explosion, other than owner-occupied 1- to 4-family dwellings:

   **1.** We will not pay for a loss that is more than $10,000 unless we receive from you a certificate issued by the taxing jurisdiction official that shows:

      **a.** That no lien exists for the benefit of the taxing jurisdiction; or
      **b.** The amount of any such lien that exists;

   against the building or structure.

   The $10,000 limit shown above may be adjusted yearly for inflation by the Insurance Department.

   **2.** Under the following conditions, we will put our payment for loss or damage into an interest-bearing escrow account:

**a.** The taxing jurisdiction official certifies that a lien exists. We will not put more than the amount of that lien into the account.

**b.** You do not receive a certificate from the taxing jurisdiction official within 30 days after you file a statement of loss with us. In this case, we will put the entire loss payment into the account.

**3.** But, if you can prove to us that:

**a.** You have requested the certificate by certified mail; and

**b.** The taxing jurisdiction official has not provided it to you within 15 days after your request;

we will make our payment directly to you as soon as possible.

**4.** Also, if the taxing authority certifies that it has received proof that you will repair or rebuild on the same premises where the loss or damage occurred, we can then pay you directly for the loss or damage.

**F.** The SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUBROGATION**

We may require from you an assignment of all rights of recovery against any party for loss to the extent that payment is made by us.  However, you have the right to waive subrogation, provided such waiver is entered into by you in writing prior to the loss.

Any recovery by us as a result of subrogation proceedings arising out of an **occurrence**, after our expenses, including our legal fees incurred in such subrogation proceedings are deducted (and after first paying you your pro rata share of expenses, including legal fees, if we require you to pay any such expenses), shall first accrue to you for the deductible amount and then accrue to us for any additional amount paid by us.

You will cooperate with us and, upon our request and expense will:

**1.** Attend hearings and trials;

**2.** Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

All other terms and conditions of the Policy remain the same.

## SOUTH CAROLINA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of South Carolina.

The following notice is added to the Policy:

NOTICE:  YOU MAY BE ELIGIBLE FOR A REDUCTION IN THE PREMIUM UNDER THIS POLICY IF CERTAIN STEPS HAVE BEEN TAKEN TO PREVENT OR REDUCE DAMAGE FROM **WINDSTORM**.  THE DISCOUNTS, IF ANY, WOULD APPLY ONLY TO THE PORTION OF THE PREMIUM ATTRIBUTABLE TO WIND COVERAGE.

All other terms and conditions of the Policy remain the same.

# SOUTH DAKOTA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of South Dakota.

**A.** The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No one may bring a legal action against us under this Policy unless the action is brought within 6 years after the date on which the direct physical loss or damage occurred.

**B.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of the loss both parties may agree to an appraisal of the loss. If both parties so agree, then each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, it is without prejudice to our rights under the terms and conditions of the Policy and our right to deny the claim in whole or in part.

All other terms and conditions of the Policy remain the same.

# TEXAS STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes and notice apply only to locations covered by the Policy that are in the State of Texas.

**A.** The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

**1.** Except as provided in Subsection 2. below, no one may bring a legal action against us under this Policy unless:

**a.** There has been full compliance with all of the terms of this Policy; and

**b.** The action is brought within 2 years and one day after the date on which the direct physical loss or damage occurred.

**2.** With respect to loss or damage in the State of Texas caused by **windstorm or hail** in a catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against us under this Policy unless:

**a.** There has been full compliance with all of the terms of this Policy; and

**b.** The action is brought within the earlier of the following:

(1) 2 years and one day from the date we accept or reject the claim; or

(2) 3 years and one day from the date of loss or damage that is the subject of the claim.

**B.** The following provision is added to Subsection **12.** of the REQUIREMENTS IN CASE OF LOSS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

Notwithstanding the foregoing, with respect to loss or damage in the State of Texas caused by **windstorm or hail** in a catastrophe area as defined by the Texas Insurance Code, the above-referenced proof of loss must be filed with us not later than one year after the date of loss or damage that is the subject of the claim, except that such a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim.

**C.** Under the SETTLEMENT OF CLAIMS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section, the provisions pertaining to notice of our intentions and the time period for payment of claims are replaced by the following:

**1.** Claims Handling

**a.** Within 15 days after we receive written notice of a claim, we will:

**(1)** Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

**(2)** Begin any investigation of the claim; and

**(3)** Request from you any additional information we reasonably believe will be required from you other than the information already required under the REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section.

**b.** We will notify you in writing as to whether:

**(1)** The claim or part of the claim will be paid;

**(2)** The claim or part of the claim has been denied, and inform you of the reasons for denial;

**(3)** More information is necessary; or

**(4)** We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in **b.(1)** through **b.(4)** above, within:

**(1)** 15 **business days** after we receive the signed, sworn proof of loss as herein required; or

**(2)** 30 days after we receive the signed, sworn proof of loss as herein required, if we have reason to believe the loss resulted from arson.

If we have notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

**2.** We will pay for covered loss or damage within 5 **business days** after:

**a.** We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any of the terms of this Policy, we will make payment within 5 **business days** after the date you have complied with such terms.

**3. Catastrophe Claims**

If a claim results from a weather related **catastrophe** or a **major natural disaster**, the claim handling and claim payment deadlines described in **C.1.** and **C.2.** above are extended for an additional 15 days.

**Catastrophe** or **major natural disaster** means a weather related event which:

**a.** Is declared a disaster under the Texas Disaster Act of 1975; or

**b.** Is determined to be a catastrophe by the State Board of Insurance.

**4.** The term **business day**, as used herein, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

**D.** Subsections **3.** and **5.** of the MORTGAGEHOLDERS Subsection of the GENERAL CONDITIONS Section are replaced by the following:

**3.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Policy, any such mortgageholder will nevertheless have the right to receive loss payment if such mortgageholder:

**a.** Pays the premium due under this Policy at our request if you have failed to do so;

**b.** Submits a signed, sworn proof of loss within 91 days after receiving notice from us of your failure to do so; and

**c.** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Policy will then apply directly to the mortgageholder.

**5.** If we cancel this Policy, we will give written notice to the mortgageholder at least:

**a.** 14 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

If you cancel the Policy, we will give the mortgageholder notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

**E. NOTICE**

To obtain information or make a complaint:

You may call the Company's toll-free telephone number for information or to make a complaint at:

1-877-541-9748

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights, or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX  78714-9104
Fax: (512) 490-1007

Web:http://www.tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim, you should contact the agent first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.


**F.  AVISO IMPORTANTE**

Para obtener información o para presentar una queja:

Usted puede llamar al número de teléfono gratuito de la compania para obtener información o para presentar una queja al:

1-877-541-9748

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre companias, coberturas, derechos, o quejas al:

1-800-252-3439

Usted puede escribir al Departamento de Seguros de Texas a:

P.O. Box 149104
Austin, TX  78714-9104
Fax: (512) 490-1007

Web:http://www.tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

**DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:**
Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente primero.  Si la disputa no es resuelta, usted puede comunicarse con el Departamento de Seguros de Texas.


All other terms and conditions of the Policy remain the same.

# UTAH STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Utah.

**A.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Policy may be voided in the event of fraud or misrepresentation by you relating to:

**1.** This Policy;

**2.** The **covered property**;

**3.** Your interest in the **covered property**; or

**4.** A claim under this Policy,

subject to the following provisions of Utah Code Section 31A-21-105:

   **a.** No statement, representation, or warranty made by any person representing us in the negotiation for an individual insurance contract affects our obligations under this Policy unless the statement, representation, or warranty is stated:

   **(1)** In this Policy; or

   **(2)** In a written application signed by you.

   No person, except you or another person by your written consent, may alter the application, other than for administrative purposes in a way which is clearly not ascribable to you.

   **b.** You, your assignee and the loss payee, mortgagee or lienholder, if any, under property insurance, may request from us, in writing, a copy of the application, if:

   **(1)** This Policy or a copy of the application has not been received; or

   **(2)** This Policy has been reinstated or renewed without the attachment of a copy of the original application.

   If we do not deliver or mail a copy of the application, within 30 days after receipt of the request by us or our agent, nothing in the application affects our obligations under this Policy to the person making the request.

   **c.** Except as provided in **f.** below, no misrepresentation or breach of an affirmative warranty affects our obligations under this Policy unless:

   **(1)** We rely on it and it is either material or is made with intent to deceive; or

   **(2)** The fact misrepresented or falsely warranted contributes to the loss.

   **d.** No failure of a condition prior to the loss, and no breach of a promissory warranty, affects our obligations under this Policy unless it:

   **(1)** Exists at the time of the loss; and

   **(2)** Either:

      **(a)** Increases the risk at the time of the loss; or

      **(b)** Contributes to the loss.

   However, this Subsection **d.** does not apply to nonpayment of premium.

   **e.** Nondisclosure of information not requested by us is not a defense to an action against us. Failure to correct within a reasonable period of time any representation that becomes incorrect because of changes in circumstances is misrepresentation, not nondisclosure.

   **f.** If, after we issue this Policy, we acquire knowledge of sufficient facts to constitute a general defense to all claims under this Policy, the defense is only available if, within 60 days after acquiring such knowledge we notify you of our intention to defend against a claim if one should arise. However, in order to continue this Policy, we and you may both agree to endorse it to include specific exceptions or modifications.

For purposes of this Subsection **f.,** we are to be considered as having acquired knowledge only if the information alleged to give rise to such knowledge was disclosed to us or to our agent in connection with communications or investigations associated with the Policy under which the subject claim arises.

    **g.** No trivial or transitory:

        **(1)** Breach of; or

        **(2)** Noncompliance with;

    any of the above provisions is a basis for avoiding this Policy.

**B.** The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless you shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within 3 years next after the date on which the direct physical loss or damage occurred.

**C.** The REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is amended by inserting the following at the end thereof:

Notwithstanding the foregoing, your failure to send the requested proof of loss within 90 days does not invalidate your claim, if you show that it was not reasonably possible to do so and also show that you submitted the proof of loss to us as soon as reasonably possible.

One means you may use to send the notice of loss or damage or proof of loss is mailing it to us, postage prepaid, through first class mail deposited in a United States Post Office.

All other terms and conditions of the Policy remain the same.

## VERMONT STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Vermont.

**A.** The following is added to the SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

However, your right to bring legal action against us is not conditioned upon your compliance with the provisions of the APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section.

**B. Loss Payment Loss Condition**

The following provision is added to the SETTLEMENT OF CLAIMS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section and supersedes any provision to the contrary:

We shall have 25 days to respond to a properly executed proof of loss. We will pay for loss or damage within 10 working days after we reach agreement with you on the amount of loss or damage.

**C.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:

**1.** Concealment or misrepresentation of a material fact; or

**2.** Fraud;

committed by you at any time and relating to coverage under this Policy.

All other terms and conditions of the Policy remain the same.

## COMMONWEALTH OF VIRGINIA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the Commonwealth of Virginia.

**A.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is replaced with the following:

**APPRAISAL**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. You and we must notify the other of the appraiser selected within 20 days of the written demand for appraisal. The two appraisers will select an umpire. If the appraisers do not agree on the selection of an umpire within 15 days, you or we may apply in writing, for the appointment of an umpire, to the judge of the circuit court of the county or city in which the damaged or destroyed property was located at the time of loss. The appraisers will state separately the value of the property and amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Any outcome of the appraisal will be binding on both parties.

Each party will:

**1.** Pay its own appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

However, if we make written demand for an appraisal of the loss, we will reimburse you for the reasonable cost of your chosen appraiser, and for your portion of the cost of the umpire.

If there is an appraisal, we will still retain our right to deny the claim.

**B.** The following provision applies and supersedes any provision to the contrary under any VALUATION provision of this Policy:

You may make an initial claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the difference between the actual cash value and the replacement cost if you notify us of your intent to do so within 6 months of the later of the following dates:

**1.** The last date on which you received a payment for actual cash value; or

**2.** The date of entry of a final order of a court of competent jurisdiction declaring your right to full replacement cost.

**C.** The following notice applies if the Functional Replacement Cost Valuation endorsement is attached to the Policy:

**Important Notice**
**The coverage under this policy may apply on a functional replacement cost basis in accordance with the attached Functional Replacement Cost Valuation endorsement, which means that under certain conditions, claims may be settled for less than the actual cash value of the property insured.**

**D.  IMPORTANT INFORMATION REGARDING YOUR INSURANCE**

In the event you need to contact someone about this insurance for any reason, please contact your agent.  If no agent was involved in the sale of this insurance, or if you have additional questions, you may contact the insurance Company issuing this insurance at the following address and telephone number:

AIG
175 Water Street
New York, NY 10038
(212) 458-5000

If you have been unable to contact or obtain satisfaction from the Company or agent, you may contact the Virginia State Corporation Commission's Bureau of Insurance at:

Bureau of Insurance
P.O. Box 1157
Richmond, VA 23218-1157
(804) 371-9741
1-877-310-6560 (toll-free)

Written correspondence is preferable so that a record of your inquiry is maintained.  When contacting your agent, Company or the Bureau of Insurance, have your policy number available.

All other terms and conditions of the Policy remain the same.

# WASHINGTON STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Washington.

**A.** The first paragraph immediately following Subsection **3.** Named Storm of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted in its entirety and replaced with the following:

If **earth movement**, **flood** or **named storm** is not covered, we will pay for direct physical loss or damage to **covered property** caused by fire, sprinkler leakage or explosion following **earth movement**, **flood** or **named storm**, whichever is applicable.

**B.** The following provision applies when this endorsement is attached to the Commercial Property Policy:

Subsection **5.** Terrorism of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted in its entirety and replaced with the following:

**5. Terrorism.**

**a.** If you elect to purchase **terrorism** coverage, then both **certified terrorism** and **non-certified terrorism** coverage are provided and a corresponding premium will be shown in Item **5.B.** of the Declarations.

**b.** If you do not elect to purchase **terrorism** coverage, then **certified terrorism** is not covered, but **non-certified terrorism** is covered unless such **non-certified terrorism**:

**i.** Results in industry-wide insured losses that exceed $25,000,000 for related incidents that occur within a 72-hour period, or

**ii.** Involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination, or

**iii.** Is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials, or

**iv.** Involves the release of pathogenic or poisonous biological or chemical materials and it appears that one purpose of the **non-certified terrorism** was to release such materials;

in such case, **non-certified terrorism** is not covered.

If **certified terrorism** or **non-certified terrorism** is not covered, then notwithstanding any exception in any exclusion to the contrary, loss or damage caused directly or indirectly by **certified terrorism** or **non-certified terrorism** is also not covered, including, any action taken to prevent, defend against, respond to or retaliate against **certified terrorism** or **non-certified terrorism** or suspected **certified terrorism** or **non-certified terrorism**, except for direct physical loss or damage to **covered property** caused by fire following **non-certified terrorism** and **certified terrorism**. With respect to this extension for fire following **non-certified terrorism** and **certified terrorism**, no coverage is provided for: (1) any Additional Coverage, except debris removal under the DEBRIS REMOVAL Additional Coverage or (2) any time element loss (including any time element loss related to debris removal). Notwithstanding any other valuation provision of this Policy to the contrary, we shall only pay the actual cash value of the insured building or other **covered property** at the time and place of the loss caused directly by the ensuing fire.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.

**c.** Whether or not you have elected **terrorism** coverage under this Policy, we do not cover loss or damage caused directly or indirectly by **biological and/or chemical terrorism** or **nuclear terrorism** whether controlled or uncontrolled, proximate or remote, sudden or over any length of time. **Biological and/or chemical terrorism** means the dispersal, discharge, or release of pathogenic, toxic, poisonous, or damaging biological or chemical agents or substances in an act(s) of **terrorism**. **Nuclear terrorism** means an act(s) of **terrorism** involving or resulting in nuclear reaction or nuclear radiation or radioactive contamination.

**d.** **Terrorism** means:

    **i.** **Certified terrorism** meaning any act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

        **(1)** to be an act of terrorism;

        **(2)** to be a violent act or an act that is dangerous to:

            **(a)** human life;

            **(b)** property; or

            **(c)** infrastructure;

        **(3)** to have resulted in damage within the United States, or outside of the United States in the case of:

            **(a)** an air carrier or vessel described in Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto; or

            **(b)** the premises of a United States mission; and

        **(4)** to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

    **ii.** **Non-certified terrorism**, which means the use or threatened use of force or violence against a person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

        **(1)** A government;

        **(2)** The civilian population of a country, state or community; or

        **(3)** Disrupt the economy of a country, state or community.

    Notwithstanding the foregoing, **non-certified terrorism** does not include **certified terrorism**.

**C.** The following provision applies when this endorsement is attached to the U.S. Global Commercial Property Policy:

Subsection **5.b.** Domestic Terrorism of the SPECIFIED COVERED CAUSES OF LOSS Subsection of the INSURING AGREEMENT AND COVERED PROPERTY Section is deleted in its entirety and replaced with the following:

**b. Domestic Terrorism**

    **i.** If you elect to purchase **domestic terrorism** coverage, then both **certified domestic terrorism** and **non-certified domestic terrorism** coverage are provided and a corresponding Domestic Terrorism Premium will be shown in Item **5.** of the Declarations.

    **ii.** If you do not elect to purchase **domestic terrorism** coverage, then **certified domestic terrorism** is not covered, but **non-certified domestic terrorism** is covered unless such **non-certified domestic terrorism**:

        **(1)** Results in industry-wide insured losses that exceed $25,000,000 for related incidents that occur within a 72-hour period, or

        **(2)** Involves the actual, alleged or threatened use, release, escape, dispersal, application and/or existence of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination, or

        **(3)** Is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials, or

        **(4)** Involves the release of pathogenic or poisonous biological or chemical materials and it appears that one purpose of the **non-certified domestic terrorism** was to release such materials;

    in such case, **non-certified domestic terrorism** is not covered.

    If **certified domestic terrorism** or **non-certified domestic terrorism** is not covered, then notwithstanding any exception in any exclusion to the contrary, loss or damage caused directly or indirectly by **certified domestic terrorism** or **non-certified domestic terrorism** is also not covered, including, any action taken to prevent, defend against, respond to or retaliate against **certified domestic terrorism** or **non-certified domestic terrorism** or suspected **certified domestic terrorism** or **non-certified domestic terrorism**, except for direct physical loss or damage to **covered property** caused by fire following **non-certified domestic terrorism** and **certified domestic terrorism**.  With respect to this extension for fire following **non-certified domestic terrorism** and **certified domestic terrorism**, no coverage is provided for: (1) any Additional Coverage, except debris removal under the DEBRIS REMOVAL Additional Coverage or (2) any time element loss (including any time element loss related to debris removal).  Notwithstanding any other valuation provision of this Policy to the contrary, we shall only pay the actual cash value of the insured building or other **covered property** at the time and place of the loss caused directly by the ensuing fire.

    **iii.** Whether or not you have elected **domestic terrorism** coverage under this Policy, we do not cover loss or damage caused directly or indirectly by **biological and/or chemical terrorism** or **nuclear terrorism** whether controlled or uncontrolled, proximate or remote, sudden or over any length of time.  **Biological and/or chemical terrorism** means the dispersal, discharge, or release of pathogenic, toxic, poisonous, or damaging biological or chemical agents or substances in an act(s) of **terrorism**.  **Nuclear terrorism** means an act(s) of **terrorism** involving or resulting in nuclear reaction or nuclear radiation or radioactive contamination.

    **iv.** **Domestic terrorism** means:

        **(1)** **Certified domestic terrorism** meaning any act that is certified by the Secretary [of the Treasury], in consultation with the Secretary of Homeland Security, and the Attorney General of the United States:

       Includes copyrighted material of Insurance Services Office, Inc., with its permission.  All rights reserved.

    **(a)**  to be an act of terrorism;

    **(b)**  to be a violent act or an act that is dangerous to:

        **(1)**  human life;

        **(2)**  property; or

        **(3)**  infrastructure;

    **(c)**  to have resulted in damage within the United States, or outside of the United States in the case of:

        **(1)**  an air carrier or vessel described in Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto; or

        **(2)**  the premises of a United States mission; and

    **(d)**  to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

  **(2)**  **Non-certified domestic terrorism**, which means the use or threatened use of force or violence against a person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

    **(a)**  A government;

    **(b)**  The civilian population of a country, state or community; or

    **(c)**  Disrupt the economy of a country, state or community, and

    occurring in the United States, its territories, possessions and Puerto Rico.

    Notwithstanding the foregoing, **non-certified domestic terrorism** does not include **certified domestic terrorism.**

**D.**  In the PERILS EXCLUDED Section and any other section of the Policy that contains an exclusion, any introductory paragraph preceding an exclusion or list of exclusions is replaced by the following paragraph, which pertains to application of those exclusions:

We will not pay for loss or damage caused by any of the excluded events described below. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:

  **a.**  Directly and solely results in loss or damage; or

  **b.**  Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence.

**E.**  The PERILS EXCLUDED Section is amended by deleting Subsection **1.d.** in its entirety and replacing it with the following:

  **d.**  The actual, alleged or threatened release, discharge, escape or dispersal of **pollutants or contaminants**, all whether direct or indirect, proximate or remote.

However, this exclusion shall not apply to direct physical loss or damage to **covered property** arising out of seepage, contamination, or pollution caused by a **covered cause of loss** at the **covered location**.

**F.** The following is added to the DEFINITIONS Section:

As used in this Policy, the term "actual cash value" means:

   **a.** When the damage to property is economically repairable, actual cash value means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

   **b.** When the loss or damage to property creates a total loss, actual cash value means the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market.

   **c.** Otherwise, actual cash value means the market value of new, identical or nearly identical property less reasonable deduction for wear and tear, deterioration and obsolescence.

**G.** The following exclusion and related provisions are added to the Policy and supersede any provision to the contrary:

   **1.** We will not pay for loss or damage arising out of any act committed:

      **a.** By or at the direction of any insured; and

      **b.** With the intent to cause a loss.

   **2.** However, this exclusion or the CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section will not apply to deny an insured's claim for an otherwise covered loss if such loss is caused by an act of **domestic abuse** by another insured under the Policy, and the insured making the claim:

      **a.** Files a police report and cooperates with any law enforcement investigation relating to the act of **domestic abuse**; and

      **b.** Did not cooperate in or contribute to the creation of the loss.

   **3.** If we pay a claim pursuant to Subsection **G.2.,** our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the **Policy Limit**.

**H.** The following is added to the SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

If we pay an insured, who is a victim of domestic abuse, for a loss caused by an act of **domestic abuse**, the rights of that insured to recover damages from the perpetrator of the abuse are transferred to us to the extent of our payment. That insured may not waive such rights to recover against the perpetrator of the **domestic abuse**.

**I.** As used in this endorsement, **domestic abuse** means:

   **1.** Physical harm, bodily injury, assault or the infliction of fear of imminent physical harm, bodily injury or assault between family or household members;

   **2.** Sexual assault of one family or household member by another;

   **3.** Stalking, as defined in RCW 9A.46.110 of one family or household member by another family or household member; or

   **4.** Intentionally, knowingly or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another family or household member.

**J.** In the APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section, the last sentence is replaced with the following:

If there is an appraisal, it is without prejudice to our rights under the terms and conditions of the Policy.

**K.** The MORTGAGEHOLDERS Subsection of the GENERAL CONDITIONS Section is deleted in its entirety.

**L.** The REQUIREMENTS IN CASE OF LOSS OR DAMAGE Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is amended to delete Subsection **2.**

The duty to notify the police if a law may have been broken does not apply.

**M.** Subsection **A.1.** of the VALUATION Section is deleted and replaced by the following:

    **1.** We shall pay the lesser of:

      **a.** The cost to repair or replace (whichever is less) the building at the time and place of the loss with materials of like kind and quality (and with regard to replacement, the cost to replace with new property), without deduction for depreciation and/or obsolescence; or

      **b.** The actual cost incurred to repair or replace the building.

**N.** If the Real Estate Segment Endorsement is attached to this Policy, then Subsections **A.1.** and **A.2.** of the VALUATION Section of such endorsement are deleted in their entirety and replaced by the following:

  **A.** Buildings:

    **1.** For buildings other than **historic buildings**, we shall pay the lesser of:

      **a.** The cost to repair or replace (whichever is less) the building at the time and place of the loss with materials of like kind and quality (and with regard to replacement, the cost to replace with new property), without deduction for depreciation and/or obsolescence, or

      **b.** The actual cost incurred to repair or replace the building, or

    **2.** In the event of direct physical loss or damage to a **historic building** by a **covered cause of loss**, we will pay the lesser of:

      **a.** The cost to repair or replace (whichever is less) the building at the time and place of the loss with materials of like kind and quality (and with regard to replacement, the cost to replace with new property), without deduction for depreciation and/or obsolescence, including the additional costs incurred by you to reproduce the damaged building or specific building features to the same design, decorative style and dimensions as existed at the time of loss, using identical materials, or

      **b.** The actual cost incurred to repair or replace the building.

      In addition, we will pay for consulting costs incurred to consult with architects, engineers or similar professionals to determine the original design, materials or features of the historic building.

**O.** The INSPECTION Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

  **INSPECTION**

  **1.** We have the right to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions we find; and

    **c.** Recommend changes.

  **2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.** Are safe or healthful; or

    **b.** Comply with laws, regulations, codes or standards.

  **3.** Subsections **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

  **4.** Subsection **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**P.** Wherever the term "replacement cost" is used in this Policy, such term shall be interpreted to mean the cost to replace with new material or property of like kind and quality.

**Q.** Any OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE provision in this Policy is deleted and replaced by the following:

**OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE**

**1.** You may have other insurance. If you do, we will pay our share of the covered loss or damage. Subject to exceptions as set forth in **2.** below, our share is the proportion that the applicable limit of insurance under this Policy bears to the limits of insurance of all insurance covering the loss or damage.

**2.** If there is other insurance as described below, we will pay under this Policy only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not:

    **a.** The property covered under this Policy is also covered under another policy, in which it is more specifically described; or

    **b.** The other insurance covers your interest or the interest of others in property which you do not own.

All other terms and conditions of the Policy remain the same.

# WEST VIRGINIA STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of West Virginia.

**A.** The following is added to the SETTLEMENT OF CLAIMS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section and supersedes any provision to the contrary:

In settlement of all or part of any claim, we will pay the amount agreed upon within 15 working days after:

**1.** Our receipt of the agreement; or

**2.** The date of the performance by the claimant of any condition set by the agreement; whichever is later.

**B.** The following is added as the last paragraph of Subsection **A.** of the VALUATION Section:

Notwithstanding the foregoing, in the event of a total loss to your building by fire, the amount shown on the most recent Statement of Locations and Values with respect to such building shall be taken conclusively to be the true value of the building and we shall pay such amount.

**C.** The following provision in any VALUATION Section is deleted in its entirety: "If the building is not repaired or replaced within 2 years after the date of loss, then we shall pay the actual cash value of such building at the time and place of the loss."

**D.** The APPRAISAL Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted in its entirety and replaced with the following:

**APPRAISAL**

In case you and we shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand.  The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then on your or our request, such umpire shall be selected by a judge of a court of record in the state in which the **covered property** is located.  The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire.  An award in writing, so itemized, of any two when filed with us shall determine the amount of actual cash value and loss.  Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

All other terms and conditions of the Policy remain the same.

# WISCONSIN STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Wisconsin.

**A.** The following exclusion and related provisions are added to the Policy and supersede any provision to the contrary:

**1.** We will not pay for loss or damage arising out of any act committed:
  **a.** By or at the direction of any insured; and
  **b.** With the intent to cause a loss.

**2.** However, this exclusion will not apply to deny coverage to an insured who did not cooperate in or contribute to the creation of the loss, provided the loss is otherwise covered under this Policy and:
  **a.** The loss arose out of an act or pattern of abuse or domestic abuse; and
  **b.** The perpetrator of the loss is criminally prosecuted for the act or acts causing the loss.

**3.** If we pay a claim pursuant to Subsection **A.2.** above, our payment to the innocent insured is limited to that insured's ownership interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property.  In no event will we pay more than the **Policy Limit**.

**B.** The following provisions are added to the Policy and supersede any provisions to the contrary:

**1.** We may rescind this Policy because of the following:
  **a.** Misrepresentation made by you or on your behalf in the negotiation for or procurement of this Policy, if the person knew or should have known that the representation was false;
  **b.** Breach of affirmative warranty made by you or on your behalf in the negotiation for or procurement of this Policy;
  **c.** Failure of a condition before a loss if such failure exists at the time of loss; or
  **d.** Breach of a promissory warranty if such breach exists at the time of loss.

**2.** We may not rescind this Policy:
  **a.** For the reasons in Subsections **B.1.a.** and **B.1.b.** above unless:
    **(1)** we rely on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive; or
    **(2)** the facts misrepresented or falsely warranted contribute to the loss.
  **b.** For the reasons in Subsections **B.1.c** and **B.1.d.** above unless such failure or breach:
    **(1)** increases the risk at the time of loss; or
    **(2)** contributes to the loss.

**3.** If we elect to rescind this Policy, we will notify the First Named Insured of our intention within 60 days after acquiring knowledge of sufficient facts to constitute grounds for rescission.

**C.** The following is added to the SETTLEMENT OF CLAIMS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

If a municipality, which is a first class city, has elected to apply the provision of Wis. Stat. Ann. Secs. 632.10 through 632.104, a part of our payment for fire or explosion loss or damage to your covered real property in that municipality will be withheld if the loss or damage is subject to the aforementioned provisions.

**1.** The withheld amount will be paid in accordance with the law, to the following:
  **a.** The municipality where the covered real property is located;
  **b.** You and any other interest named in the Declarations; or
  **c.** The mortgagee (or trustee), if any.
  However, we will not pay more than the amount of loss payable under this Policy.

**2.** Within 10 days after withholding the required amount, we will give written notice of the withholding to the following:

    **a.** The building inspection official of the municipality where the covered real property is located;

    **b.** You;

    **c.** Any mortgagee (or trustee) and any other lienholder who has an existing lien against the property; and

    **d.** The court in which judgment was entered if the final settlement was determined by judgment.

**3.** We will not be liable in any cause of action, nor may any liability be imposed on us, arising from the payment, withholding or transferring of all or any portion of a final settlement in accordance with Wis. Stat. Ann. Secs. 632.10 through 632.104.

**D.** The CONCEALMENT, MISREPRESENTATION OR FRAUD Subsection of the GENERAL CONDITIONS Section is deleted and replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

**1.** No misrepresentation and no breach of affirmative warranty made by you or on your behalf in the negotiation for or procurement of this Policy affects our obligations unless, if a misrepresentation, the person knew or should have known that the representation was false, and unless:

    **a.** We rely on the misrepresentation or affirmative warranty and the misrepresentation or affirmative warranty is either material or made with intent to deceive; or

    **b.** The facts misrepresented or falsely warranted contribute to the loss.

**2.** No failure of a condition before a loss and no breach of a promissory warranty affects our obligation under this Policy unless such failure or breach exists at the time of loss and either:

    **a.** Increases the risk at the time of loss; or

    **b.** Contributes to the loss.

**E.** The following is added to the SUBROGATION Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section:

If we pay an insured for a loss described in Subsection **A.2.** of this endorsement, the rights of the insured to recover damages from the perpetrator are transferred to us to the extent of our payment. Following the loss, the insured may not waive such rights to recover against the perpetrator. We will be entitled to a recovery only after you have been fully compensated for damages.

**F.** The following provisions are added to this Policy and supersede any provisions to the contrary:

**1.** Knowledge and Acts of Agents

    **a.** If any of our agents know any fact that breaches a condition of this Policy, we will be considered to know it also if that fact:

        **(1)** Is known to the agent at the time this Policy is issued or an application made; or

        **(2)** Later becomes known to the agent in the course of his or her dealings as an agent with you.

    **b.** Any fact that breaches a condition of this Policy and is known to the agent before the loss will not:

        **(1)** Void this Policy; or

        **(2)** Prevent a recovery in the event of loss.

**2.** Conformity to Statute or Rule

    Any provision of this Policy that is in conflict with a Wisconsin statute or "rule" is hereby amended to conform to that statute or rule.

    The term "rule" means a valid rule promulgated by the Commissioner of Insurance in accordance with the rule-making authority conferred under Wis. Stat. Ann. S. 227.11(2) and published in the Wisconsin Administrative Code.

All other terms and conditions of the Policy remain the same.

## WYOMING STATE AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy.

The following changes apply only to locations covered by the Policy that are in the State of Wyoming.

**A.** The SUIT AGAINST COMPANY Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section is deleted and replaced by the following:

**SUIT AGAINST COMPANY**

No one may bring a legal action against us under this Policy unless:

**1.** There has been full compliance with all of the terms of this Policy; and

**2.** The action is brought within 4 years beginning from the date on which the direct physical loss or damage was discovered.

**B.** In accordance with Wyoming law, the provisions of the SETTLEMENT OF CLAIMS Subsection of the CONDITIONS APPLICABLE TO LOSS ADJUSTMENT AND SETTLEMENT Section stating when we will pay for loss are replaced by the following:

Claims for benefits under this Policy shall be rejected or accepted and paid by us or our agent designated to receive those claims within 45 days after receipt of the claim and supporting bills.

All other terms and conditions of the Policy remain the same.

# Commercial Property – Claim Reporting and Claim Questions

## Options for Reporting a New Claim

- ***Telephone :***        ***AIG CallOne<sup>sm</sup>***:  800-931-9546 24/7, 365 days/year

- ***Email :***        newloss-usproperty&energy@aig.com

- ***Fax :***        855-805-4125

- ***Mail :***        P.O. Box 2310, Alpharetta, Georgia 30023-2970


Such written notice shall include the Named Insured as shown on the Declarations, the policy number, the date of loss and a brief description of the potential claim.


## Options for Questions Regarding Existing/Previously Reported Claims

For questions regarding existing claims, contact should be made directly with the assigned AIG Examiner via direct dial or email.  ***However, in the instance where an AIG Examiner is unknown, please use the following methods to obtain the information:***

- **Claim Service Center*:*  877-873-9972**

- **AIG CallOne:  800-931-9546**

**Ed. 11/14**