United States District Court
Southern District of Texas

**ENTERED**

July 23, 2021

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNIVERSITY OF SAINT THOMAS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-20-2809 |
| | § | |
| AMERICAN HOME ASSURANCE COMPANY, | § | |
| | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant American Home Assurance Company's ("American Home") motion to dismiss.  Dkt. 12.  Plaintiff University of Saint Thomas (UST) responded (Dkt. 21), and American Home replied (Dkt. 26).  American Home also submitted three notices of supplemental authority (Dkts. 32, 34, 41), and UST responded (Dkts. 33, 35) to the first two.  After reviewing the motion, response, reply, supplemental notices and responses, and applicable law, the court is of the opinion that American Home's motion should be GRANTED.

**I. BACKGROUND**

*A. Factual Circumstances*

UST is a Catholic University in Houston.  Dkt. 1 at 3.  Its campus consists of administrative buildings, lecture halls, and student housing facilities.  *Id.*  UST and American Home entered into an "all risks" insurance contract (the "policy") on February 1, 2020.  *Id.*  The policy "covers loss or damage from, among other things, business interruption, relocation expense, attraction property, interruption by civil authority, limitations of ingress and egress, and extra expense."  *Id.* at 4.  The policy remains in full force and effect until February 1, 2021.  *Id.* at 5.

In late 2019 and early 2020, a novel coronavirus (SARS-CoV-2) began spreading around the world and infecting humans. When a human becomes infected, he or she develops a respiratory disease known as COVID-19. In mid-March 2020, the World Health Organization declared the COVID-19 outbreak a pandemic. *Id.* On March 19, 2020 Texas Governor Greg Abbott issued an executive order prohibiting people from gathering in groups of more than 10 people and advising people not to eat in restaurants or visit gyms. *Id.* at 6. Additionally, on March 24, 2020, Harris County Judge Lina Hidalgo "issued an order directing all individuals living in the county to stay home except to provide or receive certain essential services or engage in certain essential activities." *Id.* at 7. She also "required all non-essential businesses located within Harris County to cease all activities at facilities located within Harris County." *Id.* These orders persisted, in some form, until June 10. *Id.* UST is not considered an essential business. *Id.* Various other orders were issued by Governor Abbott and Judge Hidalgo in the spring and summer of 2020. *Id.* at 7–8.

UST alleges that "[a]s a result of the physical presence of the virus on campus and rapid community spread, as well as the state and local orders, UST was forced to close its classrooms and rush to implement remote instruction for its students." *Id.* at 10. This transition to remote instruction came at a considerable cost to UST. *Id.* For example, UST had to purchase software licenses and other technologies, establish quarantine housing for students, close dining and residence halls, refund students' room, board, student, and parking fees, and cancel annual summer camp programs. *Id.* UST claims that "[t]he damage cause by the virus is continuing and ongoing." *Id.* at 11.

UST timely submitted a claim to American Home for business income losses on March 16, 2020, and American Home denied the claim on May 14, 2020. *Id.* at 12.

*B. Policy Provisions*

The policy generally covers UST's business income loss from the interruption of business

caused by "direct physical loss or damage" to covered property or certain other property if the

damage is caused by a "covered cause of loss."  Dkt. 1-1 at 49.  The exact text of this general

coverage provision reads:

> We will pay the actual business income loss sustained by you due to the necessary
> partial or total interruption of your business operations, services, or production
> during the period of indemnity as a result of direct physical loss or damage to:
> (1) covered property by a covered cause of loss or (2) property of the type insured
> under this Policy by a covered cause of loss which directly affects your use of the
> covered property, provided that you are a lessee or occupant of the premises where
> the direct physical loss or damage occurred.

*Id.*

Besides coverage for business income loss, the policy has an array of "additional time

element coverages," which extend coverage to several specific situations outside the scope of the

general coverage provision. *Id.* at 50.  The relevant additional time element coverages are included

below.

The Extra Expense provision covers certain extra expenses incurred during the period of

indemnity, not to exceed $10,000,000:

> We will pay loss sustained by you for extra expense during the period of indemnity
> resulting from direct physical loss or damage by a covered cause of loss.
>
> . . .
>
> The maximum amount that we will pay for all extra expense . . . is [$10,000,000].

*Id.* at 4, 53.

The Relocation Expenses provision covers the costs incurred to relocate certain people to

other facilities if their rooms or rented space at a covered location become uninhabitable:

> We will pay for reasonable and necessary relocation expenses incurred by you to
> relocate students, residents, lawful occupants or patients to other facilities or

3

properties in the event that their rooms or rented space at a covered location are uninhabitable due to direct physical loss or damage by a covered cause of loss.

*Id.* at 11.

The Ingress & Egress provision covers business income loss and extra expense incurred if UST is kept, in whole or in part, from accessing or exiting its covered property in certain situations:

> We will pay the actual business income loss sustained by you and extra expense caused by direct physical loss or damage by a covered cause of loss to property not insured under this Policy, provided that:
>
> Such direct physical loss or damage to such property partially or totally prevents physical ingress to or egress from a covered location; and
>
> Such property not insured under this Policy is within [one mile] of the covered location . . . .

*Id.* at 53.

The Interruption by Civil or Military Authority provision covers business income loss and extra expense incurred as a result of civil or military orders that seek to restrict or prevent access in certain situations to property not covered under the policy, but that also have the effect of preventing or limiting access to a covered location:

> We will pay the actual business income loss sustained by you and extra expense if an order of civil or military authority limits, restricts or prohibits access to property not insured under this Policy provided that:
>
> Such property sustains direct physical loss or damage by a covered cause of loss;
>
> Such property is within [one mile] from the covered location . . . ; and
>
> The effect of such order is to partially or totally prohibit access to a covered location.

*Id.* at 54.

Finally, the Attraction Property provision covers losses and expenses incurred because certain attraction properties near UST suffer direct physical loss or damage:

> We will pay the actual business income loss sustained by you and extra expense caused by direct physical loss or damage by a covered cause of loss to property of

4

the type insured under this Policy that attracts business to a covered location, provided that such property is within [one mile] from the covered location . . . (hereinafter, the attraction property).

Coverage begins on the date and time that the attraction property sustains such direct physical loss or damage and ends on the date and time that the attraction property could be reopened for business, but in no event for more than [30 days].

*Id.* at 51.

The policy also has a section that lists "Perils Excluded" from coverage.  Disputed in the parties' briefing is the pollutants and contaminants exclusion.  That provision excludes from coverage damage caused directly or indirectly by:

The actual, alleged or threatened release, discharge, escape or dispersal of pollutants or contaminants, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any covered cause of loss under this Policy.

However, this exclusion shall not apply to direct physical loss or damage to covered property from pollutants or contaminants caused by a covered cause of loss at the covered location, including the cost to clean-up pollutants or contaminants from covered property at the covered location resulting from such loss or damage.  No coverage is provided for testing or monitoring for pollutants or contaminants.

*Id.* at 47.

*C. UST's Claims*

UST asserts that American Home breached the policy by denying coverage under six provisions: Business Income,[1] Extra Expense, Relocation Expenses, Interruption by Civil or Military Authority, Ingress & Egress, and Attraction Property.  Dkt. 1 at 23; Dkt. 12 at 2.  In addition, UST seeks several declaratory judgments that largely track the contractual claims.  *See* Dkt. 1 at 24.  Next, UST claims that American Home violated the Texas Insurance Code in three

---

[1] The parties refer to this provision in different ways, but it is the general coverage provision entitled "Insurance Agreement" and located in section VI(A) of the policy.  Dkt. 1-1 at 49.

5

separate ways.  *Id.* at 26.  Finally, UST argues that American Home breached its duty of good faith and fair dealing in refusing to pay UST's claim.  *Id.* at 27.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007).  In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true.  *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6).  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The supporting facts must be plausible— enough to raise a reasonable expectation that discovery will reveal further supporting evidence.  *Id.* at 556.

## III. ANALYSIS

*A. Coverage*

"Texas law provides that insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine."  *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010) (citation omitted).  "Unless the policy dictates otherwise, [courts]

give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (alteration in original) (quoting *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)). "The paramount rule is that courts enforce unambiguous policies as written." *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and courts construe it as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *see also Pan Am Equities, Inc.*, 959 F.3d at 674 ("If an insurance contract, just like any other contract, uses unambiguous language, that's that.").

"[U]nder Texas contract law, 'ambiguity' means more than 'lack of clarity.' A policy is not ambiguous merely because different parties—or different judges—offer conflicting interpretations." *Pan Am Equities, Inc.*, 959 F.3d at 674. Instead, "[a] policy is only ambiguous if, giving effect to all provisions, its language is 'subject to two or more reasonable interpretations.'" *Id.* (citations omitted).

If a policy is ambiguous, a court must resolve the uncertainty by adopting the construction that most favors the insured. *John O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018). "The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy." *Id.*

*1. Direct Physical Loss or Damage to Covered Property*

The Business Income, Extra Expense, and Relocation Expenses provisions all require "direct physical loss or damage" to covered property.[2] *See* Dkt. 1-1 at 11, 49. American Home

---

[2] It is unclear whether the Extra Expense provision requires direct physical loss or damage to covered property or to some other property, or to either, but it certainly requires direct physical loss or damage. Whether analyzed under this section or the next, the result is the same.

argues that UST has not adequately alleged direct physical loss or damage to any of its covered property.  Dkt. 12 at 8.  UST responds that it has plausibly alleged that the presence of the SARS-CoV-2 virus on its campus causes or constitutes direct physical loss or damage.  Dkt. 21 at 3.  It asserts that "the virus can float or drift in the air for up to three hours," and that it "physically infects and stays on surfaces and everyday objects such as counters, tabletops, windows, doorknobs, bathroom fixtures, phones, etc. for days on end."  *Id.* at 4.  As a result, UST was "forced to close its classrooms and rush to implement remote instruction."  *Id.*  Finally, UST declares that, as of the time of filing, "[t]he damage caused by the virus is continuing and ongoing," and "is likely to require UST to keep its classrooms, dormitories, and dining halls closed or at reduced capacity."  *Id.*

UST argues that the phrase "direct physical loss or damage" must be read to include "the act of losing possession."  Dkt. 21 at 6.  It alleges that "its covered property was in a satisfactory state until an external event (the physical presence of virus on the property) changed it into an unsatisfactory state, rendering it unusable."  *Id.* at 8.  This, according to UST, means that UST has suffered a "direct physical loss," satisfying the requirement for coverage.  *Id.* at 11.

The first question is whether the policy language is ambiguous.  If it is not, then the court must enforce it as written.  "Direct physical loss or damage" is not defined in the policy, but the Fifth Circuit has interpreted the phrase to mean "a distinct, demonstrable, physical alteration of the property."  *Hartford Ins. Co. v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) (unpublished per curiam decision) (quoting 10A Couch on Ins. § 148:46 (3d ed. 2005)).  "Other Texas district courts interpreting this language have agreed, equating physical loss with tangible damage to property."  *Hajer v. Ohio Sec. Ins. Co.*, 505 F. Supp. 3d 646, 650 (E.D. Tex. 2020) (citing two examples).  The court here agrees that the term is not ambiguous.  "If only one

interpretation of a provision is reasonable under the circumstances, the provision is unambiguous." *Id.* (citing *Nassar*, 508 S.W.3d at 258).  The only reasonable interpretation of "direct physical loss or damage," under the circumstances, is "a distinct, demonstrable, physical alteration of the property." *Id.*  This "strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper." *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270–71 (5th Cir. 1990).

The next question, then, is whether claims that the presence of the SARS-CoV-2 virus on UST's campus—in the air and on the surfaces of its facilities—are sufficient to allege that there was "a distinct, demonstrable, physical alteration of the property."  They are not.  Courts in Texas are in agreement that the SARS-CoV-2 virus "does not cause physical damage to property; it causes people to get sick." *DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, No. H-20-3606, 2021 WL 1232778, at *5 (S.D. Tex. Mar. 12, 2021) (Rosenthal, C.J.).  Even taking as true UST's allegation that the virus was present on its campus, as the court must at this stage, the court concludes that it does "not constitute a direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated.  The virus does not threaten the structures covered by property insurance policies and can be removed from surfaces with routine cleaning and disinfectant."[3] *ILIOS Prod. Design, LLC v. Cincinnati Ins. Co.*, No. 1:20-CV-857-LY, 2021 WL 1381148, at *7 (W.D. Tex. Apr. 12, 2021).  To put a finer point on it:

> No repairs or remediation to the premises are necessary for its safe occupation in
> the event the virus is controlled and no longer poses a threat.  In short, the pandemic
> impacts human health and human behavior, not physical structures.  Those changes
> in behavior, including changes required by governmental action, caused the

---

[3] This distinguishes the present case from the cases UST cites where courts have held that a loss of use due to the presence of some "substance or contaminant" (like mold, odor, asbestos, etc.) rose to the level of a direct physical loss or damage to property.  *See* Dkt. 21 at 8.

Plaintiff economic losses.

*Id.* (citing *Uncork & Create LLC*, 498 F. Supp. 3d 878, 884 (S.D. W. Va. 2020)).  Thus, it is simply

implausible that the presence of the SARS-CoV-2 virus on UST's campus caused direct physical

loss or damage to covered property.  Accordingly, UST's claims under provisions of the policy

that require direct physical loss or damage to covered property are insufficient to withstand

American Home's motion to dismiss.

Courts in Texas and across the country, analyzing almost identical policy language, have

held that allegations or proof of the presence of COVID-19, the effect of civil orders, and the

voluntary reduction of capacity or use of other protective measures in response to the pandemic

are all insufficient to establish "direct physical loss or damage" to property.  *See DZ Jewelry, LLC*,

2021 WL 1232778, at *4–5 & nn.4–5 (explaining that these theories consistently fail and collecting

cases).  This court sees no reason to depart from these well-reasoned decisions, especially when

its own analysis leads to the same conclusion.

*2. Direct Physical Loss or Damage to Property Not Insured*

The rest of UST's claims for breach of the policy fail for essentially the same reason.

Claims under the Ingress & Egress, Interruption by Civil or Military Authority, and Attraction

Property provisions all require that some property near UST's covered property suffer "direct

physical loss or damage" for coverage to apply.  *See* Dkt. 1-1 at 51, 53, 54.

The Attraction Property provision covers certain losses attributable to "direct physical loss

or damage . . . to property of the type insured under this Policy that attracts business to a covered

location," and is located within one mile of the covered property.  *Id.* at 51.  UST alleges that "a

variety of museums, art galleries, restaurants, bars, retail stores, libraries, and other places near

UST that serve as an attraction for students to attend UST . . . were impaired by direct physical

damage or loss caused by COVID-19."  Dkt. 21 at 28; Dkt. 1 at 20.  Additionally, it claims that

Case 4:20-cv-02809   Document 42   Filed on 07/23/21 in TXSD   Page 11 of 13

"property within one mile of UST suffered direct physical loss or damage due to COVID-19."
Dkt. 21 at 28; Dkt. 1 at 21.

The Ingress & Egress provision covers certain losses "caused by direct physical loss or
damage . . . to property not insured under this Policy," as long as "such direct physical loss or
damage to such property partially or totally prevents physical ingress to or egress from a covered
location," and is located within one mile of the covered location.  Dkt. 1-1 at 53.  UST alleges that
the presence of the virus at locations within one mile of covered property limited access to the
property to only essential staff.  Dkt. 1 at 10–11.

The Interruption by Civil or Military Authority provision covers losses sustained "if an
order of civil or military authority limits, restricts or prohibits access to property not insured under
the Policy," as long as "such property sustains direct physical loss or damage," such property is
within one mile of covered property, and the order "partially or totally prohibits access to a covered
location."  Dkt. 1-1 at 54.  UST argues "that the civil authority order that directed non-essential
businesses to cease all activities at facilities located within Harris County, including those within
a one-mile radius of UST, stated that the order was necessary not because of some potential future
threat of infection, but specifically because 'the COVID-19 virus causes property loss or damage
due to its ability to attach to surfaces for prolonged periods of time.'"  Dkt. 21 at 29.  Moreover, it
alleges that "the contact and interaction incident to such businesses causes an increased
likelihood—almost certainty—that COVID-19 is physically present on the property."  Dkt. 1 at 9.

Each of these provisions requires direct physical loss or damage to some kind of property
within one mile of covered property.  But the only direct physical loss or damage that UST alleges
is that the air and surfaces are contaminated with the SARS-CoV-2 virus.  As explained above,
this alleged physical loss does not fall within the unambiguous meaning of "direct physical loss or

11

damage" employed by courts in this circuit.[4]   Therefore UST's breach of contract claims under

these provisions are also insufficient to survive American Home's motion to dismiss.

### B. Extra-contractual Claims

UST also brings claims for violations of the Texas Insurance Code and for breach of the

common law duty of good faith and fair dealing.  *Id.* at 26–27.  These claims are all premised on

American Home's failure to pay benefits under the policy, but as discussed in detail above, the

policy does not cover the losses UST complains of.

"[A]s a general rule there can be no claim for bad faith when an insurer has promptly denied

a claim that is in fact not covered."  *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d

597, 602 (Tex. 2015) (citation omitted).  Similarly, "an insured cannot recover *any* damages based

on an insurer's statutory violation if the insured had no right to receive benefits under the policy

and sustained no injury independent of the right to benefits."  *USAA Tex. Lloyds Co. v. Menchaca*,

545 S.W.3d 479, 500 (Tex. 2018).  Because UST has no right to benefits under the policy for the

losses it sustained during the pandemic, and because it alleges no independent injury, its bad-faith

and Texas Insurance Code claims must be dismissed as well.

### C. Declaratory Judgment Claims

Because UST's declaratory judgment claims also rest on the premise that its losses were

covered under the policy, American Home argues that they, too, must be dismissed.  Dkt. 12 at 2.

The court agrees.

---

[4] Even if, as alleged by UST, Judge Hidalgo based her order on her conclusion that "the COVID-19 virus causes property loss or damage," that does not change the legal meaning this phrase has in the Fifth Circuit.

## IV. CONCLUSION

American Home's motion to dismiss (Dkt. 12) is GRANTED.  Accordingly, all of UST's

claims against American Home are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on July 23, 2021.

_____

Gray H. Miller
Senior United States District Judge

13